EXHIBIT 17

Hunt and Steel's Motion to Dismiss Plaintiff's Complaint
and Brief in Support

IN THE STATE COURT OF CHATHAM COUNTY
STATE OF GEORGIA

ALBERT MARSHALL,

        Plaintiff,

VS.

HUNT CONSTRUCTION GROUP, INC.
aka AECOM HUNT, STEEL, LLC,
PLANT RIVERSIDE, LLC, KESSLER
COLLECTION MANAGEMENT, LLC,
THE KESSLER ENTERPRISE, INC.,
JOHN AND JANE DOES 1-30; and
BUSINESS/CORPORATE ENTITIES A-Z

        Defendants.

CIVIL ACTION NO.: STCV21-00567

## HUNT CONSTRUCTION GROUP, INC. AND STEEL, LLC'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

COMES NOW Defendants Hunt Construction Group, Inc. ("Hunt") and Steel, LLC ("Steel"), named as defendants in the above styled civil action, appearing specially and without submitting to the jurisdiction of this Court, and pursuant to O.C.G.A. §§ 9-11-12(b)(1), 9-11-12(h)(3), and 9-11-12(b)(6), move to dismiss this action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Included below is Hunt and Steel's Memorandum of Law in Support of their Motion to Dismiss. In addition, because this Motion to Dismiss is filed contemporaneously with the filing of both Hunt and Steel's Answers and Affirmative Defenses Via Special Appearance to Plaintiff's Amended Complaint, discovery is stayed as to Hunt and Steel pursuant to O.C.G.A. § 9-11-12(j).

## INTRODUCTION

This case involves workplace injuries sustained by Plaintiff Albert Marshall ("Plaintiff") during the construction of the new JW Marriott Hotel located in Savannah's Plant Riverside District. Hunt was the general contractor for the hotel project, and Hunt subcontracted certain steel-related work for the project to Steel. In turn, Steel retained S&R Enterprises, LLC (S&R") as a sub-subcontractor to perform portions of Steel's scope of work, including the installation of a decorative grapple in the hotel's atrium. On June 23, 2019, Plaintiff was working in the course of his employment with S&R to install the grapple when one of the cables being used to hoist the grapple into place broke free. The cable struck the man-lift where Plaintiff was working and knocked him to the ground. As the result of the accident, Plaintiff received workers' compensation benefits from S&R and S&R's insurer.

Plaintiff's claims against Hunt and Steel must be dismissed because under Georgia's Workers' Compensation Act, Hunt (as the principal contractor) and Steel (as an intermediate subcontractor) were Plaintiff's *statutory employers*. As a result, Plaintiff's claims against Hunt and Steel must be dismissed as a matter of law on two separate grounds. First, this Court lacks subject matter jurisdiction over Plaintiff's claims because, as Hunt and Steel's statutory employee, his remedies against them are governed exclusively by the Workers' Compensation Act. Accordingly, jurisdiction over Plaintiff's claims against Hunt and Steel rests solely with the Georgia State Board of Workers' Compensation, and not this Court. Second, it is black-letter law in Georgia that statutory employers are immune from tort claims brought by their statutory employees. Thus, even if this Court had jurisdiction, Plaintiff's claims must be dismissed for failure to state a claim.

## STATEMENT OF RELEVANT FACTS

Plant Riverside, LLC, ("Plant Riverside") is the owner of the premises located at 400 West River Street, in Savannah, Georgia, which was the site of a hotel construction project (now, after construction, the JW Marriott) in the Plant Riverside District ("the Project"). On August 31, 2016, Plant Riverside contracted with Hunt to serve as the general/primary contractor for the Project. (Amended Complaint, at ¶ 13, attached as **Exhibit A**; Affidavit of Charles C. Douglas, at Ex. 1 [Plant Riverside/Hunt Contract Agreement] attached as **Exhibit B**).[1] Hunt's role as general contractor included hiring subcontractors to perform various elements of work at the Project. (**Ex. A**, Amended Complaint, at ¶ 13). On October 11, 2016, Hunt subcontracted with Steel to provide materials and perform certain steel-related work at the project. (*Id.* at ¶ 14; Affidavit of Rob Williams, at Ex. 1 [Hunt/Steel Subcontract], attached as **Exhibit C**).[2]

On November 16, 2016, Steel entered into a contract with S&R, in which S&R agreed to perform certain work at the Project as a subcontractor to Steel. (**Ex. C**, Williams' Aff., at Ex. 2 [Steel/S&R Construction Subcontract]).[3] S&R's scope of work included hanging the decorative grapple. (**Ex A**, Amended Complaint, at ¶ 15). Plaintiff worked on the Project as an employee of S&R, and Plaintiff was in the scope of his employment on June 23, 2019, when he was injured while working to hoist the decorative grapple into place ("the Accident"). (**Ex. A**, Amended Complaint, at ¶¶ 11, 19). Pursuant to its contract with Steel, S&R was required to provide

---

[1] Pursuant to its contract with Plant Riverside, Hunt was required to maintain workers' compensation insurance. (**Ex. B**, Douglas Aff. at Ex. 1 [Plant Riverside/Hunt Contract Agreement], General Conditions of the Contract for Construction at §11.2).
[2] Pursuant to its agreement with Hunt, Steel was required to maintain workers' compensation insurance. (**Ex. C**, at Ex. 1 [Hunt/Steel Subcontract], § 8.1 and Attachment V.)
[3] Plaintiff's Amended Complaint incorrectly asserts, "[o]n information and belief," that *Hunt* hired S&R. (**Ex. A**, Amended Complaint, at ¶ 15). However, it is clear that S&R was hired by Steel. (**Ex. C**, at Ex. 2 [Steel/S&R Construction Subcontract]). The fact that S&R was Steel's subcontractor is uncontroverted, save Plaintiff's mistaken belief.

workers' compensation insurance. (**Ex. C**, Williams Aff., at Ex. 2 [Steel/S&R Construction Subcontract], at Article 11.1).

As a result of the Accident, Plaintiff initiated a claim for workers' compensation benefits from S&R and S&R's workers' compensation carrier, American Mining Insurance Company. (Form WC-1, Employer's First Report of Injury or Occupational Disease in Claim No. 2019-072831 before the Georgia State Board of Workers' Compensation, attached as **Exhibit D**). Plaintiff received workers' compensation benefits for his injuries related to the Accident. (Form WC-2, Notice of Payment or Suspension of Benefits in Claim No. 2019-072831, attached as **Exhibit E**).[4] On March 22, 2021, Plaintiff filed a civil tort claim related to the Accident in the State Court of Chatham County, State of Georgia ("Original Complaint"). Subsequently, and following the exchange of information between Plaintiff and the defendants named in the Original Complaint, Plaintiff filed his Amended Complaint on May 26, 2021.[5] Plaintiff's Amended Complaint asserts tort claims against Hunt and Steel (as well as other defendants) stemming from the Accident. (**Ex. A**, Amended Complaint, at "COUNT I" and "COUNT II").

## ARGUMENT AND CITATION OF AUTHORITY

I. **Plaintiff's Action against Hunt and Steel Must Be Dismissed Because This Court Lacks Subject Matter Jurisdiction**

Pursuant to Georgia's Workers' Compensation Act, O.C.G.A. § 34-9-1, *et seq.* ("the Act")*,* Hunt and Steel were Plaintiff's statutory employers at the time of the Accident. Accordingly, the Act provides Plaintiff's exclusive remedy against them. As jurisdiction for

---

[4] Hunt and Steel respectfully request that this Court take judicial notice of the contents of Exhibits D and E, and/or the existence of Claim No. 2019-072831 before the Georgia State Board of Workers' Compensation, pursuant to O.C.G.A. § 24-2-201.

[5] In Plaintiff's Stipulation Extending the Time for Currently-Named Defendants to File Response to Plaintiff's Original Complaint and to Respond to Discovery Served with Original Complaint filed on April 30, 2021, the parties stipulated that the Amended Complaint will be treated as the operative pleading in this case.

RECEIVED FOR FILING, STATE COURT OF CHATHAM CO. GA on 08/13/2021 1:17 PM Brian A. Hart - Clerk of Court

claims falling under the Act rests solely with the Georgia State Board of Workers' Compensation ("the Board"), pursuant to § 9-11-12(h)(3), Hunt and Steel must be dismissed because this Court lacks subject matter jurisdiction over Plaintiff's claims.

"Whenever it appears, by suggestion of the parties or otherwise, that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action." O.C.G.A. § 9-11-12(h)(3) (emphasis added). "The general rule is that 'shall' is recognized as a command, and is mandatory." *Baylis v. Daryani*, 294 Ga. App. 729, 730 (2008) (citing *State v. Henderson*, 263 Ga. 508, 510 (1993); *Jones v. Douglas County*, 262 Ga. 317, 323 (1992)). In assessing whether a trial court has subject matter jurisdiction, "neither the trial court nor [the Georgia Court of Appeals] is limited to the facts as set forth in the pleadings[,]" and the trial court may hear evidence to determine such a defense. *Savannah Hosp. Servs., LLC v. Scriven*, 350 Ga. App. 195, at FN.4 (2019) (citing *Pettus v. Drs. Paylay, Grank & Brown, P.C.*, 193 Ga. App. 335, 336 (1989)). When ruling on a motion to dismiss based upon jurisdictional grounds, the trial court must make the determination acting as the trier of fact. *Big Canoe Corp. v. Williamson*, 168 Ga. App. 179, 180 (1983); *Montgomery v. USS Agri–Chem. Div*., 155 Ga. App. 189, 190 (1980). The court's evaluation rests on where the preponderance of evidence lies, not necessarily on whether the issue may be decided as a matter of law. *See Dep't of Transp. v. Dupree*, 256 Ga. App. 668, 676 (2002), disapproved of on other grounds by *Dep't of Transp. v. Thompson*, 354 Ga. App. 200 (2020) (finding trial court properly heard and weighed conflicting evidence to determine questions of subject matter jurisdiction).

### A.     Hunt and Steel were Plaintiff's Statutory Employers Under the Act

Hunt, as the Project's general/principal contractor, and Steel, as an intermediate contractor, were Plaintiff's statutory employers under the Act. The statutory employer doctrine is set forth in O.C.G.A. § 34–9–8.  In relevant part, it provides as follows:

> (a)     A *principal, intermediate*, *or subcontractor* shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer.

…

> (d)     This Code section shall apply only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under his control or management.

O.C.G.A. § 34-9-8 (emphasis added) *see also Yoho v. Ringier*, 263 Ga. 338, 339 (1993) ("[O.C.G.A. § 34-9-8] applies to "those who contract to perform certain work … for another, and then *sublet in whole or part* such work.") (emphasis added); *Patterson v. Bristol Timber Co.*, 286 Ga. App. 423, 430 (2007) ("Any company falling under [the definition set forth in O.C.G.A. § 34-9-8] is considered a "statutory employer" of its subcontractor's injured employee").

Thus, the Act makes principal or intermediate contractors secondarily liable for workers' compensation benefits for injured employees of a subcontractor, but also makes the employees' claims against such contractors subject to the exclusive remedy provision of the Act. *Carr v. FedEx Package System, Inc.*, 317 Ga. App. 733, 735 (2012). As the Georgia Supreme Court explained, the statutory employer doctrine:

> []permits liability for workers' compensation benefits to attach vicariously against someone other than an injured employee's employer. In return the vicariously liable party is immune from tort liability for the injury suffered [pursuant to O.C.G.A. § 34-9-11(a)]. By this section the legislature intended to protect persons working for subcontractors who are financially irresponsible or who are otherwise exempt from the provisions of the Workers' Compensation Act.

*Manning v. Ga. Power Co.*, 252 Ga. 404, 405 (1984) (citations omitted).

Here, Hunt served as the Project's general/principal contractor and subcontracted certain portions of the work to Steel. Steel, as an intermediate subcontractor then subcontracted parts of *its* scope of work to S&R, Plaintiff's immediate employer. As secondarily liable entities, saddled with the obligation of providing workers' compensation benefits in the event that S&R did not or could not, Hunt and Steel were Plaintiff's statutory employers under the black-letter of the Act and Georgia courts' application of the statutory employer doctrine. *See e.g. Carr,* 317 Ga. App. at 734-735 (citing *Warden v. Hoar Construction Co*., 269 Ga. 715, 715-716 (1998)); *Landrum v. Cobb Cty. Concrete Prod., Inc.*, 191 Ga. App. 805, 806 (1989) (reiterating that the statutory employer doctrine is applicable to intermediate contractors).

### B. The Board Has Exclusive Jurisdiction Over an Injured Employee's Claim against His or Her Statutory Employer

Wherever the Act provides a remedy, the Board has exclusive jurisdiction to administer that remedy. O.C.G.A. § 34-9-11(a) ("The rights and the remedies granted to an employee by this chapter shall exclude and be in place of all other rights and remedies of such employee [or] his or her personal representative…or next of kin, and all other civil liabilities whatsoever at common law or otherwise, on account of such injury, loss of service, or death…"); § 34-9-58 ("The State Board of Workers' Compensation shall exercise all powers and perform all the duties relating to the enforcement of this chapter."). *See Mullis v. NC-CNH, Inc*., 218 Ga. App. 332, 333 (1995) (holding that "the Board has exclusive jurisdiction" because "[i]t is clear that the Workers' Compensation Act contemplates a remedy").

As Hunt and Steel's statutory employee, Plaintiff's rights and remedies against them are limited to those provided under the Act. "Statutory employers are immune from tort claims under O.C.G.A. § 34-9-11, *and the employee is limited to recovery under the workers' compensation*

7

*laws.*" *Patterson,* 286 Ga. App. at 430 (emphasis added). Thus, Plaintiff's sole remedy would be via an award of benefits from the Board. *See* O.C.G.A. § 34-9-1; *Bright v. Nimmo*, 253 Ga. 378, 379 (1984) ("In general, our workers' compensation law provides benefits to an employee injured 'by accident arising out of and in the course of the employment.'").

Critically, Plaintiff's rights and remedies *do not* include the right to assert the tort claims that are the subject matter of this case. O.C.G.A. § 34-9-11(a) (emphasis added) ("The rights and the remedies granted to an employee [and his personal representative and next of kin] by this chapter *shall exclude and be in place of* all other rights and remedies of such employee … and all other civil liabilities whatsoever at common law or otherwise, on account of such … death…") (emphasis added). That is, because Plaintiff has a remedy under the Act, he is statutorily barred from seeking to hold Hunt and Steel civilly liable for his injury. *See Bright*, 253 Ga. at 379 ("OCGA § 34-9-11 … has been interpreted consistently to mean that, 'where the workers' compensation law is applicable, it provides the employee's exclusive remedy against his employer.'" (quoting *Freeman v. Ryder Truck Lines, Inc.*, 244 Ga. 80, 82 (1979)).

**C. This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims Against Hunt and Steel**

Because the Board has exclusive jurisdiction over Plaintiff's claims against Hunt and Steel, this Court lacks subject matter jurisdiction over them. Consequently, pursuant to § 9-11-12(h)(3), the Court must dismiss them from the action.

Workers' compensation claims filed in civil court are regularly dismissed for lack of subject matter jurisdiction. *See, e.g.*:

- *Savannah Hospitality Srvs.,* 350 Ga. App. at FN 4 (2019) (reversing trial court's denial of the defendant's motion to dismiss and holding that the exclusive remedy provision of the Act barred employee's action: "Even if we were to focus on the auto accident, we would

nevertheless conclude that [the plaintiff's] injury arose from and occurred in the course of [his] employment such that the instant [tort] action was barred under the Act. We have held that the application of the exclusivity bar is akin to an issue of the trial court's subject matter jurisdiction.");

- *Mullis v. NC-CNH, Inc*., 218 Ga. App. 332, 333 (1995) (affirming trial court's dismissal of the plaintiffs' claims; "As plaintiffs' complaints are grounded upon an alleged violation of the Workers' Compensation Act, the trial court properly dismissed the underlying complaints for lack of jurisdiction.");

- *Smart Prof'l Photocopy Corp. v. Dixon*, 216 Ga. App. 825, 826 (1995) (finding that the plaintiff's "redress, if any, is through the Workers' Compensation remedies" and holding that the state court erred in failing to grant the defendants' motion to dismiss because the court lacked subject matter jurisdiction);

- *Kellogg Co. v. Pinkston*, 253 Ga. App. 190, 191-192 (2001) (holding that the state court lacked subject matter jurisdiction, vacating the trial court's entry of final judgment for plaintiffs, and remanding with direction that the trial court dismiss the plaintiff's complaint).[6]

*Kellogg* succinctly outlines the analysis to be used – and the ultimate conclusion to be reached – in considering Hunt and Steel's Rule 12(b)(1) motion to dismiss. There, the plaintiffs commenced suit against the plaintiff's employer seeking damages for injuries she allegedly sustained as a result of her exposure to asbestos dust in the workplace. *Id*. at 190. The defendant

---

[6] *See also Savannah Hospitality Srvs.,* 350 Ga. App. at FN 4 (citing *Kellogg Co. v. Pinkston, supra,* as follows: "state court erred in denying motion to set aside default judgment in tort case because workers' compensation was exclusive remedy; therefore, state court lacked subject matter jurisdiction.").

failed to file a timely answer and the plaintiffs' obtained a default judgment as to liability. After a bench trial on damages, the trial court entered a final judgment in the plaintiffs' favor for $4.4 million. The trial court denied the defendant's motion to set aside the default judgment and to open default. *Id.*

On appeal, the Georgia Court of Appeals held that the trial court erred in denying the defendant's motion to set aside the judgment and in refusing to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction. *Id.* at 191. The *Kellogg* court noted that "the rights and remedies of an employee against his or her employer for a work-related injury under the Workers' Compensation Act foreclose all other remedies at common law or otherwise for such injury, lost service, or death." *Id.* Where the injuries are compensable under the Act, "the employee is absolutely barred from pursuing a common law tort action to recover such injuries, even if they resulted from intentional misconduct on the part of the employer." *Id.* Accordingly, the Court of Appeals held that the trial court lacked subject matter jurisdiction since the exclusive avenue for the plaintiff's pursuit of work-related injuries was through the workers' compensation system. *Id.* at 192.

The exact same facts and ultimate conclusions exist here. The Amended Complaint pleads causes of action for work-related injuries against Hunt and Steel preempted by the Act. As such, this Court has a duty to dismiss Plaintiff's claims against Hunt and Steel for lack of subject matter jurisdiction.

**II.** **Plaintiff Fails to State a Claim Against Hunt and Steel Upon Which Relief May Be Granted**

As discussed in Section I A above, in accordance with O.C.G.A. § 34-9-8, Hunt, as the general contractor for the Project, and Steel, as an intermediate subcontractor, were Plaintiff's statutory employers at the time of his injury. Given that Hunt and Steel were Plaintiff's statutory

employers, Plaintiff cannot maintain a tort action against them for his injuries. *E.g. Sabellona v. Albert Painting, Inc.*, 303 Ga. App. 842, 843 (2010) ("[Georgia law] prevents an injured employee or his/her dependents from bringing a tort claim against the employer, *a statutory employer*, or a co-employee.") (emphasis added). Since Plaintiff cannot possibly introduce evidence within the framework of the Amended Complaint sufficient to establish a claim for the relief sought, the Amended Complaint must be dismissed.

### A.      O.C.G.A. § 9-11-12(b)(6) Motion to Dismiss Standard

A motion to dismiss pursuant to O.C.G.A § 9–11–12(b)(6) will not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. *Stendahl v. Cobb County,* 284 Ga. 525(1), 668 S.E.2d 723 (2008). The main consideration of such a motion to dismiss is "whether, under the assumed set of facts, a right to some form of legal relief would exist." *Charles H. Wesley Educ. Foundation v. State Election Board,* 282 Ga. 707, 714(1), 654 S.E.2d 127 (2007) (Sears, C.J., dissenting).  If material allegations are missing from a pleading, then the pleading fails. *Patrick v. Verizon Directories Corporation,* 284 Ga. App. 123, 124 (2007). An injured employee's claims against his or her employer for damages other than workers' compensation benefits are subject to dismissal for failure to state a claim. *Dugger v. Miller Brewing Co.*, 199 Ga. App. 850, 853 (1991) (affirming trial court's dismissal of tort claims against employer and recognizing that "'[i]t is well settled [under Georgia law] that when an injury arises out of and in the course of employment, the employee's sole remedy is against the employer, pursuant to O.C.G.A. § 34-9-11 [the Act's exclusive remedy provision].'") (quoting *Labelle v. Lister*, 192

Ga. App. 464 (1989)); *Savannah Hospitality Srvs.*, *supra*, 350 Ga. App. at 200 (reversing trial

court's denial of employer's motion to dismiss).

> **B.     As Plaintiff's Statutory Employers, Hunt and Steel are Immune from Tort Liability under O.C.G.A. § 34-9-11 and Therefore Plaintiff has Failed to State a Claim for Relief Against Them**

An injury is compensable under the Act, where, as in this case, the injury (a) occurred in

the course of the employment; and (b) arose out of the employment. *Savannah Hospitality Srvs.*,

350 Ga. App. at 198 (citing O.C.G.A. § 34-9-1 (4)). The Act "is designed to provide for relief to

injured employees, while also protecting employers from excessive recoveries of damages." *Id.*

at 197. Importantly, the Act contains an exclusive remedy provision, which reads in relevant

part:

> The rights and the remedies granted to an employee by this chapter *shall exclude ... all other rights and remedies of such employee [or] his or her personal representative ... and all other civil liabilities whatsoever at common law or otherwise, on account of such injury, loss of service, or death....* No employee shall be deprived of any right to bring an action against any third-party tort-feasor, other than an employee of the same employer or any person who, pursuant to a contract or agreement with an employer, provides workers' compensation benefits to an injured employee, notwithstanding the fact that no common-law master-servant relationship or contract of employment exists between the injured employee and the person providing the benefits....

O.C.G.A. 34-9-11(a) (emphasis added).

Thus, when the Act governs an injured employee's claims, it provides the employee's *exclusive*

*remedy* against his employer and precludes recovery on a tort claim. *E.g. Carr*, 317 Ga. App. at

734; *Savannah Hospitality Srvs.* 350 Ga. App. at 197.

The immunity provided by the Act extends to an injured employee's statutory employers.

*E.g. Carr*, 317 Ga. App. at 734 ("Immunity from tort actions under the exclusive remedy

provision is a correlative benefit of the statutory employer's liability to pay workers'

compensation benefits"); *Wright Assocs. v. Rieder*, 247 Ga. 496, 500 (1981) ("The quid pro quo

for the for the statutory employer's potential liability is immunity from tort liability."). This immunity applies to statutory employers even if the employer never paid the injured employee workers' compensation benefits, or even if the employer has been indemnified from paying such benefits. *Patterson*, *supra*, 286 Ga. App. at 430 (citing *Wright Assocs*, 247 Ga. at 500; *Bossard v. Atlanta Neighborhood Dev. Partnership*, 254 Ga. App. 799, 805 (2002)); *Starr Indem. & Liability Co.*, 339 Ga. App. 495, 497 (2016) ("[I]t has also been made clear that this statutory immunity from suit includes the statutory employer regardless whether that statutory employer had actually paid the workers' compensation benefits."). Accordingly, "[i]t is a statutory employer's *potential* liability for workers' compensation benefits rather than actual liability that triggers the tort immunity." *Maguire v. Dominion Dev. Co.,* 241 Ga.App. 715, 717 (1999).

Here, it is undisputed that Plaintiff was injured in the course of his employment with S&R, and that his injuries arose out of his employment. What's more, Plaintiff has actually claimed *and received* workers' compensation benefits as a result of the Accident. In other words, the compensatory scheme set forth by the Act has worked exactly the way the Legislature intended, and Plaintiff has received the proper and *exclusive* remedy for his injuries. Under the clear language of the Act, and the cases interpreting the Act, Hunt and Steel were Plaintiff's statutory employees and are thus immune from the claims brought by Plaintiff in this case. *E.g. Warden v. Hoar Construction Company,* 269 Ga. 715, 716 (1998) (affirming dismissal of general contractor based on statutory employer immunity); *Landrum,* 191 Ga. App. at 806 (affirming dismissal of intermediate contractors based on statutory employer immunity). Therefore, Plaintiff's claims against Hunt and Steel fail to state a claim for which relief may be granted and must be dismissed.

RECEIVED FOR FILING 06/25/2021 2:17 PM CHATHAM CO. SUPERIOR COURT   Brian A. Hart - Clerk of Court

## CONCLUSION

The application of Georgia law to the indisputable facts in this case establishes that Hunt and Steel are entitled to judgement as a matter of law with regard to Plaintiff's claims. Hunt and Steel were Plaintiff's statutory employers, and his claims against them are governed by the Act. As the Board exercises all powers and performs all duties relating to the enforcement of Act, this Court lacks subject matter jurisdiction over Hunt and Steel. In addition, Plaintiff's claims against Hunt and Steel must also be dismissed because, as Plaintiff's statutory employers, they are immune from the tort claims brought by Plaintiff in this case. For all of the foregoing reasons, Hunt and Steel respectfully request that this Court dismiss Plaintiff's claims against Hunt and Steel with prejudice, and that this Court grant Hunt and Steel such further relief as it deems just and proper under the circumstances.

Respectfully submitted this 25th day of June, 2021.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

*/s/ Matthew A. Marrone*
Joshua S. Wood
Georgia Bar No.: 881696
Matthew A. Marrone
Georgia Bar No.: 153065
jwood@wwhgd.com
mmarrone@wwhgd.com
*Attorneys for Hunt Construction Group, Inc. and Steel, LLC*

3344 Peachtree Road, N.E.,
Suite 2400
Atlanta, Georgia 30326
Telephone: (404)-876-2700
Facsimile:  (404)-875-9433

Brian A. Hart - Clerk of Court

# EXHIBIT A

IN THE STATE COURT OF CHATHAM COUNTY
STATE OF GEORGIA

ALBERT MARSHALL,

        Plaintiff,

vs.

HUNT CONSTRUCTION GROUP, INC.
aka AECOM HUNT, STEEL, LLC, PLANT
RIVERSIDE, LLC, KESSLER COLLECTION
MANAGEMENT, LLC, THE KESSLER
ENTERPRISE, INC., JOHN AND JANE DOES
1-30; and BUSINESS/CORPORATE ENTITIES
A-Z,

        Defendants.

CIVIL ACTION NO.:
STCV21-00567

------------------------------------------------

## **AMENDED COMPLAINT**

COMES NOW, ALBERT MARSHALL, Plaintiff in the above-styled action and files

this Complaint against Defendants, HUNT CONSTRUCTION GROUP, INC. aka

AECOM HUNT, STEEL, LLC (hereinafter referred to as Steel), PLANT RIVERSIDE, LLC,

(hereinafter referred to as Plant Riverside), KESSLER COLLECTION MANAGEMENT, LLC

(Hereinafter referred to as Kessler), THE KESSLER ENTERPRISE, INC., , JOHN AND JANE

DOES 1-30; and BUSINESS/CORPORATE ENTITIES A-Z and alleges as follows:

1.

Defendant, HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT, is a Indiana

Corporation licensed to do business in Georgia and at all times mentioned herein was doing

business in Savannah, Chatham County, Georgia. With offices located at 3 Martin Luther King

Jr, Blvd., Savannah, Chatham County, Georgia and this Defendant does substantial business and

has a continuing presence in Chatham County, Georgia. This Defendant may be served

1

Copy from re:SearchGA

personally on its registered agent CT CORPORATION, 289 S. Culver Street, Lawrenceville, GA 30046.

2.

Defendant, STEEL, is a Georgia business entity, and at all times mentioned herein was, doing business in Chatham County Georgia. Defendant, STEEL, may be served with process by personally serving its registered agent, CORPORATE CREATION NETWORKS, INC., 2985 Gordy Parkway, 1st Floor, Marietta, GA 30066.

3.

Defendant, KESSLER, is a Delaware business entity that operates multiple hotel properties in the State of Georgia including Chatham County and maintains offices and a continuing presence in Chatham County, Georgia. This Defendant may be served c/o CORPORATION SERVICE COMPANY, 251 Little Falls Drive, Wilmington, DE 19808.

4.

Defendant, PLANT RIVERSIDE, LLC, is a Delaware business entity and at all times mentioned herein was doing business in Chatham County, Georgia. Defendant, PLANT RIVERSIDE, may be served with process by personally serving its registered agent, JOSEPH B. FOLTZ, ESQUIRE at 271 17th Street NW, Suite 2400, Atlanta, GA 30363.

5.

Defendant, THE KESSLER ENTERPRISE, INC., is a Georgia business entity, and at all times mentioned herein was, doing business in Chatham County Georgia. Defendant, THE KESSLER ENTERPRISE, INC., may be served with process by personally serving its registered

Copy from re:SearchGA

RECEIVED FOR FILING, STATE COURT OF CHATHAM COUNTY 2/16/2021 1:28 PM   Clerk of Court

agent, JOSEPH B. FOLTZ, 271 17th Street NW, Suite 2400, Atlanta, GA 30363-1017.

6.

Defendants, JANE AND JOHN DOES 1-30 are as yet unknown and unidentifiable, but whose negligence harmed ALBERT MARSHALL. Defendants, Jane and John Does 1-30 include managers, employees, and individuals owning any interest in any of the Defendants named in this Complaint, or in either of the business names mentioned in this Complaint. Defendants Business/Corporate Entities A-Z are as yet and unidentifiable, but whose negligence harmed ALBERT MARSHALL.  Defendants, Jane and John 5 Does 1-30 include business and/or corporate entities which hired, retained, managed, contracted, or were in any way involved in the construction operation described in this Complaint, or in the management of any of the Defendants named in this Complaint or in any business names mentioned in this Complaint.

7.

Jurisdiction and venue are proper in this court.

<strong><u>FACTUAL ALLEGATIONS</u></strong>

8.

The Plaintiff, ALBERT MARSHALL, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 7 as if fully alleged herein.

9.

On or about June 23, 2019 Plaintiff, ALBERT MARSHALL, was working on the

3

Copy from re:SearchGA

premises of Defendant, KESSLER, and/or Defendant, THE KESSLER ENTERPRISE, INC.

and/or Defendant, PLANT RIVERSIDE, LLC, located at Plant Riverside (400 W. River Street)

in Savannah, Chatham County Georgia.

## 10.

At all times relevant hereto, Plaintiff, ALBERT MARSHALL, was employed by S&R

Enterprises.

## 11.

At all times relevant hereto, Plaintiff, ALBERT MARSHALL, was acting within the

scope of his employment with S&R enterprises. The services tasks and duties Plaintiff, ALBERT

MARSHALL, provided incident to said employment was performed on the premises of

Defendant, KESSLER and/or Defendant, THE KESSLER ENTERPRISE, INC. and/or

Defendant, PLANT RIVERSIDE, LLC, at the Plant Riverside hotel project which was being

developed by KESSLER and THE KESSLER ENTERPRISE, INC.

## 12.

On information and belief, Defendant, KESSLER, Defendant, THE KESSLER

ENTERPRISE, INC., and/or Defendant, PLANT RIVERSIDE, LLC, was the developer and/or

owner of said hotel and entertainment zone project located at 400 W. River Street, in Savannah,

Chatham County Georgia.

## 13.

On information and belief, to achieve the ends of its development project, Defendants,

KESSLER, THE KESSLER ENTERPRISE, INC., and PLANT RIVERSIDE, LLC retained the

services of Defendant, HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT, as a

general contractor. As such, Defendant, HUNT CONSTRUCTION GROUP, INC. aka AECOM

Copy from re:SearchGA

HUNT, managed and directed the entire scope of the project including the hiring of subcontractors who performed various elements of the work on the project and HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT was in control of the premises.

**14.**

On information and belief, Defendant, HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT, hired Defendant, STEEL, LLC, to provide materials and perform Steel and metallurgical work on the project.

**15.**

On information and belief, Defendant, HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT, hired S&R to perform work on the project including assisting with the hanging of a decorative grapple within the structure at 400 W. River Street.

**16.**

On information and belief, the grapple referred to in paragraph 15 was acquired by Defendant, HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT, at the direction of Defendant, KESSLER and **Defendant, THE KESSLER ENTERPRISE, INC.**, and all decisions regarding the suspension process, welding, anchoring, hoisting and affixing the grapple to the structure were made by Defendants, PLANT RIVERSIDE, LLC, and KESSLER, **THE KESSLER ENTERPRISE, INC.**, HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT, and STEEL, LLC.

**17.**

On information and belief, Defendants, PLANT RIVERSIDE, KESSLER, HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT, STEEL, LLC, and **THE KESSLER**

Copy from re:SearchGA

ENTERPRISE, INC., had a duty to inspect the premises and to ensure that the welding, hoisting,

suspending, and affixing the grapple to the structure was done in a safe and reasonable manner.

**18.**

Management at S&R enterprises and Plaintiff, ALBERT MARSHALL, relied on

Defendants, PLANT RIVERSIDE, LLC, KESSLER, **THE KESSLER ENTERPRISE, INC.,**

HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT, and STEEL, LLC, to safely

devise a plan for hoisting the grapple and affixing it to the PLANT RIVERSIDE structure and

Defendants owed a duty to Plaintiff, ALBERT MARSHALL, in particular to devise a reasonably

safe plan for hoisting and welding the grapple.

**19.**

On June 23, 2019   Plaintiff, ALBERT MARSHALL, was injured while working using

the directions and plans of Defendants, PLANT RIVERSIDE, LLC, KESSLER, **THE**

**KESSLER ENTERPRISE, INC.,** HUNT CONSTRUCTION GROUP, INC. aka AECOM

HUNT, and STEEL, LLC, as Plaintiff worked on hoisting the grapple to be suspended within the

rafters of the structure.

**20.**

Defendants negligently failed to properly calculate the weight of the grapple, and

negligently failed to deploy the proper rigging system and negligently failed to properly weld

the pad eye to the anchoring structure and as a result thereof, during the hoisting of the grapple

the rigging system failed and the weight of the grapple caused it to violently swing free

thereby knocking Plaintiff, ALBERT MARSHALL, from the man lift which he occupied and

causing Plaintiff, ALBERT MARSHALL, to fall approximately 10' to the concrete below.

6

Copy from re:SearchGA

RECEIVED FOR FILING, STATE COURT CHATHAM CO., 5/26/2021 1:38 PM — Clerk of Court

**21.**

As a result of the above described negligence of Defendants, Plaintiff, ALBERT MARSHALL, was injured as outlined below, and said injuries include permanent disfigurement and disability and impairment.

### COUNT I
### NEGLIGENCE AGAINST HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT, STEEL, LLC, PLANT RIVERSIDE, LLC, KESSLER COLLECTION MANAGEMENT, LLC, and THE KESSLER ENTERPRISE, INC.

**22.**

Plaintiff, ALBERT MARSHALL, re-alleges and incorporates herein by reference the allegations contained in paragraphs 1 through 21 of the Complaint.

**23.**

Each of the Defendants were under a duty to properly and reasonably inspect, direct, repair, calculate, plan, equip and maintain the work area of the Power Plant premises.

**24.**

Defendants breached these duties by failing to properly direct, inspect, repair, calculate, plan, equip and maintain the premises where the grapple supporting structures were to be welded onto the structure in accordance with standards reasonably required for safe rigging and welding.

**25.**

Defendants failed to act reasonably under the circumstances.

**26.**

Specifically, but not by way of limitation, Defendants breached these duties by failing to properly inspect the premises, by failing to appreciate the heat tolerance of the welded surfaces and the tensile strength of each, by failing to appreciate the weight of the grapple, by failing to

7

Copy from re:SearchGA

RECEIVED FOR FILING, STATE COURT OF CHATHAM CO., GA, 01/26/2021 1:19 PM — Clerk of Court

properly design the rigging system for use by Plaintiff, and by failing to provide the correct materials to plaintiff to work with, all in violation of construction standards which are widely recognized and accepted.

### 27.

Defendants were negligent per se in that Defendants violated the following provisions which are codified in the Code of Federal Regulations (CFR) and are designed to guard against the particular danger described herein and plaintiff comes within the class of persons intended to be protected from the particular danger including, but not limited to; Code of Federal Regulations §1926.251(c)(15)(ii), §1926.251(f)(1), and § 1926.251(f)(2), and said violations were a proximate cause of plaintiff's injury.

### 28.

The breach of these duties caused the serious and substantial brain injuries, internal injuries, broken bones as well as the extreme mental and physical pain and suffering of Plaintiff, ALBERT MARSHALL.

### 29.

Plaintiff, ALBERT MARSHALL, is entitled to the recovery of damages flowing from these breaches of duty, including but not limited to, past and future medical expenses, past and future mental and physical pain and suffering, and past and future lost wages.

### 30.

To the extent, Plaintiff suffered a pre-existing condition Defendants proximately caused an aggravation to such condition.

### COUNT II
### PREMISES LIABILITY AGAINST THE KESSLER

8

Copy from re:SearchGA

**ENTERPRISE, INC. HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT, STEEL, LLC, PLANT RIVERSIDE, LLC, and KESSLER COLLECTION MANAGEMENT, LLC**

**31.**

Plaintiff, ALBERT MARSHALL, re-alleges and incorporates herein by reference the allegations contained in paragraphs 1 through 30 of the Complaint.

**32.**

Defendant, KESSLER, THE KESSLER ENTERPRISE, INC., and/or HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT and/or PLANT RIVERSIDE, LLC, was the owner or possessor of the premises of the Plant River street project.

**33.**

At all times relevant hereto, Plaintiff, ALBERT MARSHALL, was an invitee of Defendant, HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT, Defendant KESSLER, Defendant, THE KESSLER ENTERPRISE, INC., and Defendant, PLANT RIVERSIDE, LLC.

**34.**

The law of Georgia imposes upon these Defendants the duty to exercise ordinary care in keeping the premises and work area safe, to ensure that the premises were constructed without defect, to repair and maintain the premises in good repair, and to ensure that the premises of the PLANT RIVERSIDE, project were maintained in a reasonably safe condition and in accord with the building codes of the state of Georgia, the Code of Federal regulations and the standards of the American Welding Society.

**35.**

9

Copy from re:SearchGA

On information and belief, Defendants, KESSLER, THE KESSLER ENTERPRISE, INC., and HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT, and PLANT RIVERSIDE, LLC, personally selected the grapple which caused plaintiff's injury and defendants knew that the manner in which it was to be hung posed an unreasonable risk of harm and created unsafe conditions for plaintiff to work in.

### 36.

Defendants, KESSLER, THE KESSLER ENTERPRISE, INC., HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT, and PLANT RIVERSIDE, LLC, had knowledge of this risk, and said knowledge of this risk was superior to that of the Plaintiff, ALBERT MARSHALL.

### 37.

Defendants, KESSLER, THE KESSLER ENTERPRISE, INC., HUNT CONSTRUCTION GROUP, INC. aka AECOM HUNT, and PLANT RIVERSIDE, LLC, breached these duties, creating and environment which unreasonably increased the propensity for a welding and rigging failure.

### 38.

The breach of this duty caused the extreme mental and physical pain and suffering to Plaintiff, ALBERT MARSHALL.

### 39.

Plaintiff, ALBERT MARSHALL, is entitled to the recovery of damages flowing from this breach of duty.

### 40.

10

Copy from re:SearchGA

RECEIVED FOR FILING, STATE COURT OF CHATHAM CO., 1/28/2021 1:28 PM   Clerk of Court

To the extent, Plaintiff suffered a pre-existing condition Defendants proximately caused an aggravation to such condition.

## VII. DAMAGES

### 41.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 40 above as if fully restated.

### 42.

As the direct and proximate result of the Defendants' negligence, Plaintiff suffered personal injuries and will continue to suffer personal injuries in the future, including bodily injuries, pain and mental suffering.

### 43.

As the direct and proximate result of the Defendants' negligence, Plaintiff incurred medical expenses, in an amount to be proven at trial, including current medical bills totaling more than $454,044.24 for treatment of the injuries caused solely and proximately by Defendants.

| | | |
|---|---|---|
| 1. | Memorial Hospital (Emergency Department) | $285,264.54 |
| 2. | Emas Spine & Brain Center | $17,203.70 |
| 3. | Chatham Orthopedic<br>Dr. Noonburg<br>Dr. Levit<br>Dr. Sofianos | $151,094.00 |
| 4. | Dr. Donahue (Savannah Neurology Specialists) | $482.00 |

### 44.

11

Copy from re:SearchGA

As the direct and proximate result of the Defendants' negligence, Plaintiff will incur future medical expenses, in an amount to be proven at trial, for the treatment of the injuries caused solely and proximately by defendants.

**45.**

As the direct and proximate result of the Defendants' negligence, Plaintiff incurred lost wages, in an amount to be proven at trial, caused solely and proximately by Defendants.

**46.**

As the direct and proximate result of the Defendants' negligence, Plaintiff has suffered a diminished earnings capacity, in the amount to be proven at trial, caused solely and proximately by Defendants.

**47.**

As the direct and proximate result of the Defendants' negligence, Plaintiff has suffered pain and suffering and will continue to suffer pain and suffering, for the injuries caused solely and proximately by Defendants.

**48.**

As the direct and proximate result of the Defendants' negligence, Plaintiff suffered a physical impairment in the past and future, in the amount to be proven at trial, for the treatment of the injuries caused solely and proximately by Defendants.

**49.**

Pursuant to O.C.G.A. 51-12-5.1, Plaintiff is entitled to Punitive damages in an amount to be determined by the enlightened conscience of the jury because the Defendants acts and

12

Copy from re:SearchGA

omissions were wanton, willful and gross. As such the Defendants should be punished due to the enormity of Plaintiff's losses which flow directly from the Defendants' conduct and said punitive damages should take into account the size and liquidity of Defendants in order to discourage Defendants from engaging in such willful, wanton and gross conduct in the future.

**50.**

As the direct and proximate result of the Defendants' negligence, Plaintiff is entitled to attorney fees under O.C.G.A. § 13-6-11.

**51.**

To the extent, Plaintiff suffered a pre-existing condition Defendants proximately caused an aggravation to such condition.

### CLAIMS FOR RELIEF

**WHEREFORE**, Plaintiff, ALBERT MARSHALL, prays for the following relief:

(A)    That summons and process issue and be served upon each Defendant;

(B)    For a trial by a jury comprised of twelve persons;

(C)    That the Plaintiff, ALBERT MARSHALL, be awarded an appropriate sum to compensate him for his damages, including but not limited to past and future medical bills, past and future lost wages, mental and physical pain and suffering, permanent impairment, scarring and disfigurement, and aggravation of previously existing conditions, and any other damages proximately caused by Defendants; and

(D)    For such other and further relief as the Court deems just and proper.

This the _26th_ day of _____May_____, _2021_.

Copy from re:SearchGA

Respectfully Submitted,


_____
WILLIE J. WALKER, ESQUIRE
Attorney for Plaintiff
625 West Union Street, Suite #3
Jacksonville, FL 32202
(904) 358-7104 Telephone
(904)353-3702 Facsimile
Georgia Bar Number 732900

_____
SHAQUANDRA A. WOODS, ESQUIRE
Co-Counsel for Plaintiff
5501 Wesconnett Street, Unit# 7115
Jacksonville, FL 32244
(904) 451-7321 Telephone
(904) 325-7150 Facsimile
Georgia Bar Number 579239

Copy from re:SearchGA

# EXHIBIT B

IN THE STATE COURT OF CHATHAM COUNTY
STATE OF GEORGIA

ALBERT MARSHALL,

          Plaintiff,

CIVIL ACTION NO.: STCV21-00567

VS.

HUNT CONSTRUCTION GROUP, INC.
aka AECOM HUNT, STEEL, LLC,
PLANT RIVERSIDE, LLC, KESSLER
COLLECTION MANAGEMENT, LLC,
THE KESSLER ENTERPRISE, INC.,
JOHN AND JANE DOES 1-30; and
BUSINESS/CORPORATE ENTITIES A-Z

          Defendants.

## AFFIDAVIT OF CHARLES C. DOUGLAS

Personally appeared before the undersigned official authorized to administer oaths, CHARLES C. DOUGLAS, who, after being duly sworn, declares under oath as follows:

1.     My name is CHARLES C. DOUGLAS. I am Assistant General Counsel at Hunt Construction Group, Inc. aka AECOM Hunt ("Hunt").

2.     The matters testified to in this Affidavit are true and correct and within my own personal knowledge. I am over the age of 18 and competent to testify thereto.

3.     I understand that this Affidavit is made under oath and is to be used for all lawful purposes in connection with a civil action captioned *Albert Marshall v. Hunt Construction Group, Inc. aka AECOM Hunt, Steel, LLC, Plant Riverside, LLC, Kessler Collection Management, LLC, The Kessler Enterprise, Inc., John and Jane DOES 1-30; and*

*Business/Corporate Entities A-Z;* in the State Court of Chatham County, State of Georgia (the "Lawsuit").

4.      This Affidavit is submitted in support of Hunt and Steel, LLC's contemporaneously filed Motion to Dismiss.

5.      A true and correct copy of Plant Riverside, LLC's contract with Hunt for the project that is the subject of this case is attached hereto as Exhibit 1.

This **24**ᵗʰ day of ___June___, 2021.

_____

Sworn to and subscribed before me
this 24th day of June, 2021.

_Lura Dawn Lawson_
Notary Public      LURA DAWN LAWSON

My Commission Expires: 03/14/2025

[Notarial Seal]



Lura Dawn Lawson
Notary Public Seal State of Indiana
Marion County
Commission # 697970
My Commission Expires 03/14/2025



Lora Dawn Elsworth
Notary Public Seal State of Indiana
Marion County
Commission # 698556
My Commission Expires 03/12/25

# EXHIBIT 1

# AIA® Document A102™ – 2007

### *Standard Form of Agreement Between Owner and Contractor*
*where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price*

**AGREEMENT** made as of the « August » day of « 31 » in the year « 2016 »
*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

«Plant Riverside, LLC,»«A Delaware Limited Liability Company »
« 4901 Vineland Road, Suite 650 »
«Orlando, FL 32811 »
« »

and the Contractor:
*(Name, legal status, address and other information)*

« Hunt Construction
2450 South Tibbs Avenue
Indianapolis, Indiana 46241
« »
« »
« »

for the following Project:
*(Name, location and detailed description)*

« Kessler Plant Riverside – Historic Structure
400 West River Street, Savannah, Georgia»
«consisting of: 3.79 acres of land along the Savannah River on which is located a historic structure to be redeveloped into a four diamond hotel with related retail, restaurant and meeting space uses and a 6-level multi-use building incorporating hotel rooms and ground level entertainment meeting space to the west of the historic structure, together with three new buildings to the east of the historic structure with ground floor retail/restaurant space and hotel rooms above, an 1,100 foot expansion to the Savannah Riverwalk, three (3) pavilion buildings, six (6) kiosks and other site improvements. This Agreement governs the Kessler Plant Riverside – Historic Structure (the "Project") of the development. »
«: »

The Architect:
*(Name, legal status, address and other information)*

John T. Campo & Associates, Inc.
400 Poydras Street, Suite 1410
New Orleans, Louisiana 70130
« »

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document is not intended for use in competitive bidding.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

**ELECTRONIC COPYING** of any portion of this AIA® Document to another electronic file is prohibited and constitutes a violation of copyright laws as set forth in the footer of this document.

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
User Notes: Error! Unknown document property name. (1497519986)

1

*Brian S. Hart* - Clerk of Court

TABLE OF ARTICLES

**1**　　**THE CONTRACT DOCUMENTS**

**2**　　**THE WORK OF THIS CONTRACT**

**3**　　**RELATIONSHIP OF THE PARTIES**

**4**　　**DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION**

**5**　　**CONTRACT SUM**

**6**　　**CHANGES IN THE WORK**

**7**　　**COSTS TO BE REIMBURSED**

**8**　　**COSTS NOT TO BE REIMBURSED**

**9**　　**DISCOUNTS, REBATES AND REFUNDS**

**10**　　**SUBCONTRACTS AND OTHER AGREEMENTS**

**11**　　**ACCOUNTING RECORDS**

**12**　　**PAYMENTS**

**13**　　**DISPUTE RESOLUTION**

**14**　　**TERMINATION OR SUSPENSION**

**15**　　**MISCELLANEOUS PROVISIONS**

**16**　　**ENUMERATION OF CONTRACT DOCUMENTS**

**17**　　**INSURANCE AND BONDS**

**ARTICLE 1　THE CONTRACT DOCUMENTS**
The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, the order of precedence shall be in the sequence set forth in Article 1.2 of the General Conditions.

**ARTICLE 2　THE WORK OF THIS CONTRACT**
The Contractor shall fully execute the Work described in the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others.

2.1.  The term "Work" includes all material, labor, equipment and supervision necessary to complete all preconstruction and construction services to produce the Project related site work in the City of Savannah, Georgia,

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
**User Notes:** Error! Unknown document property name.　　　　　　　　　　　　　　　(1497519986)

2

at the address shown on the first page of this Agreement. Construction will be in accordance with the Contract Documents listed in Article 16.

## ARTICLE 3   RELATIONSHIP OF THE PARTIES

The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests in connection with the Project without increasing the standard of care or fiduciary duty to the Owner.. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents.

## ARTICLE 4   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ 4.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

« The date of commencement shall be the date the Notice to Proceed is issued by the Owner, once received by Contractor.»

If, prior to commencement of the Work, the Owner requires time to file mortgages and other security interests, the Owner's time requirement shall be as follows:

« »

§ 4.2 The Contract Time shall be measured from the date of commencement.

§ 4.3 The Contractor shall achieve Substantial Completion of the entire Work not later than 729 days from the date of commencement, , provided the work flow is uninterrupted by document release issues, receipt of Building Permit, early release work package approval, and untimely delivery of final GMP construction documents to the Contractor for review.
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. If appropriate, insert requirements for earlier Substantial Completion of certain portions of the Work.)*

*(Insert provisions, if any, for liquidated damages relating to failure to achieve Substantial Completion on time, or for bonus payments for early completion of the Work.)*

THE CONTRACTOR ACKNOWLEDGES THAT, SHOULD CONTRACTOR FAIL TO ACHIEVE SUBSTANTIAL COMPLETION OF THE WORK WITHIN THE CONTRACT TIME, AS ADJUSTED PURSUANT TO THE CONTRACT DOCUMENTS, OWNER WILL SUFFER ACTUAL DAMAGES IN AN AMOUNT NOT CURRENTLY POSSIBLE TO CALCULATE. CONTRACTOR AGREES TO PAY TO THE OWNER, AS LIQUIDATED DAMAGES AND AS OWNER'S EXCLUSIVE REMEDY FOR CONTRACTOR'S FAILURE TO TIMELY ACHIEVE SUBSTANTIAL COMPLETION, THE SUM OF $4,838 FOR EVERY CALENDAR DAY BEGINNING ON THE 31ST CALENDAR DAY AFTER EXPIRATION OF THE CONTRACT TIME FOR THE FIRST FIFTEEN (15) DAYS, $6,451 PER DAY FOR THE NEXT FIFTEEN (15) DAYS, AND $8,064 PER DAY THEREAFTER UNTIL THE WORK IS SUBSTANTIALLY COMPLETE.  LIQUIDATED DAMAGES HEREIN SHALL NOT APPLY TO ANY DAMAGES OWNER MAY SUFFER WHICH ARE CAUSED BY SOMETHING OTHER THAN CONTRACTOR'S DELAY.  LIQUIDATED DAMAGES ARE AGREED TO BE A REASONABLE ESTIMATION OF OWNER'S DAMAGES AND NOT A PENALTY; ACTUAL DAMAGES BEING INCAPABLE OF ACCURATE DESCRIPTION. NOTWITHSTANDING ANYTHING IN THE CONTRACT DOCUMENTS TO THE CONTRARY, IN NO EVENT SHALL THE TOTAL SUM OF LIQUIDATED DAMAGES FOR WHICH CONTRACTOR MAY BE LIABLE FOR HEREUNDER

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
User Notes: Error! Unknown document property name.                               (1497519986)

EXCEED THE TOTAL CUMULATIVE SUM OF FIFTY PERCENT (50%) OF THE CONTRACTOR'S CONSTRUCTION FEE.

WEATHER DAYS SHALL BE CALCULATED BY THE NOAA PUBLISHED (AVERAGED OVER A THREE YEAR PERIOD) REPORT FOR THE LOCAL AREA. IF WEATHER DELAYS EXCEED THE PUBLISHED NOAA REPORT, AS OUTLINED ABOVE, AND THE WEATHER DAYS IMPACT ACTIVITIES ON THE CRITICAL PATH, CONTRACTOR SHALL SUBMIT EVIDENCE OF SUCH DELAY TO OWNER. IF DELAY EXCEEDS PUBLISHED EXPECTED DAYS DURING A GIVEN PERIOD AND ACTIVITY BEING DELAYED IS ON THE APPROVED CPM SCHEDULE, OWNER WILL EXTEND SCHEDULE DAY FOR DAY.

ALL WEATHER DELAYS ARE TO BE DOCUMENTED, WHEN A WEATHER DELAY OCCURS, A COPY OF THE PROJECT SUPERINTENDENT'S WEATHER DELAY REPORT OUTLINING THE WEATHER AND JOBSITE CONDITIONS WILL BE AVAILABLE TO THE OWNER. A COPY OF THIS REPORT WILL BE SUBMITTED WITH THE REQUEST FOR WEATHER DELAY EXTENSIONS. A LOG OF ALL WEATHER DELAYS WILL ALSO BE INCLUDED IN THE PROGRESS MEETING MINUTES. A COPY OF WHICH WILL BE SENT TO THE OWNER IN SOME INSTANCES.

IF WEATHER DELAYS IN ACCORDANCE WITH LANGUAGE ABOVE EXTENDS CONTRACT TIME OR IF THE CONTRACT TIME IS EXTENDED PURSUANT TO SECTION 8.3 OF THE A201 GENERAL CONDITIONS OR IF DAYS ASSOCIATED WITH OWNER DECISIONS, OWNER EQUIPMENT, OWNER WORKERS OR CIRCUMSTANCES BEYOND THE CONTRACTOR'S CONTROL OCCUR THAT EXTEND THE CONTRACT TIME, THEN GENERAL CONDITIONS COSTS, NOT TO EXCEED $3,423 PER DAY, SHALL APPLY. COST BASED ON "GENERAL CONDITIONS" DEFINITION IN SECTION 15.6 AND EXHIBIT B, BILL RATES ON LABOR.

« »

## ARTICLE 5  CONTRACT SUM
**§ 5.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum is the Cost of the Work as defined in Article 7 plus the Contractor's Fee.

**§ 5.1.1** The Contractor's Fee:
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Contractor's Fee.)*

« 5.1.1.1  The Contractor's Fee shall be comprised of the following:

| | |
|---|---|
| (i) | the sum of $19,675per month from January 1, 2016 until the day of the month in which construction commences on the Project (prorated to such day) (the "Pre-Construction Services Fee"); |
| (ii) | the sum of $64,509 within thirty (30) days after the closing of the Owner's construction loan (the "First Draw Payment") for past pre-construction expenses; |
| (iii) | the sum of $1,220,362  (the "Base Fee"); |
| (iv) | the first $71,282 in savings and deductions from the Guaranteed Maximum Price (the "GMP Savings"); |
| (v) | the first $94,593 of the Contractor's contingency funds remaining in the budget at final completion of the Project (the "Deferral Fee"), but only in the event such funds remain in the budget at the completion of the Project; and |
| (vi) | fifty percent (50%) of any of the Contractor's contingency funds remaining in the budget at final completion in excess of the Deferral Fee (the "Contingency Savings"), but only in the event such funds remain in the budget at the completion of the Project. |

Owner and Contractor agree that the sum of $138,166 has already been paid by Owner to Contractor as of January 15, 2016.  This amount will not reduce the Contractor's Fee.

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
**User Notes: Error! Unknown document property name.** (1497519986)

4

5.1.1.2  The Owner recognizes that the Contractor has certain budget and schedule responsibilities under the Contract.  In order to meet the responsibilities, the Contractor may self-perform certain scopes of work in order to meet the schedule and/or the budget.  The Contractor will advise the Owner of the necessity to perform the work and unless a reasonable objection is given by the Owner, the Contractor shall be given the opportunity to self-perform the scope of work on a lump sum basis.  The Contractor will use reasonable good faith efforts to secure three (3) competitive prices for all scope of work for self-performed work, but in the event the Contractor is unable to achieve that goal, the Contractor shall be allowed to proceed as necessary.  Beyond the scopes of Work identified by the Contractor on or prior to execution of the Contract, the Contractor shall not self-perform any additional scopes of Work without the Owner's prior written permission which will not be unreasonably withheld. »

**§ 5.1.2** The method of adjustment of the Contractor's Fee for changes in the Work:

«  Cost of the Work plus two and one-half percent (2.5%).  Additive change orders will be adjusted by the 2.5% Fee as well.  Any deductive change orders shall not affect the Contractor's Fee. »

**§ 5.1.3** Limitations, if any, on a Subcontractor's overhead and profit for increases in the cost of its portion of the Work:

« Subcontractor change orders will be limited to 10% overhead and profit for self-performed work and 5% overhead and profit for any work that is further subcontracted. »

**§ 5.1.4** Rental rates for Contractor-owned equipment shall be charged according to the schedule approved by the Owner and attached to this Agreement as Exhibit D.

**§ 5.1.5** Unit prices, if any:
*(Identify and state the unit price; state the quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit |
|------|----------------------|----------------|
|      |                      |                |

## § 5.2 GUARANTEED MAXIMUM PRICE
**§ 5.2.1** The Contract Sum is  a Guaranteed Maximum Price (GMP") by the Contractor not to exceed «  »
($50,091,206), subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the GMP. Costs which would cause the GMP to be exceeded shall be paid by the Contractor without reimbursement by the Owner.
*(Insert specific provisions if the Contractor is to participate in any savings.)*

« During Subcontracting, the Contractor shall use an open-book process and consult with the Owner concerning all costs incurred for the Project.  The Owner shall be afforded every reasonable opportunity to review all subcontracts, estimates, and supporting documentation.  The Owner desires the option to reject and/or approve all Subcontractors prior to the Contractor entering into an agreement.  If the Owner rejects a subcontractor who was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. »

**§ 5.2.2** The GMP is based on the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If bidding or proposal documents permit the Owner to accept other alternates subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when the amount expires.)*

« See Exhibit B »

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
User Notes: Error! Unknown document property name.                                                             (1497519986)

**§ 5.2.3** Allowances included in the GMP, if any:
*(Identify allowance and state exclusions, if any, from the allowance price.)*

| Item | Price |
|------|-------|
| See Exhibit B | |

Allowances are included for line items when the Work cannot be defined or has not been designed.  Any allowance line items included in the Contract shall include an estimate of the cost of material, equipment, and labor.  When the allowance line item is designed and the line item is determined, the line item amount will be fixed and the Contract Sum will be adjusted by Change Order.

**§ 5.2.4** Assumptions, if any, on which the GMP is based:

« See Exhibit A »

**§ 5.2.5** To the extent that the Drawings and Specifications are anticipated to require further development by the Architect, the Contractor has provided in the Guaranteed Maximum Price for such further development consistent with the Contract Documents and reasonably inferable therefrom.  Such further development does not include such things as changes in scope, sequencing, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

**§ 5.2.6**  Contractor's GMP shall contain a construction contingency of ($1,344,879).  The construction contingency has been established for the sole use and control of the Contractor for construction costs within the Construction Documents, and for carrying out the Work.  The Owner shall be given a monthly accounting of all contingency expenditures.

## ARTICLE 6   CHANGES IN THE WORK
**§ 6.1** Adjustments to the Guaranteed Maximum Price on account of changes in the Work may be determined by any of the methods listed in Section 7.3.3 of AIA Document A201–2007, General Conditions of the Contract for Construction.

MARK-UP ON CHANGE ORDERS IS COST OF THE WORK PLUS THE FEE DEFINED IN SECTION 5.1.2 ON SUBCONTRACTED WORK.  WORK SELF PERFORMED BY THE CONTRACTOR SHALL BE THE COST OF WORK INCLUDING GENERAL CONDITIONS AND OVERHEAD PLUS THE FEE DEFINED IN SECTION 5.1.3.
CHANGES IN WORK THAT RESULT IN A CHANGE ORDER TO THE OWNER SHALL BE CALCULATED BY TAKING THE ACTUAL COST OF THE WORK AS DEFINED AS THE COST OF WORK SUBMITTED BY A SUBCONTRACTOR, ADDING THE GENERAL CONDITIONS GENERAL CONDITION EXPENSE IF ANY, AND THEN ADDING THE CONTRACTOR'S FEE AS DEFINED IN ARTICLE 5.1.2. CREDITS TO THE OWNER AS A RESULT OF A CHANGE OF SCOPE WILL BE ISSUED BASED ON THE ACTUAL COST AS SUBMITTED BY THE VENDOR OR SUBCONTRACTOR WITH NO REDUCTION IN ASSOCIATED GENERAL CONDITION EXPENSES OR CONTRACTOR FEE UNLESS THE CHANGE IN SCOPE GREATLY REDUCES THE TIME AND EXPENSE TO  THE CONTRACTOR AND IS AGREED UPON BY ALL PARTIES.

**§ 6.2** In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Section 7.3.3.3 of AIA Document A201–2007 and the term "costs" as used in Section 7.3.7 of AIA Document A201–2007 shall have the meanings assigned to them in AIA Document A201–2007 and shall not be modified by Articles 5, 7 and 8 of this Agreement. Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

**§ 6.3** In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in the above-referenced provisions of AIA Document A201–2007 shall mean the Cost of the Work as defined in Article 7 of this Agreement and the term "fee" shall mean the Contractor's Fee as defined in Section 5.1.1 of this Agreement.

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
**User Notes: Error! Unknown document property name.**                                                                      (1497519986)

6

## ARTICLE 7   COSTS TO BE REIMBURSED
### § 7.1 COST OF THE WORK

**§ 7.1.1** The term Cost of the Work shall mean costs necessarily incurred by the Contractor in the proper performance of the Work. Such costs shall be at rates not higher than the standard paid at the place of the Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 7.  All costs described herein as a "Cost of the Work" are included within the GMP.

**§ 7.1.2** Where any cost is expressly stated in the Contract Documents as being subject to the Owner's prior approval, except in the case of an emergency, the Contractor shall obtain this approval prior to incurring the cost. The parties shall identify any such costs prior to executing this Agreement.

### § 7.2 LABOR COSTS

**§ 7.2.1** Wages of construction workers directly employed by the Contractor to perform the construction of the Work at the site or, with the Owner's prior approval, at off-site workshops.

**§ 7.2.2** Wages or salaries of the Contractor's supervisory and administrative personnel when stationed at or off the site with the Owner's prior  approval.  Rates will be charged in accordance with Exhibit C.
*(If it is intended that the wages or salaries of certain personnel stationed at the Contractor's principal or other offices shall be included in the Cost of the Work, identify in Article 15, the personnel to be included, whether for all or only part of their time, and the rates at which their time will be charged to the Work.)*

The Contract GMP includes a General Conditions GMP as set forth in Exhibit B. The General Conditions GMP contains costs projected to directly supervise Project construction and site office expenses. All other costs under this Section 7.2.2 are billed as Cost of the Work. In no event will any of the costs billed under this Section cause an increase in the Guaranteed Maximum Price.

**§ 7.2.3** Wages and salaries of the Contractor's supervisory or administrative personnel engaged at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.  Rates will be charged in accordance with Exhibit C.

**§ 7.2.3.3** Notwithstanding anything stated herein to the contrary, wages and salaries of Contractor's supervisory or administrative personnel shall only reflect the actual time and costs incurred and Contractor shall not earn any additional profit above the Contractor's Fee from such wages or salaries per labor rates attached.

**§ 7.2.4** Costs paid or incurred by the Contractor for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Sections 7.2.1 through 7.2.3.

**§ 7.2.5** Bonuses, profit sharing, incentive compensation and any other discretionary payments paid to anyone hired by the Contractor or paid to any Subcontractor or vendor, with the Owner's approval.

### § 7.3 SUBCONTRACT COSTS
Payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts.

### § 7.4 COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION
**§ 7.4.1** Costs, including transportation and storage, of materials and equipment incorporated or to be incorporated in the completed construction.

**§ 7.4.2** Costs of materials described in the preceding Section 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
**User Notes: Error! Unknown document property name.**                                                (1497519986)

RECEIVED FOR FILING CHATHAM COUNTY 2/22/2022 5:48 PM   Brian S. Hart - Clerk of Court

completion of the Work or, at the Owner's option, shall be sold by the Contractor. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

### § 7.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS

**§ 7.5.1** Costs including transportation, storage, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Contractor at the site and fully consumed in the performance of the Work. Costs of materials, supplies, temporary facilities, machinery, equipment and tools that are not fully consumed shall be based on the cost or value of the item at the time it is first used on the Project site less the value of the item when it is no longer used at the Project site. Costs for items not fully consumed by the Contractor shall mean fair market value.

**§ 7.5.2** Rental charges for temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Contractor at the site, whether rented from Contractor or others, and costs of transportation, installation, minor repairs and replacements, dismantling and removal. The total rental cost of any Contractor-owned item may not exceed the purchase price of any comparable item. Rates of Contractor-owned equipment and quantities of equipment shall be subject to the Owner's approval.  Rental rates shall be equal to fair market rentals within the metropolitan area where the Project is located and shall include all costs for rented Equipment, including routine maintenance and normal wear and tear. If the cost of any Equipment would otherwise be exceeded by the rent charged to Owner, Contractor shall inform Owner and, upon direction by Owner, purchase for Owner's account any temporary facilities, machinery, equipment and hand tools. Rent for existing Contractor owned Equipment shall not exceed seventy-five percent (75%) of the Contractor's replacement costs for said Equipment. Contractor shall promptly, following the date of the Agreement, prepare a comprehensive list of Equipment that is anticipated to be rented and purchased. Each month, Contractor shall prepare an equipment rental report that identifies the equipment rented for the month and identifies the source of the equipment (whether rented from Contractor or a third party).

**§ 7.5.3** Costs of removal of debris from the site of the Work and its proper and legal disposal.

**§ 7.5.4** Costs of document reproductions, facsimile transmissions and long-distance telephone calls, postage and parcel delivery charges, telephone service at the site and reasonable petty cash expenses of the site office.

**§ 7.5.5** Costs of materials and equipment suitably stored off the site at a mutually acceptable location, subject to the Owner's prior approval.

### § 7.6 MISCELLANEOUS COSTS

**§ 7.6.1** Premiums for that portion of insurance and bonds required by the Contract Documents that can be directly attributed to this Contract. Self-insurance for either full or partial amounts of the coverages required by the Contract Documents, with the Owner's prior approval.   Contractor and all Subcontractor payment and performance bonds and costs will be provided to Owner. Owner and its lender, if any, shall be named as obligees on subcontractor bonds in form reasonably acceptable to Owner and such lender. Owner and Contractor shall cooperate to determine payment and performance bond or default insurance requirements, which shall under all circumstances comply with Owner's construction lender's requirements.

**§ 7.6.2** Sales, use or similar taxes imposed by a governmental authority that are related to the Work and for which the Contractor is liable.  This cost is included in the GMP.

**§ 7.6.3** Fees and assessments for the building permit and for other permits, licenses and inspections for which the Contractor is required by the Contract Documents to pay.  This cost is included in the GMP.

**§ 7.6.4** Fees of laboratories for tests required by the Contract Documents, except those related to defective or nonconforming Work for which reimbursement is excluded by Section 13.5.3 of AIA Document A201–2007 or by other provisions of the Contract Documents, and which do not fall within the scope of Section 7.7.3. This cost is included in the GMP.

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
**User Notes: Error! Unknown document property name.**                                                                    (1497519986)

**§ 7.6.5** Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent rights arising from such requirement of the Contract Documents; and payments made in accordance with legal judgments against the Contractor resulting from such suits or claims and payments of settlements made with the Owner's consent. However, such costs of legal defenses, judgments and settlements shall not be included in the calculation of the Contractor's Fee or subject to the GMP. If such royalties, fees and costs are excluded by the last sentence of Section 3.17 of AIA Document A201– 2007 or other provisions of the Contract Documents, then they shall not be included in the Cost of the Work. Notwithstanding anything contained herein to the contrary, this cost is included in the GMP.

**§ 7.6.6** Costs for electronic equipment, software, and computer and data connectivity costs directly related to the Work. This cost is included in the GMP.

**§ 7.6.7** Deposits lost for causes other than the Contractor's negligence or failure to fulfill a specific responsibility in the Contract Documents. This cost is included in the GMP.

**§ 7.6.8** Legal and mediation costs, including attorneys' fees, other than those arising from disputes between the Owner and Contractor, reasonably incurred by the Contractor after the execution of this Agreement in the performance of the Work and with the Owner's prior approval, which shall not be unreasonably withheld.

**§ 7.6.9** Expenses incurred in accordance with the Contractor's standard written personnel policy for relocation and temporary living allowances of the Contractor's personnel required for the Work. This cost is included in the GMP.

**§ 7.6.10** That portion of the reasonable expenses of the Contractor's supervisory or administrative personnel incurred while traveling in discharge of duties connected with the Work. This cost is included in the GMP.

## § 7.7 OTHER COSTS AND EMERGENCIES
**§ 7.7.1** Other costs incurred in the performance of the Work if, and to the extent, approved in advance in writing by the Owner.

**§ 7.7.2** Costs incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Section 10.4 of AIA Document A201–2007.

**§ 7.7.3** Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by negligence or failure to fulfill a specific responsibility of the Contractor and only to the extent that the cost of repair or correction is not recovered by the Contractor from insurance, sureties, Subcontractors, suppliers, or others.

## § 7.8 RELATED PARTY TRANSACTIONS
**§ 7.8.1** For purposes of Section 7.8, the term "related party" shall mean a parent, subsidiary, affiliate or other entity having common ownership or management with the Contractor; any entity in which any stockholder in, or management employee of, the Contractor owns any interest in excess of ten percent in the aggregate; or any person or entity which has the right to control the business or affairs of the Contractor. The term "related party" includes any member of the immediate family of any person identified above.

**§ 7.8.2** If any of the costs to be reimbursed arise from a transaction between the Contractor and a related party, the Contractor shall notify the Owner in writing of the specific nature of the contemplated transaction, including the identity of the related party and the anticipated cost to be incurred, before any such transaction is consummated or cost incurred. If the Owner, after such notification, authorizes the proposed transaction, then the cost incurred shall be included as a cost to be reimbursed, and the Contractor shall procure the Work, equipment, goods or service from the related party, as a Subcontractor, according to the terms of Article 10 and Section 5.1.1.2. If the Owner fails to authorize the transaction, the Contractor shall procure the Work, equipment, goods or service from some person or entity other than a related party according to the terms of Article 10 and Section 5.1.1.2.

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
**User Notes:** Error! Unknown document property name. (1497519986)

RECEIVED FOR FILING 02/23/2022 03:52:17 PM BRIAN A. HART, CLERK OF COURT - Clerk of Court

## ARTICLE 8  COSTS NOT TO BE REIMBURSED

**§ 8.1** The Cost of the Work shall not include the items listed below:

.1  Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as specifically provided in Section 7.2. or as may be provided in Article 15;

.2  Expenses of the Contractor's principal office and offices other than the site office;

.3  Overhead and general expenses, except as may be expressly included in Article 7;

.4  The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work;

.5  Except as provided in Section 7.7.3 of this Agreement, costs due to the negligence or failure of the Contractor, Subcontractors and suppliers or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable to fulfill a specific responsibility of the Contract;

.6  Any cost not specifically and expressly described in Article 7; and

.7  Costs, other than costs included in Change Orders approved by the Owner, that would cause the GMP to be exceeded.

## ARTICLE 9  DISCOUNTS, REBATES AND REFUNDS

**§ 9.1** Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making the payment, the Contractor included them in an Application for Payment and received payment from the Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be obtained.

**§ 9.2** Amounts that accrue to the Owner in accordance with the provisions of Section 9.1 shall be credited to the Owner as a deduction from the Cost of the Work.

## ARTICLE 10  SUBCONTRACTS AND OTHER AGREEMENTS

**§ 10.1** Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be performed under subcontracts or by other appropriate agreements with the Contractor. The Contractor agrees to provide a list of candidate subcontractors to Owner prior to selections.  The Owner may designate specific persons from whom, or entities from which, the Contractor shall obtain bids. The Contractor shall obtain bids from Subcontractors and from suppliers of materials or equipment fabricated especially for the Work and shall deliver such bids to the Architect. The Owner shall then determine, with the advice of the Contractor and the Architect, which bids will be accepted. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

**§ 10.2** When a specific bidder (1) is recommended to the Owner by the Contractor; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Contractor may require that a Change Order be issued to adjust the GMP by the difference between the bid of the person or entity recommended to the Owner by the Contractor and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

**§ 10.3** Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner. If the Subcontract is awarded on a cost-plus a fee basis, the Contractor shall provide in the Subcontract for the Owner to receive the same audit rights with regard to the Subcontractor as the Owner receives with regard to the Contractor in Article 11, below.

## ARTICLE 11  ACCOUNTING RECORDS

The Contractor shall keep full and detailed records and accounts related to the Cost of the Work and exercise such controls as may be necessary for proper financial management under this Contract and to substantiate all costs incurred. The accounting and control systems shall be reasonably satisfactory to the Owner. The Owner and the

**AIA Document A102™ – 2007 (formerly A111™ - 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
**User Notes:  Error! Unknown document property name.** (1497519986)

10

RECEIVED FOR FILING IN THE SUPERIOR COURT OF CHATHAM COUNTY GEORGIA 02/04/2021 01:52:17 PM - Clerk of Court

Owner's auditors shall, during regular business hours and upon reasonable notice, be afforded reasonable access to, and shall be permitted to audit and copy, the Contractor's records and accounts, including complete documentation supporting accounting entries, books, correspondence, instructions, drawings, receipts, subcontracts, Subcontractor's proposals, purchase orders, vouchers, memoranda and other data relating to this Contract. The Contractor shall preserve these records for a period of three years after final payment, or for such longer period as may be required by law.  Notwithstanding the above, fixed rates, percentage mark-up rates, or lump sum amounts defined within the Agreement or an attached schedule or exhibit are not auditable beyond confirmation that the agreed upon rates or amounts have been applied correctly anytime during construction and extending ninety (90) days after construction final completion.  Contractor shall respond within five (5) business days to any request from Owner repsecting expense items that may be characterized as "qualified rehabilitation expenses (herein "QRE's") within the meaning of the Internal Revenue Code.

### ARTICLE 12  PAYMENTS
### § 12.1 PROGRESS PAYMENTS
**§ 12.1.1** Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.  During and upon completion of the Project, Contractor shall, upon the Owner's request, produce and furnish such detailed material as Owner may reasonably request to support the actual costs, which shall include, but not be limited to the following: a. Copies of original payrolls; b. Records of payment for reimbursable costs; and c. Subcontractor billings, lien waivers, payment requests and payment information.

**§ 12.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

« from the 20th of the previous month to the 20th of the current month  »

**§ 12.1.3** Provided that an Application for Payment is received by the Architect not later than the « 20th » day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the « 10th » day of the « following » month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than « twenty-five » ( «25 » ) days after the Architect receives the Application for Payment.
*(Federal, state or local laws may require payment within a certain period of time.)*

Except for the first Application for Payment, the Contractor shall submit to the Owner partial lien waivers of liens for disbursements made by the Owner to the Contractor and the Contractor shall provide waivers of liens with each monthly pay application from subcontractors from the previous month's payment, in accordance with the provisions of the General Conditions. Contractor will maintain an open book policy with Owner with regard to this Project subject to the limitations set forth in Article 11 herein.

**§ 12.1.4** With each Application for Payment, the Contractor shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made such evidence as may be reasonably necessary to demonstrate costs incurred or to be incurred by the Contractor on account of the Cost of the Work equal or exceed (i) progress payments already received by the Contractor; less (ii) that portion of those payments attributable to the Contractor's Fee; plus (iii) payrolls for the period covered by the present Application for Payment during the current month.  The Contractor shall submit lien waivers each month for itself and all subcontractors, suppliers and vendors.  Contractor will provide such other information as may be requested by Owner respecting specific items within any draw request that may constitute QREs.

**§ 12.1.5** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire GMP among the various portions of the Work, except that the Contractor's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
User Notes: Error! Unknown document property name.                                                                          (1497519986)

RECEIVED FOR FILING 4/28/2016 3:42:37 PM SUPERIOR COURT CHATHAM CO.
Brian A. Hart - Clerk of Court

Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment. Notwithstanding anything herein to the contrary, individual line items within the schedule of values are not separately guaranteed.

**§ 12.1.6** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Contractor on account of that portion of the Work for which the Contractor has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the GMP allocated to that portion of the Work in the schedule of values.

**§ 12.1.7** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

    .1    Take that portion of the GMP properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the GMP allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201–2007;

    .2    Add that portion of the GMP properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

    .3    Add the Contractor's Fee, less retainage of « ten » percent ( « 10 » %) or in accordance with Georgia State Law.  The Contractor's Fee shall be computed upon the Cost of the Work at the rate stated in Section 5.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, shall be an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work bears to a reasonable estimate of the probable Cost of the Work upon its completion

    .4    Upon Substantial Completion of the Work, a retainage of one hundred fifty percent (150%) of such amounts as the Owner shall reasonably determine for incomplete, defective or non-conforming work, shall be applicable to such work and unsettled claims shall be withheld until such incomplete, defective or non-conforming work is completed. All other retainage will be released at Substantial Completion;]

    .5    Subtract retainage of « ten » percent ( « 10 » %) from that portion of the Work that the Contractor self-performs;

    .6    Subtract the aggregate of previous payments made by the Owner;

    .7    Subtract the shortfall, if any, indicated by the Contractor in the documentation required by Section 12.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's auditors in such documentation; and

    .8    Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201–2007.

SUBJECT TO APPROVAL OF THE OWNER'S LENDER, WHEN THE WORK IS 50% COMPLETE, SO LONG AS CONTRACTOR IS NOT IN DEFAULT UNDER THE CONTRACT, ANY REMAINING PROGRESS PAYMENTS SHALL BE PAID IN FULL WITHOUT REDUCING PREVIOUS RETAINAGE HELD.  SUBCONTRACTORS (SUCH AS FOUNDATION OR SITEWORK SUBCONTRACTORS) MAY HAVE RETAINAGE RELEASED UPON 100% COMPLETION OF THEIR SUBCONTRACT WORK SUBJECT TO APPROVAL BY OWNER'S LENDER.

**§ 12.1.8** The Owner and the Contractor shall agree upon a (1) mutually acceptable procedure for review and approval of payments to Subcontractors and (2) the percentage of retainage held on Subcontracts, and the Contractor shall execute subcontracts in accordance with those agreements.

**§ 12.1.9** In taking action on the Contractor's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Contractor and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in

AIA Document A102™ – 2007 (formerly A111™ – 1987). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
User Notes: Error! Unknown document property name. (1497519986)

accordance with Section 12.1.4 or other supporting data; that the Architect has made exhaustive or continuous on-site inspections; or that the Architect has made examinations to ascertain how or for what purposes the Contractor has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's auditors acting in the sole interest of the Owner.

**§ 12.1.10** No retainage required hereunder shall be withheld with respect to general condition costs, bond or insurance premiums.

## § 12.2 FINAL PAYMENT
**§ 12.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

.1    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements, if any, which extend beyond final payment;

.2    the Contractor has submitted a final accounting for the Cost of the Work and a final Application for Payment; and

.3    Subject to compliance with the requirements of the General Conditions, ten (10) days after the later of (i) issuance of the Certificate of Substantial Completion of the entire Work, (ii) issuance of a certificate of occupancy by the applicable governmental authority unless delay or failure to issue is the result of an act or omission of the Owner or any party acting by, through or under the Owner; and (iii) completion of all punch list items, any unpaid balance plus the retainage (collectively, the "Final Payment") will be paid to the Contractor; provided that an Application for Payment is submitted, together with the submission of payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence reasonably required by the Owner, and a schedule of values for each subcontractor. Contractor agrees to meet with Owner within one (1) week after the date of Substantial Completion to prepare a punch list. Final Payment is contingent upon full completion of all items on the specified punch list. If the Owner or its construction lender so requires, Final Payment may also be conditioned upon an audit of Contractor's books and records related to the Contract, provided such audit is commenced and completed within thirty (30) days after the later of (i) through (iii) above; provided that nothing herein shall limit Owner's rights to audit the Project as otherwise provided herein, including without limitation any audit right contained in the Contract Documents; and

.4    Contractor agrees to satisfy all liens except for liens arising from Owner's failure to timely pay Contractor as set forth herein, which payment is not excused under the Contract Documents and the acceptance of Final Payment shall constitute (i) a waiver of all claims by Contractor, except for those previously made in writing and identified as unsettled at the time of final Application for payment and (ii) except as prohibited by law, Contractor's agreement to indemnify, defend and hold Owner harmless from and against any and all claims of Subcontractor's, laborers, suppliers, materialmen and mechanics and against all costs and expenses incurred by Owner, including reasonable and actually incurred attorneys' fees and litigation expenses arising out or in connection with such claims; and

.5    a final Certificate for Payment has been issued by the Architect.

**§ 12.2.2** The Owner's auditors will review and report in writing in accordance with Section 13.1 of the A201 on the Contractor's final accounting within 10 days after delivery of the final accounting to the Architect by the Contractor. Based upon such Cost of the Work as the Owner's auditors report to be substantiated by the Contractor's final accounting, and provided the other conditions of Section 12.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's auditors, either issue to the Owner a final Certificate for Payment with a copy to the Contractor, or notify the Contractor and Owner in writing of the Architect's reasons for withholding a certificate as provided in Section 9.5.1 of the AIA Document A201–2007. The time periods stated in this Section 12.2.2 supersede those stated in Section 9.4.1 of the AIA Document A201–2007. The Architect is not responsible for verifying the accuracy of the Contractor's final accounting.

**§ 12.2.3** If the Owner's auditors report the Cost of the Work as substantiated by the Contractor's final accounting to be less than claimed by the Contractor, the Contractor shall be entitled to request mediation of the disputed amount

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
User Notes: Error! Unknown document property name.           (1497519986)

without seeking an initial decision pursuant to Section 15.2 of A201–2007. A request for mediation shall be made by the Contractor within 30 days after the Contractor's receipt of a copy of the Architect's final Certificate for Payment. Failure to request mediation within this 30-day period shall result in the substantiated amount reported by the Owner's auditors becoming binding on the Contractor. Pending a final resolution of the disputed amount, the Owner shall pay the Contractor the amount certified in the Architect's final Certificate for Payment.

« »

**§ 12.2.5** If, subsequent to final payment and at the Owner's request, the Contractor incurs costs described in Article 7 and not excluded by Article 8 to correct defective or nonconforming Work, the Owner shall reimburse the Contractor such costs and the Contractor's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the GMP.  If the Contractor has participated in savings as provided in Section 5.2, the amount of such savings shall be recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Contractor.

## ARTICLE 13  DISPUTE RESOLUTION
**§ 13.1 INITIAL DECISION MAKER**
The Architect will serve as Initial Decision Maker pursuant to Section 15.2 of AIA Document A201–2007, unless the parties appoint below another individual, not a party to the Agreement, to serve as Initial Decision Maker.
*(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)*

**§ 13.2** *BINDING DISPUTE RESOLUTION*
For any Claim subject to, but not resolved by mediation pursuant to Section 15.3 of AIA Document A201–2007, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

[ « X » ] Litigation in a court of competent jurisdiction

[ « X» ] Other *(Specify): Mediation*

« »

## ARTICLE 14  TERMINATION OR SUSPENSION
**§ 14.1** Subject to the provisions of Section 14.2 below, the Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201–2007.

**§ 14.2** If the Owner terminates the Contract for cause as provided in Article 14 of AIA Document A201–2007, the amount, if any, to be paid to the Contractor under Section 14.2.4 of AIA Document A201–2007 shall not cause the GMP to be exceeded, nor shall it exceed an amount calculated as follows:
.1    Take the Cost of the Work incurred by the Contractor to the date of termination;
.2    Add the Contractor's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion; and
.3    Subtract the aggregate of previous payments made by the Owner.

**§ 14.3** The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 14.2.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
**User Notes:** Error! Unknown document property name.                                                                (1497519986)

payments referred to in this Article 14, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

**§ 14.4** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007; in such case, the GMP and Contract Time shall be increased as provided in Section 14.3.2 of AIA Document A201–2007, except that the term "profit" shall be understood to mean the Contractor's Fee as described in Sections 5.1.1 and Section 6.4 of this Agreement.

**ARTICLE 15   MISCELLANEOUS PROVISIONS**

**§ 15.1** Where reference is made in this Agreement to a provision of AIA Document A201–2007 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**§ 15.2** Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
The rate identified as the "Prime Rate" in the Money rates section of the Wall Street Journal (Eastern Edition).

«

**§ 15.3** The Owner's representative:
*(Name, address and other information)*

« Michael Havener, VP of Construction  »
« The Kessler Collection »
« 4901 Vineland Road, Suite 650  »
« Orlando, FL 32811 »
«  »
«  »

**§ 15.4** The Contractor's representative:
*(Name, address and other information)*

« William Sewall »
« 2450 S. Tibbs Ave. »
« Indianapolis, IN 46241 »
«  »
«  »
«  »

**§ 15.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days' written notice to the other party.

**§ 15.6** Other provisions:

« GENERAL CONDITIONS COSTS MEAN ALL COSTS OF SUPERVISION, FIELD OFFICE AND FIELD OFFICE PERSONNEL INCLUDING A PRO-RATA PORTION OF THE SALARIES OF THE PROJECT MANAGER, THE SALARIES OF THE PROJECT SUPERINTENDENT, PROJECT ENGINEER, FIELD OFFICE CLERK PER EXHIBIT B, INCLUDING SOCIAL SECURITY, OLD AGE AND UNEMPLOYMENT INSURANCE, FRINGE BENEFITS REQUIRED BY AGREEMENT OR CUSTOM AND WORKERS COMPENSATION INSURANCE FOR EACH, A PRO-RATA PORTION OF THE COSTS OF A TRUCK, GAS AND MAINTENANCE FOR THE PROJECT MANAGER, THE COST OF A TRUCK, GAS AND

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
**User Notes:** Error! Unknown document property name. (1497519986)

MAINTENANCE FOR THE PROJECT SUPERINTENDENT AND THE PROJECT ENGINEER, THE COSTS OF A FIELD OFFICE TRAILER, THE COSTS OF FIELD OFFICE EQUIPMENT INCLUDING PHONES, FAX MACHINE, COPIER AND ANSWERING MACHINE, THE COSTS OF A MOBILE PHONE AND LAPTOPS FOR THE PROJECT SUPERINTENDENT, PROJECT ENGINEER AND FIELD OFFICE CLERK, THE COSTS OF TEMPORARY POWER OF THE CONSTRUCTION SITE, THE COSTS OF TRASH DUMPSTERS AND TEMPORARY TOILETS FOR THE CONSTRUCTION SITE AND THE COSTS OF DAILY CLEAN UP OF THE CONSTRUCTION SITE.  ALL SUCH COSTS ARE INCLUDED WITHIN THE GMP.   »

§15.7 All costs for warranty work after final payment shall be the sole obligation of Contractor.

§15.8 If the Work is wholly or partially damaged or destroyed by fire or other casualty prior to Final Payment, the Contractor, upon written instruction from the Owner, shall proceed to replace and/or repair the Work in accordance with the Plans. In such event, the provisions of this Agreement shall remain in effect subject to execution of a mutually acceptable Change Order addressing time for completion of the Work, Cost of the Work and the Contractors Fee. If the Work is materially damaged by fire or other casualty, the Owner may elect to terminate this Agreement by written notice to the Contractor. In such event, the Owner shall pay the Contractor for (i) that portion of the completed Work up to the date of the casualty, (ii) the Contractors Fee earned thereon, and (iii) any restocking charges related to the return of materials previously committed to the Work.

§ 15.9 In any litigation or other legal proceeding which may arise between Owner and Contractor, the prevailing party shall be entitled to recover its litigation or mediation costs and reasonable attorneys' fees actually incurred.

**§ 15.10** The parties hereto acknowledge that they have carefully reviewed this Contract and have been advised by counsel of their choosing with respect thereto, and that they understand its contents and agree that this Contract shall not be construed more strongly against any party hereto, regardless of who is responsible for its preparation.  The headings used throughout this Contract are inserted for reference purposes only and are in no way to be construed as a limitation of the scope of the particular sections to which they refer.

**§ 15.11** In the event any provision, or any part or portion of any provision of this Contract shall be deemed or defined by any law or order any court or any governmental agency, or regulatory body having jurisdiction over either party, or held or declared by a court of competent jurisdiction to be unlawful, invalid, void or otherwise unenforceable, the rights and obligations of the parties shall be reduced or abated only to the extent required to remove or cure such illegal or unenforceable portion, so long as the Contract is not affected in a manner or to the extent which would render it economically, technically, materially, or commercially infeasible to either party.

**§ 15.12**  This Project is one of four related projects being constructed by Contractor at or around the development site, those four projects being collectively referred to in this Section 15.12 as the "Master Project." Each of those projects is referred to in this Section 15.12 as an "Individual Project." The Master Project is comprised of the following four Individual Projects:

1.      Kessler Plant Riverside – Three Muses Inn;
2.      Kessler Plant Riverside – Historic Structure;
3.      Kessler Plant Riverside – West Hotel; and
4.      Kessler Plant Riverside – Parking Garage.

The Kessler Plant Riverside – Three Muses Inn, the Kessler Plant Riverside – Historic Structure, and the Kessler Plant Riverside – West Hotel are referred to herein as the "Kessler Projects."

The Individual Project which is the subject of this Contract is the Kessler Plant Riverside – Historic Structure.

The Master Project developer has elected to proceed with the Master Project in these four separate segments and under four separate construction contracts so as to facilitate the financing of the Master Project.
The Master Project developer has created two separate but related LLC entities to act as the Owner under the construction contracts for the Kessler Projects as follows:

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
User Notes: Error! Unknown document property name.                                                              (1497519986)

    i.      Plant Riverside, LLC is the Owner under the construction contracts for the Kessler Plant Riverside – Three Muses Inn and the Kessler Plant Riverside – Historic Structure, and

    ii.     Kessler Condo Declarant, LLC is the Owner under the construction contract for the Kessler Plant Riverside – West Hotel (these three construction contracts are collectively referred to herein as the "Kessler Construction Contracts").

The Owner under the construction contract for the Kessler Plant Riverside – Parking Garage is Kessler Condo Declarant, LLC (said contract being referred to herein as the "Parking Garage Contract").

As the breaking of the Master Project into four separate construction contracts is being done as an accommodation to the Master Project developer and the Owners under each of the four Individual Project construction contracts, notwithstanding anything in the Contract Documents to the contrary, Owner agrees the terms and conditions set forth in the Contract Documents governing the Work to be performed under the Kessler Construction Contracts are subject to the following conditions:

    i.      Contractor shall only have to provide the Insurance coverage set forth in Section 11.2 for the Master Project, and shall not be required to deliver separate policies or separate limits for each Individual Project.

    ii.     Any notice given for any one of the Kessler Projects by the Contractor to any Owner shall be considered given for every Kessler Project.

    iii.    A default by the Owner under this Contract will be deemed to be a default by the Owner under all the Kessler Construction Contracts.

    iv.    All warranties under this Contract shall commence to run no later than the date Contractor achieves Substantial Completion of the Work under this Contract.

    v.     Each Kessler Project contains a specific amount of construction contingency. Owner and Contractor hereby agree that the amounts of, and disbursements from, the construction contingency set forth in any one Kessler Project not previously expended or drawn down may be reallocated among all projects within the Kessler Projects from time to time, in whole or in part, and at the sole discretion and direction of the Contractor. However, in no event will the reallocation of the construction contingency line items cause an increase in the total sum of the Kessler Projects construction contingency line items in the aggregate, without the consent of both Owner and the Contractor, and the approval of Owner's lender.

    vi.    Notwithstanding anything to the contrary in this Section or this Contract, Contractor and Owner hereby agree that, with the exception of sub-section (i) above governing the insurance to be provided by Contractor, the terms and limitations of this Section shall not apply to the Parking Garage Contract which is a stand-alone contract due to bond financing with the Downtown Savannah Authority.

## ARTICLE 16  ENUMERATION OF CONTRACT DOCUMENTS

**§ 16.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated in the sections below.

**§ 16.1.1** The Agreement is this executed AIA Document A102–2007, Standard Form of Agreement Between Owner and Contractor as modified by the parties.

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
**User Notes:** Error! Unknown document property name. (1497519986)

**§ 16.1.2** The General Conditions are AIA Document A201–2007, General Conditions of the Contract for Construction as modified by the parties.

**§ 16.1.3** The Supplementary and other Conditions of the Contract attached hereto and incorporated herein by this reference:

| Document | Title | Date | Pages |
|---|---|---|---|
|  |  |  |  |

**§ 16.1.4** The Specifications:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

« Title of Specifications Exhibit - TBD »

| Section | Title | Date | Pages |
|---|---|---|---|
|  |  |  |  |

**§ 16.1.5** The Drawings:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

«TBD »

| Number | Title | Date |
|---|---|---|
|  |  |  |

**§ 16.1.6** The Addenda, if any:

| Number | Date | Pages |
|---|---|---|
| N/A |  |  |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 16.

**§ 16.1.7** Additional documents, if any, forming part of the Contract Documents:

 .1 AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed by the parties, or the following:

  « »

 .2 Other documents, if any, listed below:
  (List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2007 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)

  Construction Schedule
  List of Plans and Specifications
  Exhibit A —Assumptions and Clarifications
  Exhibit B - GMP Cost Breakdown
  Exhibit C —Contractor's Salaried & Hourly Personnel Rates
  Exhibit D — 2012 AED & non-AED Equipment Rental Rate Schedule
  »

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
**User Notes:** Error! Unknown document property name. (1497519986)

## ARTICLE 17  INSURANCE AND BONDS

The Contractor and Owner shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201–2007.

*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document A201–2007.)*

Type of insurance or bond                    Limit of liability or bond amount ($0.00)

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

_____          _____
**OWNER** *(Signature)*                                    **CONTRACTOR** *(Signature)*

« »« »  *Day R. Danizle, v.t.*              « »« »  BILL MONTHLAND EVP
*(Printed name and title)*                             *(Printed name and title)*

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 16:52:01 on 11/30/2015 under Order No.9885917729_1 which expires on 12/17/2015, and is not for resale.
**User Notes: Error! Unknown document property name.**                                                      (1497519986)

# AIA® Document A201™ – 2007

## *General Conditions of the Contract for Construction*

**for the following PROJECT:**
*(Name and location or address)*
Kessler Plant Riverside – Historic Structure
400 West River Street
Savannah, GA

**THE OWNER:**
*(Name and address)*
Plant Riverside, LLC
4901 Vineland Road, Suite 650
Orlando, FL 32811

**THE ARCHITECT:**
*(Name and address)*

John T. Campo & Associates, Inc.
400 Poydras Street, Suite 1410
New Orleans, Louisiana 70130

## TABLE OF ARTICLES

1  GENERAL PROVISIONS

2  OWNER

3  CONTRACTOR

4  ARCHITECT

5  SUBCONTRACTORS

6  CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7  CHANGES IN THE WORK

8  TIME

9  PAYMENTS AND COMPLETION

10  PROTECTION OF PERSONS AND PROPERTY

11  INSURANCE AND BONDS

12  UNCOVERING AND CORRECTION OF WORK

13  MISCELLANEOUS PROVISIONS

**ELECTRONIC COPYING** of any portion of this AIA® Document to another electronic file is prohibited and constitutes a violation of copyright laws as set forth in the footer of this document.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:47:12 on 05/28/2008 under Order No.1000338300_1 which expires on 1/13/2009, and is not for resale.
**User Notes:** (3358716288)

1

Brian N. Harr - Clerk of Court

**14      TERMINATION OR SUSPENSION OF THE CONTRACT**

**15      CLAIMS AND DISPUTES**

**AIA Document A201™ – 2007. Copyright** © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:47:12 on 05/28/2008 under Order No.1000338300_1 which expires on 1/13/2009, and is not for resale.
**User Notes:**                                                                                                    (3358716288)

**INDEX**
(Numbers and Topics in Bold are Section Headings)

**Acceptance of Nonconforming Work**
9.6.6, 9.9.3, **12.3**
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
**Access to Work**
**3.16,** 6.2.1, 12.1
Accident Prevention
10
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 8.3.1, 9.5.1, 10.2.5, 10.2.8, 13.4.2, 13.7.1, 14.1, 15.2
Addenda
1.1.1, 3.11.1
Additional Costs, Claims for
3.7.4, 3.7.5, 6.1.1, 7.3.7.5, 10.3, 15.1.4
**Additional Inspections and Testing**
9.4.2, 9.8.3, 12.2.1, **13.5**
Additional Insured
11.1.4
**Additional Time, Claims for**
3.2.4, 3.7.4, 3.7.5, 3.10.2, 8.3.2, **15.1.5**
**Administration of the Contract**
3.1.3, **4.2,** 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1
Aesthetic Effect
4.2.13
**Allowances**
**3.8,** 7.3.8
All-risk Insurance
11.3.1, 11.3.1.1
**Applications for Payment**
4.2.5, 7.3.9, 9.2, **9.3,** 9.4, 9.5.1, 9.6.3, 9.7.1, 9.10, 11.1.3
Approvals
2.1.1, 2.2.2, 2.4, 3.1.3, 3.10.2, 3.12.8, 3.12.9, 3.12.10, 4.2.7, 9.3.2, 13.5.1
**Arbitration**
8.3.1, 11.3.10, 13.1.1, 15.3.2, **15.4**
**ARCHITECT**
**4**
**Architect**, Definition of
**4.1.1**
Architect, Extent of Authority
2.4.1, 3.12.7, 4.1, 4.2, 5.2, 6.3.1, 7.1.2, 7.3.7, 7.4, 9.2.1, 9.3.1, 9.4, 9.5, 9.6.3, 9.8, 9.10.1, 9.10.3, 12.1, 12.2.1, 13.5.1, 13.5.2, 14.2.2, 14.2.4, 15.1.3, 15.2.1
Architect, Limitations of Authority and Responsibility

2.1.1, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2, 4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 5.2.1, 7.4.1, 9.4.2, 9.5.3, 9.6.4, 15.1.3, 15.2
Architect's Additional Services and Expenses
2.4.1, 11.3.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4
Architect's Administration of the Contract
3.1.3, 4.2, 3.7.4, 15.2, 9.4.1, 9.5
Architect's Approvals
2.4.1, 3.1.3, 3.5.1, 3.10.2, 4.2.7
Architect's Authority to Reject Work
3.5.1, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.1.7, 1.5
Architect's Decisions
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.2.14, 6.3.1, 7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2.1, 9.4.1, 9.5, 9.8.4, 9.9.1, 13.5.2, 15.2, 15.3
Architect's Inspections
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
Architect's Instructions
3.2.4, 3.3.1, 4.2.6, 4.2.7, 13.5.2
Architect's Interpretations
4.2.11, 4.2.12
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5.1, 3.7.4, 3.7.5, 3.9.2, 3.9.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.4.2, 13.5, 15.2
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.3.7
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for Portions of the Work**
**5.2**
**Basic Definitions**
**1.1**
Bidding Requirements
1.1.1, 5.2.1, 11.4.1
Binding Dispute Resolution
9.7.1, 11.3.9, 11.3.10, 13.1.1, 15.2.5, 15.2.6.1, 15.3.1, 15.3.2, 15.4.1
**Boiler and Machinery Insurance**
**11.3.2**

**AIA Document A201™ – 2007. Copyright** © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:47:12 on 05/28/2008 under Order No.1000338300_1 which expires on 1/13/2009, and is not for resale.
**User Notes:** (3358716288)

3

Bonds, Lien
7.3.7.4, 9.10.2, 9.10.3
**Bonds, Performance, and Payment**
7.3.7.4, 9.6.7, 9.10.3, 11.3.9, **11.4**
Building Permit
3.7.1
**Capitalization**
**1.3**
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5
**Certificates for Payment**
4.2.1, 4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1, 9.10.3, 14.1.1.3, 14.2.4, 15.1.3
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
**Change Orders**
1.1.1, 2.4.1, 3.4.2, 3.7.4, 3.8.2.3, 3.11.1, 3.12.8, 4.2.8, 5.2.3, 7.1.2, 7.1.3, **7.2**, 7.3.2, 7.3.6, 7.3.9, 7.3.10, 8.3.1, 9.3.1.1, 9.10.3, 10.3.2, 11.3.1.2, 11.3.4, 11.3.9, 12.1.2, 15.1.3
**Change Orders**, Definition of
**7.2.1**
**CHANGES IN THE WORK**
2.2.1, 3.11, 4.2.8, **7**, 7.2.1, 7.3.1, 7.4, 7.4.1, 8.3.1, 9.3.1.1, 11.3.9
**Claims**, Definition of
**15.1.1**
**CLAIMS AND DISPUTES**
3.2.4, 6.1.1, 6.3.1, 7.3.9, 9.3.3, 9.10.4, 10.3.3, **15**, 15.4
Claims and Timely Assertion of Claims
15.4.1
**Claims for Additional Cost**
3.2.4, 3.7.4, 6.1.1, 7.3.9, 10.3.2, **15.1.4**
**Claims for Additional Time**
3.2.4, 3.7.46.1.1, 8.3.2, 10.3.2, **15.1.5**
**Concealed or Unknown Conditions, Claims for**
**3.7.4**
Claims for Damages
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1, 11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Claims Subject to Arbitration
15.3.1, 15.4.1
**Cleaning Up**
**3.15,** 6.3
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.2, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 5.2.1, 5.2.3, 6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.3.1, 11.3.6, 11.4.1, 15.1.4
**Commencement of the Work**, Definition of
**8.1.2**
**Communications Facilitating Contract Administration**
3.9.1, **4.2.4**

Completion, Conditions Relating to
3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1, 9.10, 12.2, 13.7, 14.1.2
**COMPLETION, PAYMENTS AND**
**9**
Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 12.2, 13.7
Compliance with Laws
1.6.1, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 10.2.2, 11.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14.1.1, 14.2.1.3, 15.2.8, 15.4.2, 15.4.3
Concealed or Unknown Conditions
3.7.4, 4.2.8, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 6.1.1, 6.1.4
Consent, Written
3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.3.1, 13.2, 13.4.2, 15.4.4.2
**Consolidation or Joinder**
**15.4.4**
**CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS**
1.1.4, **6**
**Construction Change Directive**, Definition of
**7.3.1**
**Construction Change Directives**
1.1.1, 3.4.2, 3.12.8, 4.2.8, 7.1.1, 7.1.2, 7.1.3, **7.3**, 9.3.1.1
Construction Schedules, Contractor's
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
**Contingent Assignment of Subcontracts**
**5.4**, 14.2.2.2
**Continuing Contract Performance**
**15.1.3**
**Contract**, Definition of
**1.1.2**
**CONTRACT, TERMINATION OR SUSPENSION OF THE**
5.4.1.1, 11.3.9, **14**
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.3.6, 11.4.1
**Contract Documents, The**
**1.1.1**
Contract Documents, Copies Furnished and Use of
1.5.2, 2.2.5, 5.3
**Contract Documents**, Definition of
**1.1.1**
**Contract Sum**
3.7.4, 3.8, 5.2.3, 7.2, 7.3, 7.4, **9.1**, 9.4.2, 9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.3.1, 14.2.4, 14.3.2, 15.1.4, 15.2.5
**Contract Sum**, Definition of

**AIA Document A201™ – 2007. Copyright** © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:47:12 on 05/28/2008 under Order No.1000338300_1 which expires on 1/13/2009, and is not for resale.
**User Notes:**                                                                                                     (3358716288)

4

**9.1**
Contract Time
3.7.4, 3.7.5, 3.10.2, 5.2.3, 7.2.1.3, 7.3.1, 7.3.5, 7.4, 8.1.1, 8.2.1, 8.3.1, 9.5.1, 9.7.1, 10.3.2, 12.1.1, 14.3.2, 15.1.5.1, 15.2.5
**Contract Time**, Definition of
**8.1.1**
**CONTRACTOR**
**3**
**Contractor**, Definition of
**3.1, 6.1.2**
**Contractor's Construction Schedules**
**3.10**, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Contractor's Employees
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1,
**Contractor's Liability Insurance**
**11.1**
Contractor's Relationship with Separate Contractors and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.3.7, 12.1.2, 12.2.4
Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2, 11.3.1.2, 11.3.7, 11.3.8
Contractor's Relationship with the Architect
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5.1, 3.7.4, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.5, 15.1.2, 15.2.1
Contractor's Representations
3.2.1, 3.2.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2
Contractor's Responsibility for Those Performing the Work
3.3.2, 3.18, 5.3.1, 6.1.3, 6.2, 9.5.1, 10.2.8
Contractor's Review of Contract Documents
3.2
Contractor's Right to Stop the Work
9.7
Contractor's Right to Terminate the Contract
14.1, 15.1.6
Contractor's Submittals
3.10, 3.11, 3.12.4, 4.2.7, 5.2.1, 5.2.3, 9.2, 9.3, 9.8.2, 9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.4.2
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.5, 7.3.7, 8.2, 10, 12, 14, 15.1.3
Contractual Liability Insurance
11.1.1.8, 11.2
Coordination and Correlation
1.2, 3.2.1, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications
1.5, 2.2.5, 3.11
Copyrights

1.5, **3.17**
Correction of Work
2.3, 2.4, 3.7.3, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, **12.2**
**Correlation and Intent of the Contract Documents**
**1.2**
**Cost**, Definition of
**7.3.7**
Costs
2.4.1, 3.2.4, 3.7.3, 3.8.2, 3.15.2, 5.4.2, 6.1.1, 6.2.3, 7.3.3.3, 7.3.7, 7.3.8, 7.3.9, 9.10.2, 10.3.2, 10.3.6, 11.3, 12.1.2, 12.2.1, 12.2.4, 13.5, 14
**Cutting and Patching**
**3.14**, 6.2.5
Damage to Construction of Owner or Separate Contractors
3.14.2, 6.2.4, 10.2.1.2, 10.2.5, 10.4, 11.1.1, 11.3, 12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.4.1, 11.3.1, 12.2.4
Damages, Claims for
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1, 11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
**Date of Commencement of the Work**, Definition of
**8.1.2**
**Date of Substantial Completion**, Definition of
**8.1.3**
**Day**, Definition of
**8.1.4**
Decisions of the Architect
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 15.2, 6.3, 7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2.1, 9.4, 9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4, 15.1, 15.2
**Decisions to Withhold Certification**
9.4.1, **9.5**, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance, Rejection and Correction of
2.3.1, 2.4.1, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2, 9.9.3, 9.10.4, 12.2.1
**Defective Work**, Definition of
**3.5.1**
Definitions
1.1, 2.1.1, 3.1.1, 3.5.1, 3.12.1, 3.12.2, 3.12.3, 4.1.1, 15.1.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 8.1, 9.1, 9.8.1
**Delays and Extensions of Time**
3.2., 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4.1, **8.3**, 9.5.1, 9.7.1, 10.3.2, 10.4.1, 14.3.2, 15.1.5, 15.2.5
Disputes
6.3.1, 7.3.9, 15.1, 15.2
**Documents and Samples at the Site**
**3.11**
**Drawings**, Definition of
**1.1.5**
Drawings and Specifications, Use and Ownership of
3.11

**AIA Document A201™ – 2007. Copyright** © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:47:12 on 05/28/2008 under Order No.1000338300_1 which expires on 1/13/2009, and is not for resale.
**User Notes:**                                                                 (3358716288)

5

Effective Date of Insurance
8.2.2, 11.1.2
**Emergencies**
**10.4**, 14.1.1.2, 15.1.4
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2,
10.3.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1
Equipment, Labor, Materials or
1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13.1,
3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3.1, 3.4.1, 3.5.1,
3.7.1, 3.10.1, 3.12, 3.14, 4.2, 6.2.2, 7.1.3, 7.3.5, 8.2,
9.5.1, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3.1, 15.1.3
Extensions of Time
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3, 7.4.1, 9.5.1, 9.7.1,
10.3.2, 10.4.1, 14.3, 15.1.5, 15.2.5
**Failure of Payment**
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Faulty Work
(*See* Defective or Nonconforming Work)
**Final Completion and Final Payment**
4.2.1, 4.2.9, 9.8.2, **9.10**, 11.1.2, 11.1.3, 11.3.1, 11.3.5,
12.3.1, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.4
Fire and Extended Coverage Insurance
11.3.1.1
**GENERAL PROVISIONS**
**1**
**Governing Law**
**13.1**
Guarantees (*See* Warranty)
**Hazardous Materials**
10.2.4, **10.3**
Identification of Subcontractors and Suppliers
5.2.1
**Indemnification**
3.17.1, **3.18**, 9.10.2, 10.3.3, 10.3.5, 10.3.6, 11.3.1.2,
11.3.7
**Information and Services Required of the Owner**
2.1.2, **2.2**, 3.2.2, 3.12.4, 3.12.10, 6.1.3, 6.1.4, 6.2.5,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2.1, 11.4, 13.5.1,
13.5.2, 14.1.1.4, 14.1.4, 15.1.3
**Initial Decision**
**15.2**
**Initial Decision Maker, Definition of**
1.1.8
Initial Decision Maker, Decisions
14.2.2, 14.2.4, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
Initial Decision Maker, Extent of Authority
14.2.2, 14.2.4, 15.1.3, 15.2.1, 15.2.2, 15.2.3, 15.2.4,
15.2.5
**Injury or Damage to Person or Property**
**10.2.8**, 10.4.1

Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3,
9.9.2, 9.10.1, 12.2.1, 13.5
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.4, 3.3.1, 3.8.1, 5.2.1, 7, 8.2.2, 12, 13.5.2
**Instruments of Service**, Definition of
**1.1.7**
Insurance
3.18.1, 6.1.1, 7.3.7, 9.3.2, 9.8.4, 9.9.1, 9.10.2, **11**
**Insurance, Boiler and Machinery**
**11.3.2**
**Insurance, Contractor's Liability**
**11.1**
Insurance, Effective Date of
8.2.2, 11.1.2
**Insurance, Loss of Use**
**11.3.3**
**Insurance, Owner's Liability**
**11.2**
**Insurance, Property**
10.2.5, **11.3**
Insurance, Stored Materials
9.3.2, 11.4.1.4
**INSURANCE AND BONDS**
**11**
Insurance Companies, Consent to Partial Occupancy
9.9.1, 11.4.1.5
Insurance Companies, Settlement with
11.4.10
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
**Interest**
**13.6**
**Interpretation**
1.2.3, **1.4**, 4.1.1, 5.1, 6.1.2, 15.1.1
Interpretations, Written
4.2.11, 4.2.12, 15.1.4
Judgment on Final Award
15.4.2
**Labor and Materials, Equipment**
1.1.3, 1.1.6, **3.4**, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13.1, 4.1.1, 9.6.4, 9.9.1,
10.2.2, 11.1.1, 11.3, 13.1.1, 13.4, 13.5.1, 13.5.2,
13.6.1, 14, 15.2.8, 15.4
Liens
2.1.2, 9.3.3, 9.10.2, 9.10.4, 15.2.8
Limitations, Statutes of
12.2.5, 13.7, 15.4.1.1
Limitations of Liability

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The
American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International
Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal
penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:47:12 on
05/28/2008 under Order No.1000338300_1 which expires on 1/13/2009, and is not for resale.
**User Notes:**                                                                                                       (3358716288)

2.3.1, 3.2.2, 3.5.1, 3.12.10, 3.17.1, 3.18.1, 4.2.6, 4.2.7, 4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 10.2.5, 10.3.3, 11.1.2, 11.2.1, 11.3.7, 12.2.5, 13.4.2

Limitations of Time
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7, 5.2, 5.3.1, 5.4.1, 6.2.4, 7.3, 7.4, 8.2, 9.2.1, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7.1, 9.8, 9.9, 9.10, 11.1.3, 11.3.1.5, 11.3.6, 11.3.10, 12.2, 13.5, 13.7, 14, 15

**Loss of Use Insurance**
**11.3.3**

Material Suppliers
1.5, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5

**Materials, Hazardous**
10.2.4, **10.3**

Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.5.1, 3.4.1, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13.1, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1.2, 10.2.4, 14.2.1.1, 14.2.1.2

Means, Methods, Techniques, Sequences and Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2

Mechanic's Lien
2.1.2, 15.2.8

**Mediation**
8.3.1, 10.3.5, 10.3.6, 15.2.1, 15.2.5, 15.2.6, **15.3**, 15.4.1

**Minor Changes in the Work**
1.1.1, 3.12.8, 4.2.8, 7.1, **7.4**

**MISCELLANEOUS PROVISIONS**
**13**

**Modifications**, Definition of
**1.1.1**

Modifications to the Contract
1.1.1, 1.1.2, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7.1, 10.3.2, 11.3.1

**Mutual Responsibility**
**6.2**

**Nonconforming Work, Acceptance of**
9.6.6, 9.9.3, **12.3**

Nonconforming Work, Rejection and Correction of
2.3.1, 2.4.1, 3.5.1, 4.2.6, 6.2.4, 9.5.1, 9.8.2, 9.9.3, 9.10.4, 12.2.1

Notice
2.2.1, 2.3.1, 2.4.1, 3.2.4, 3.3.1, 3.7.2, 3.12.9, 5.2.1, 9.7.1, 9.10, 10.2.2, 11.1.3, 11.4.6, 12.2.2.1, 13.3, 13.5.1, 13.5.2, 14.1, 14.2, 15.2.8, 15.4.1

**Notice, Written**
2.3.1, 2.4.1, 3.3.1, 3.9.2, 3.12.9, 3.12.10, 5.2.1, 9.7.1, 9.10, 10.2.2, 10.3, 11.1.3, 11.3.6, 12.2.2.1, **13.3**, 14, 15.2.8, 15.4.1

**Notice of Claims**
3.7.4, 4.5, 10.2.8, **15.1.2,** 15.4

Notice of Testing and Inspections
13.5.1, 13.5.2

Observations, Contractor's

3.2, 3.7.4

Occupancy
2.2.2, 9.6.6, 9.8, 11.3.1.5

Orders, Written
1.1.1, 2.3, 3.9.2, 7, 8.2.2, 11.3.9, 12.1, 12.2.2.1, 13.5.2, 14.3.1

**OWNER**
**2**

**Owner**, Definition of
**2.1.1**

**Owner, Information and Services Required of the**
2.1.2, **2.2**, 3.2.2, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2.1, 11.3, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4, 15.1.3

Owner's Authority
1.5, 2.1.1, 2.3.1, 2.4.1, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2, 4.1.3, 4.2.4, 4.2.9, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3.1, 7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1, 9.6.4, 9.9.1, 9.10.2, 10.3.2, 11.1.3, 11.3.3, 11.3.10, 12.2.2, 12.3.1, 13.2.2, 14.3, 14.4, 15.2.7

Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.4

**Owner's Liability Insurance**
**11.2**

**Owner's Loss of Use Insurance**
**11.3.3**

Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2

**Owner's Right to Carry Out the Work**
**2.4**, 14.2.2

**Owner's Right to Clean Up**
**6.3**

**Owner's Right to Perform Construction and to Award Separate Contracts**
**6.1**

**Owner's Right to Stop the Work**
**2.3**

Owner's Right to Suspend the Work
14.3

Owner's Right to Terminate the Contract
14.2

**Ownership and Use of Drawings, Specifications and Other Instruments of Service**
1.1.1, 1.1.6, 1.1.7, **1.5**, 2.2.5, 3.2.2, 3.11.1, 3.17.1, 4.2.12, 5.3.1

**Partial Occupancy or Use**
9.6.6, **9.9**, 11.3.1.5

**Patching, Cutting and**
**3.14**, 6.2.5

Patents
3.17

**Payment, Applications for**
4.2.5, 7.3.9, 9.2.1, **9.3**, 9.4, 9.5, 9.6.3, 9.7.1, 9.8.5, 9.10.1, 14.2.3, 14.2.4, 14.4.3

**Payment, Certificates for**

**AIA Document A201™ – 2007. Copyright** © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:47:12 on 05/28/2008 under Order No.1000338300_1 which expires on 1/13/2009, and is not for resale.
**User Notes:** (3358716288)

4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1, 9.10.3, 13.7, 14.1.1.3, 14.2.4

**Payment, Failure of**
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2

Payment, Final
4.2.1, 4.2.9, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, 11.4.5, 12.3.1, 13.7, 14.2.4, 14.4.3

**Payment Bond, Performance Bond and**
7.3.7.4, 9.6.7, 9.10.3, 11.4.9, **11.4**

**Payments, Progress**
9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3

**PAYMENTS AND COMPLETION**
**9**

Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 11.4.8, 14.2.1.2

PCB
10.3.1

**Performance Bond and Payment Bond**
7.3.7.4, 9.6.7, 9.10.3, 11.4.9, **11.4**

**Permits, Fees, Notices and Compliance with Laws**
2.2.2, **3.7**, 3.13, 7.3.7.4, 10.2.2

**PERSONS AND PROPERTY, PROTECTION OF**
**10**

Polychlorinated Biphenyl
10.3.1

**Product Data**, Definition of
**3.12.2**

**Product Data and Samples, Shop Drawings**
3.11, **3.12**, 4.2.7

**Progress and Completion**
4.2.2, **8.2**, 9.8, 9.9.1, 14.1.4, 15.1.3

**Progress Payments**
9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3

**Project**, Definition of the
**1.1.4**

Project Representatives
4.2.10

**Property Insurance**
10.2.5, **11.3**

**PROTECTION OF PERSONS AND PROPERTY**
**10**

Regulations and Laws
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14, 15.2.8, 15.4

Rejection of Work
3.5.1, 4.2.6, 12.2.1

Releases and Waivers of Liens
9.10.2

Representations
3.2.1, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1, 9.8.2, 9.10.1

Representatives

2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.2, 4.2.10, 5.1.1, 5.1.2, 13.2.1

Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1, 10

Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3

**Review of Contract Documents and Field Conditions by Contractor**
**3.2**, 3.12.7, 6.1.3

Review of Contractor's Submittals by Owner and Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2

Review of Shop Drawings, Product Data and Samples by Contractor
3.12

**Rights and Remedies**
1.1.2, 2.3, 2.4, 3.5.1, 3.7.4, 3.15.2, 4.2.6, 4.5, 5.3, 5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.2, 12.2.4, **13.4**, 14, 15.4

**Royalties, Patents and Copyrights**
**3.17**

Rules and Notices for Arbitration
15.4.1

**Safety of Persons and Property**
**10.2**, 10.4

**Safety Precautions and Programs**
3.3.1, 4.2.2, 4.2.7, 5.3.1, **10.1**, 10.2, 10.4

**Samples**, Definition of
**3.12.3**

**Samples, Shop Drawings, Product Data and**
3.11, **3.12**, 4.2.7

**Samples at the Site, Documents and**
**3.11**

**Schedule of Values**
**9.2**, 9.3.1

Schedules, Construction
1.4.1.2, 3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2

Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 6, 8.3.1, 11.4.7, 12.1.2

**Shop Drawings**, Definition of
**3.12.1**

**Shop Drawings, Product Data and Samples**
3.11, **3.12**, 4.2.7

**Site, Use of**
**3.13**, 6.1.1, 6.2.1

Site Inspections
3.2.2, 3.3.3, 3.7.1, 3.7.4, 4.2, 9.4.2, 9.10.1, 13.5

Site Visits, Architect's
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5

Special Inspections and Testing
4.2.6, 12.2.1, 13.5

**Specifications**, Definition of the
**1.1.6**

**Specifications, The**
1.1.1, **1.1.6**, 1.2.2, 1.5, 3.11, 3.12.10, 3.17, 4.2.14

**AIA Document A201™ – 2007. Copyright** © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:47:12 on 05/28/2008 under Order No.1000338300_1 which expires on 1/13/2009, and is not for resale.
**User Notes:** (3358716288)

8

Statute of Limitations
13.7, 15.4.1.1
Stopping the Work
2.3, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4, 11.4.1.4
**Subcontractor**, Definition of
**5.1.1**
**SUBCONTRACTORS**
**5**
Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2,
9.6.7
**Subcontractual Relations**
**5.3,** 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 11.4.7, 11.4.8,
14.1, 14.2.1
Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.7, 9.2, 9.3,
9.8, 9.9.1, 9.10.2, 9.10.3, 11.1.3
Submittal Schedule
3.10.2, 3.12.5, 4.2.7
**Subrogation, Waivers of**
6.1.1, 11.4.5, **11.3.7**
**Substantial Completion**
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, **9.8**, 9.9.1, 9.10.3,
12.2, 13.7
**Substantial Completion**, Definition of
**9.8.1**
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
4.1.3
Substitutions of Materials
3.4.2, 3.5.1, 7.3.8
**Sub-subcontractor**, Definition of
**5.1.2**
Subsurface Conditions
3.7.4
**Successors and Assigns**
**13.2**
**Superintendent**
**3.9,** 10.2.6
**Supervision and Construction Procedures**
1.2.2, **3.3**, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4,
7.1.3, 7.3.7, 8.2, 8.3.1, 9.4.2, 10, 12, 14, 15.1.3
Surety
5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2, 15.2.7
Surety, Consent of
9.10.2, 9.10.3
Surveys
2.2.3
**Suspension by the Owner for Convenience**
**14.3**
Suspension of the Work
5.4.2, 14.3
Suspension or Termination of the Contract

5.4.1.1, 11.4.9, 14
Taxes
3.6, 3.8.2.1, 7.3.7.4
**Termination by the Contractor**
**14.1**, 15.1.6
**Termination by the Owner for Cause**
5.4.1.1, **14.2**, 15.1.6
**Termination by the Owner for Convenience**
**14.4**
Termination of the Architect
4.1.3
Termination of the Contractor
14.2.2
**TERMINATION OR SUSPENSION OF THE
CONTRACT**
**14**
**Tests and Inspections**
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2,
9.10.1, 10.3.2, 11.4.1.1, 12.2.1, **13.5**
**TIME**
**8**
**Time, Delays and Extensions of**
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4.1, **8.3**, 9.5.1, 9.7.1,
10.3.2, 10.4.1, 14.3.2, 15.1.5, 15.2.5
Time Limits
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2,
4.4, 4.5, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1,
9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3,
11.4.1.5, 11.4.6, 11.4.10, 12.2, 13.5, 13.7, 14, 15.1.2,
15.4
**Time Limits on Claims**
3.7.4, 10.2.8, **13.7**, 15.1.2
Title to Work
9.3.2, 9.3.3
**Transmission of Data in Digital Form**
**1.6**
**UNCOVERING AND CORRECTION OF
WORK**
**12**
**Uncovering of Work**
**12.1**
Unforeseen Conditions, Concealed or Unknown
3.7.4, 8.3.1, 10.3
Unit Prices
7.3.3.2, 7.3.4
Use of Documents
1.1.1, 1.5, 2.2.5, 3.12.6, 5.3
**Use of Site**
**3.13**, 6.1.1, 6.2.1
**Values, Schedule of**
**9.2,** 9.3.1
Waiver of Claims by the Architect
13.4.2
Waiver of Claims by the Contractor
9.10.5, 11.4.7, 13.4.2, 15.1.6
Waiver of Claims by the Owner

**AIA Document A201™ – 2007. Copyright** © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:47:12 on 05/28/2008 under Order No.1000338300_1 which expires on 1/13/2009, and is not for resale.
**User Notes:** (3358716288)

9.9.3, 9.10.3, 9.10.4, 11.4.3, 11.4.5, 11.4.7, 12.2.2.1,
13.4.2, 14.2.4, 15.1.6
Waiver of Consequential Damages
14.2.4, 15.1.6
Waiver of Liens
9.10.2, 9.10.4
**Waivers of Subrogation**
6.1.1, 11.4.5, **11.3.7**
**Warranty**
3.5, 4.2.9, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2, 13.7.1
Weather Delays
15.1.5.2
**Work**, Definition of
**1.1.3**
Written Consent
1.5.2, 3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5,
9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2, 15.4.4.2
Written Interpretations
4.2.11, 4.2.12
Written Notice
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 5.2.1, 8.2.2, 9.7,
9.10, 10.2.2, 10.3, 11.1.3, 11.4.6, 12.2.2, 12.2.4, **13.3**,
14, 15.4.1
Written Orders
1.1.1, 2.3, 3.9, 7, 8.2.2, 11.4.9, 12.1, 12.2, 13.5.2,
14.3.1, 15.1.2

**AIA Document A201™ – 2007. Copyright** © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The
American Institute of Architects.  **All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International
Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal
penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 10:47:12 on
05/28/2008 under Order No.1000338300_1 which expires on 1/13/2009, and is not for resale.
**User Notes:**                                                                                                         (3358716288)

## ARTICLE 1  GENERAL PROVISIONS
### § 1.1 BASIC DEFINITIONS
### § 1.1.1 THE CONTRACT DOCUMENTS

The Contract Documents are enumerated in the Agreement between the Owner and Contractor (hereinafter the Agreement) and consist of the Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, or (3) a Construction Change Directive. Unless specifically enumerated in the Agreement, the Contract Documents do not include the advertisement or invitation to bid, Instructions to Bidders, sample forms, other information furnished by the Owner in anticipation of receiving bids or proposals, the Contractor's bid or proposal, or portions of Addenda relating to bidding requirements.

### § 1.1.2 THE CONTRACT

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants, (2) between the Owner and a Subcontractor or a Sub-subcontractor, (3) between the Owner and the Architect or the Architect's consultants or (4) between any persons or entities other than the Owner and the Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

### § 1.1.3 THE WORK

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

### § 1.1.4 THE PROJECT

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by separate contractors.

### § 1.1.5 THE DRAWINGS

The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams. The Contractor shall examine all drawings prior to bidding and provide items of work shown on the drawings, including utility connections.  Owner acknowledges that Contractor's examination of all drawings shall be limited to that of a Contractor and shall not compel the inference that Contractor is acting as an architect or other design professional.

### § 1.1.6 THE SPECIFICATIONS

The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.  Neither Architect nor Owner is bound to define limits of any subcontractor or establish work to be performed by any trade or craft.  Except as otherwise expressly provided herein, terms and conditions of limitations are wholly between Contractor and Subcontractors.  Each Subcontractor shall examine all Specification Sections and Drawings to determine provisions and requirements affecting its work.

### § 1.1.7 INSTRUMENTS OF SERVICE

Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Architect and the Architect's consultants under their respective professional services agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, and other similar materials.  Instruments of Service do not include any documents generated by Contractor or any of its Subcontractor's or suppliers (including without limitation shop drawings, schedules, etc.) for the Project.

**§ 1.1.8 INITIAL DECISION MAKER**
The Initial Decision Maker is the person identified in the Agreement to render initial decisions on Claims in accordance with Section 15.2 and certify termination of the Agreement under Section 14.2.2.

**§ 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS**
**§ 1.2.1** The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents.

**§ 1.2.2** Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

**§ 1.2.3** Unless otherwise stated in the Contract Documents, words that have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

**§ 1.2.4** For all work to be deemed completed, all items, appurtenances, and tasks reasonably included in the Contract Documents shall be provided and completed.

**§ 1.2.5** In cases of a discrepancy in dimensions, quantities and locations, the Drawings shall take precedence over the Specifications. Explanatory notes on the Drawings shall take precedence over conflicting drawing indications and large scale details shall take precedence over scaled measurements. Where figures are not shown, scale measurements shall be followed, but shall, in all cases, be verified by measuring actual conditions of work already in place. In the event of any discrepancy, the Architect and Owner shall be notified thereof and shall be required to consent to resolution of the inconsistency before construction is commenced or resumed.

**§ 1.2.6** In cases of discrepancies in dimensions concerning quality of materials and the application of materials, the most expensive materials and/or the most expensive application of materials shall be the basis for bidding. Shop drawings for materials and applications must be approved by Owner prior to their use.

**§ 1.2.7** In cases of discrepancies between the requirements of the Agreement and the General Conditions, the order of precedence for conflict in requirements shall be in the following sequence: (1) the Agreement; and (2) the requirements of the General Conditions.

**§ 1.3 CAPITALIZATION**
Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

**§ 1.4 INTERPRETATION**
In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

**§ 1.5 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE**
**§ 1.5.1** The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and will retain all common law, statutory and other reserved rights, including copyrights. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers shall not own or claim a copyright in the Instruments of Service. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' copyrights or other reserved rights.

**§ 1.5.2** The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce the Instruments of Service provided to them solely and exclusively for execution of the Work. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service.

The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers may not use the Instruments of Service on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants.

### § 1.6 TRANSMISSION OF DATA IN DIGITAL FORM

If the parties intend to transmit Instruments of Service or any other Project information or documentation in digital form, they shall endeavor to establish mutually agreed upon written protocols governing such transmissions, unless otherwise already provided in the Agreement or the Contract Documents.

### ARTICLE 2 OWNER
### § 2.1 GENERAL

**§ 2.1.1** The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative, who is Michael Havener.

**§ 2.1.2** The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

### § 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER

**§ 2.2.1** Prior to commencement of the Work, the Contractor may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. Thereafter, the Contractor may only request such evidence if (1) the Owner fails to make payments to the Contractor as the Contract Documents require; (2) a change in the Work requires adjustment in excess of ten percent (10%) of the Contract Sum; or (3) the Contractor identifies in writing a reasonable concern regarding the Owner's ability to make payment when due. The Owner shall furnish such evidence as a condition precedent to commencement or continuation of the Work or the portion of the Work affected by such adjustment. After the Owner furnishes the evidence, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

**§ 2.2.2** Except for permits and fees that are the responsibility of the Contractor under the Contract Documents, including those required under Section 3.7.1, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

**§ 2.2.3** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

**§ 2.2.4** The Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Contractor's performance of the Work with reasonable promptness after receiving the Contractor's written request for such information or services.

**§ 2.2.5** The Owner shall furnish to the Contractor, free of charge, such copies of the Contract Documents as are reasonably necessary for the execution of the Work.

### § 2.3 OWNER'S RIGHT TO STOP THE WORK

If Contractor fails to correct defective Work as required herein or a portion of the Work that is not in accordance with the requirements of the Contact Documents as required by Section 12.2, Owner, by a written order signed by an agent specifically so empowered by Owner may order Contractor to stop Work, or any portion thereof, until the

cause for such order has been eliminated; however, this right of Owner to stop the Work shall not give rise to any duty on the part of Owner to exercise this right for the benefit of Contractor or any other person or entity, except to the extent of Owner's duty to coordinate as required by Section 6.1.3.

## § 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK

If the Contractor defaults or neglects to carry out the Work or any portion in accordance with the Contract Documents and fails within a ten-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may after such ten day period give the Contractor a second written notice to correct such deficiencies within a three day period.  If the Contractor within such three day period after receipt of such second notice fails to commence and continue to correct any deficiencies, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the amount of the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect.  If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

**§ 2.5**   Contractor hereby acknowledges that the West Building portion of the Project will take the form of a two-unit commercial leasehold condominium.   The parking garage unit will be owned by the Downtown Savannah Authority ("DSA") and will be built by Contractor pursuant to a separate GMAX Contract with an affiliate of Owner acting as Construction Manager.   The second unit will be owned by Owner and will be built by Contractor pursuant to this Agreement.

## ARTICLE 3  CONTRACTOR
### § 3.1 GENERAL

**§ 3.1.1** The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Contractor shall be lawfully licensed, if required in the jurisdiction where the Project is located. The Contractor shall designate in writing a representative who shall have express authority to bind the Contractor with respect to all matters under this Contract. The term "Contractor" means the Contractor or the Contractor's authorized representative.

Contractor shall have a project manager assigned to the Work and a superintendent on the jobsite, both of whom are satisfactory to Owner. Contractor may not change the project manager or superintendent without the Owner's prior written consent. Contractor's initial project manager is Dean Strandburg. Contractor's initial superintendent/expeditor is Harold Adams.   Contractor shall provide adequate protection to and safeguard all construction and maintain at all times on the jobsite a record copy of all contracts, drawings, specifications, addenda, change orders and other modifications, in good order and marked to record all changes made during construction; shop drawings; product data; samples; submittals; purchases; materials; equipment; handbook and maintenance and operating manuals and instructions; other related documents; and revisions which arise out of the Work. All such records and logs shall at all reasonable times be available to Owner, any Lender to Owner ("Lender") and Architect for their review. At Owner's request, Contractor shall transfer one copy of the last set of drawing transparencies issued by the Architect with all additions, deletions, corrections, revisions and all other changes made in the course of construction and shall sign such and deliver such to Owner in connection with the final application for payment. Contractor shall have each subcontractor, as specifically defined in the Project Specifications, prepare as-built drawings of their work, which will be incorporated into the final plans and specifications delivered to Owner. Each subcontractor shall certify to the accuracy and completeness of the work depicted on said subcontractor prepared as-built drawings. Upon completion of the Work, Contractor shall deliver all such records to Owner. Contractor shall at all times maintain an ongoing lien release log showing information required by the Owner, including without limitation the following as to each subcontractor: subcontractor name, manner of work, notice date, date of partial lien release receipt (to be obtained on a month to month basis), date of the most recent performance of service or delivery of materials, and the date of receipt of the final lien release. Contractor shall also maintain at all times daily reports which record for each day information requested by Owner, which shall include without limitation: the weather, subcontractors on the job, number of workers for each subcontractor, number of hours worked, work accomplished, problems encountered, equipment used on the job, equipment in use, and equipment broken down.

Contractor represents and warrants to Owner, that (a) the Contractor is financially solvent, able to pay all debts as they mature and possesses sufficient working capital to operate its business continuously and to perform its obligations hereunder; (b) Contractor is able to furnish the plan, tools, materials, supplies, equipment and labor required to complete the Work and perform its obligation hereunder and has sufficient experience and competence to do so; (c) Contractor's execution, delivery and performance of the Agreement is within Contractor's powers and has been duly authorized; and (d) Contractor possesses experience  in the business, administration, construction, construction management and superintendents of projects of the size, complexity and nature of this Project and will perform the Work with the care, skill and diligence of an experienced and qualified Contractor.

**§ 3.1.2** The Contractor shall perform the Work in accordance with the Contract Documents.

**§ 3.1.3** The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons or entities other than the Contractor.

Contractor shall attend all meetings necessary or required to meet the objectives of the Agreement; Contractor shall notify the Owner of all such meetings sufficiently in advance to allow the Owner to attend such meetings; and Contractor shall prepare minutes of all such meetings and submit such to Owner and all other interested parties within seven (7) days of the meeting.

## § 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR

**§ 3.2.1** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.  Contractor specifically acknowledges and agrees that Contractor has reviewed Owner's soil investigations and subsurface report pursuant to the standards of a reasonably prudent contractor, and the Contract Sum has been agreed to based upon such information.  Contractor is solely responsible for all assumptions, deductions or conclusions which Contractor may make from the examination of this information.  This is not meant to imply that the Contractor is responsible for unforeseen conditions.  Prior to execution of the Agreement, Contractor and each Subcontractor evaluated and satisfied themselves as to the conditions and limitations under which the Work is to be performed, including, without limitation, (i) the location, condition, layout and nature of the Project site and surrounding areas, (ii) generally prevailing climatic conditions, (iii) anticipated labor supply and costs, and (iv) availability and costs of materials, tools, and equipment.  The Owner assumes no responsibility or liability for the safety of the Project site.  Contractor shall be solely responsible for providing a safe place for the performance of the Work.  Owner shall not be required to make any adjustment in either the Contract Sum or the Contract time in connection with any failure by Contractor or any subcontractor to have complied with the requirements of the Section.

Contractor will provide to Owner evidence of errors and omissions coverage for each and every design professional the Contractor retains for the Project. Currently, Owner and Contractor understand that Contractor may retain for the Project the following design professionals: Bencor Global, Inc, Berkel & Company, Inc., TIC, American Fire Protection, and Slurry Systems.

**§ 3.2.2** Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor shall promptly report to the Owner any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Owner may require. It is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional, unless otherwise specifically provided in the Contract Documents.

Contractor shall assemble for Architect's approval and transmit to Owner a complete copy in loose-leaf binders and digital format of all operating and maintenance data for all manufacturers whose equipment is installed in the Work and "as built" drawings for the Work as specifically defined in the Project Specifications.

**§ 3.2.3** The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect reasonably may require.

**§ 3.2.4** If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect issues in response to the Contractor's notices or requests for information pursuant to Sections 3.2.2 or 3.2.3, the Contractor shall make Claims as provided in Article 15. If the Contractor fails to perform the obligations of Sections 3.2.2 or 3.2.3, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. If the Contractor performs those obligations, the Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents, for differences between field measurements or conditions and the Contract Documents, or for nonconformities of the Contract Documents to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities.

**§ 3.2.5** If during the progress of the Work after award of the Contract, the Contractor discovers any error, inconsistency or omission in the Contract Documents, the Contractor shall halt all related work until such discrepancies have been corrected in accordance with requirements of Article 12 and Contractor shall provide Owner with notice of same within five (5) days after Contractor's discovery thereof. To the extent any such error, inconsistency or omission in the Contract Documents results in an increase to the Contract Sum and Contract Time, either or both shall be equitably adjusted.

§ 3.2.6 In the review of or during the progress of the Work, the Contractor may propose modifications or product substitutions of the Contract Documents. If these modifications or product substitutions are accepted by Owner and Architect, the Contractor shall incorporate such modifications or product substitutions in the Work and shall fully execute such modifications or substitutions as the Work.

**§ 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES**
**§ 3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any loss or damage arising solely from those Owner-required means, methods, techniques, sequences or procedures.

**§ 3.3.2** The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for, or on behalf of, the Contractor or any of its Subcontractors.

**§ 3.3.3** The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work. Specifically, the Contractor shall provide the testing laboratory and the Owner with twenty-four (24) hours' notice prior to any Work involving, filling, lifts or paving, so that the soils engineer may be present during this portion of the Work.

Any water, gas or sewer line, telephone, telegraph or electric wire or cable correctly identified on the Contract Drawings or identified by One Call or utility provider, which is broken or cut by the Contractor or any of the

Contractor's agents, excluding work performed by a utility company of municipal or county contractors, shall be replaced by the Contractor at Contractor's expense and shall not be paid for by the Owner. In the event such damage occurs, Contractor shall notify Owner in writing within three (3) days after it occurs. Any damage caused by work performed by a utility company or governmental contractors shall, upon Owner's prior approval be repaired or replaced by Contractor, and, if such repair or replacement is performed by Contractor, shall be subject to Change Order as an increase to the cost of the Work.

## § 3.4 LABOR AND MATERIALS
**§ 3.4.1** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

**§ 3.4.2** Except in the case of minor changes in the Work authorized by the Architect in accordance with Sections 3.12.8 or 7.4, the Contractor may make substitutions only with the consent of the Owner and in accordance with a Change Order or Construction Change Directive.

**§ 3.4.3** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Work. The Contractor shall not permit employment of unfit persons or persons not properly skilled in tasks assigned to them.

**§ 3.4.4** The Contractor shall follow all applicable laws, including without limitation employer minimum wages or minimum ages and occupational safety and health regulations and be solely responsible thereafter.

**§ 3.4.5** Any materials stored off site shall be insured at 100% of their value.

## § 3.5 WARRANTY
**§ 3.5.1** The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit. Work, materials, or equipment not conforming to these requirements may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

**§ 3.5.2** Notwithstanding anything in the Contract Documents to the contrary, it is expressly acknowledged and agreed by the parties that there are no warranties of any kind, including any and all implied warranties, except for the warranty set forth in Subparagraph 3.5.1 above and those additional warranties, if any, that are expressly set forth in the Contract Documents or as provided by law.

**§ 3.5.3** Except as may be set forth herein, Owner and Contractor acknowledge and agree that nothing in the Contract Documents is intended in any way to transfer or assign to the Contractor from the Owner any duty, or responsibility, placed by statute, law, ordinance, rule, regulation or other governmental act on the Owner (in Owner's capacity as the owner, developer or seller of the Project,) under any applicable law; provided, however, Contractor acknowledges and agrees that the foregoing is not in any way intended to limit its responsibility with regard to any express statutory warranties required of it as the Project's general contractor under any applicable law.

## § 3.6 TAXES
The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

## § 3.7 PERMITS, FEES, NOTICES, AND COMPLIANCE WITH LAWS

**§ 3.7.1** Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit as well as for other permits, fees, licenses, and inspections by government agencies necessary for proper execution and completion of the Work that are customarily secured after execution of the Contract and legally required at the time bids are received or negotiations concluded.

**§ 3.7.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders and other requirements of public authorities applicable to performance of the Work. Notwithstanding anything herein to the contrary, in the event of any change in the laws, statutes, ordinances, codes, rules, regulations or lawful orders of public authorities which occur after the date this Contract is executed by the parties, to the extent such change may result in increased costs or time of performance, the Contract Sum and/or Contract Time shall be adjusted by Change Order as agreed to by Owner and Contractor.

**§ 3.7.3** If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

**§ 3.7.4 Concealed or Unknown Conditions.** If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if the Architect determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. In such event, the Contract Sum and Contract Time shall be equitably adjusted. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall promptly notify the Owner and Contractor in writing, stating the reasons. If either party disputes the Architect's determination or recommendation, that party may proceed as provided in Article 15.

**§ 3.7.5** If, in the course of the Work, the Contractor discovers human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the Contract Documents, the Contractor shall immediately suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Contractor shall continue to suspend such operations until otherwise instructed by the Owner but shall continue with all other operations that do not affect those remains or features. In such event, Contractor shall not be required to resume such operations unless and until it receives an executed Change Order from Owner equitably adjusting the Contract Sum and Contract Time, as appropriate. Adjustments to the Contract Sum and Contract Time arising from the existence of such remains or features shall be made as provided in Article 15.

**§ 3.7.6** Notwithstanding anything contained herein to the contrary, all applicable building codes, ordinances and regulations adopted by the county, municipality or other locality in which the building is to be constructed and in effect at the time the work is performed shall serve as a part of the minimum standard for all work to be performed as part of the Contract Documents. However, Contractor shall rely upon the Contract Documents as being developed in compliance with such required standards. Should the Contractor know that any part of the drawings and specifications conflict with such codes, ordinances or regulations, said codes, ordinances or regulations shall govern and the Work shall be performed in accordance therewith. Should a modification to the plans and specifications be required to meet such minimum standards, then a Change Order will be issued and the Contract Sum and Contract Time shall be equitably adjusted to the extent arising from any conflict in the Contract Document and such minimum standards.

## § 3.8 ALLOWANCES

**§ 3.8.1** The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct,

but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

**§ 3.8.2** Unless otherwise provided in the Contract Documents,

.1 allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

.2 Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances; and

.3 Whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

**§ 3.8.3** Materials and equipment under an allowance shall be selected by the Owner with reasonable promptness and in accordance with the Contractor's construction schedule to avoid delay in the Work.

## § 3.9 SUPERINTENDENT

**§ 3.9.1** The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor.

**§ 3.9.2** The superintendent is the person or entity identified as such in the Agreement; provided, however, the Owner may reply within 14 days to the Contractor in writing stating whether the Owner has reasonable objection to the proposed superintendent. Failure of the Owner to reply within the 14 day period shall constitute notice of no reasonable objection.

**§ 3.9.3** The Contractor shall not employ a proposed superintendent to whom the Owner has made reasonable and timely objection for good cause. The Contractor shall not change the superintendent without the Owner's consent, which shall not unreasonably be withheld or delayed.

## § 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES

**§ 3.10.1** The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

**§ 3.10.2** The Contractor shall prepare a submittal schedule which is coordinated with the Contractor's construction schedule, promptly after being awarded the Contract and thereafter as necessary to maintain a current submittal schedule, and shall submit the schedule(s) for the Owner's approval. The submittal schedule shall allow the Owner reasonable time to review such submittal, provided, the Owner's approval shall not unreasonably be delayed or withheld. Until such time as the Contractor submits a submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals.

**§ 3.10.3** The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect. Owner and Architect shall conform their performance under the Contract Documents to the most recent schedules submitted to them by Contractor.

## § 3.11 DOCUMENTS AND SAMPLES AT THE SITE

The Contractor shall maintain at the site for the Owner one copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to indicate field changes and selections made during construction, and one copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and Owner and shall be delivered to the Owner upon completion of the Work as a record of the Work as constructed.

## § 3.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES

**§ 3.12.1** Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

**§ 3.12.2** Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

**§ 3.12.3** Samples are physical examples that illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

**§ 3.12.4** Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. Their purpose is to demonstrate the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents for those portions of the Work for which the Contract Documents require submittals. Review by the Architect is subject to the limitations of Section 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals that are not required by the Contract Documents may be returned by the Architect without action.

**§ 3.12.5** The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents in accordance with the Contractor's construction schedule and in such sequence as to cause no delay in the Work. If Shop Drawings, Product Data, Sample and similar submittals presented to the Architect by the Contractor contain deviations from the requirements of the Contract Documents, the Contractor shall in writing, identify such deviations.

**§ 3.12.6** By submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents to the Owner and Architect that the Contractor has (1) reviewed and approved them, (2) determined and verified materials, field measurements and field construction criteria related thereto, or will do so and (3) checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

**§ 3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

**§ 3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

**§ 3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice, the Architect's approval of a resubmission shall not apply to such revisions.

**§ 3.12.10** The Contractor shall not be required to provide professional services that constitute the practice of architecture or engineering unless such services are expressly identified in and required by the Contract Documents for a portion of the Work or unless the Contractor elects to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design

criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications and approvals performed or provided by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance and design criteria specified in the Contract Documents.

### § 3.13 USE OF SITE
The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.  Only materials and equipment that are to be used in connection with the Work shall be brought to and stored on the Project site.  After equipment is no longer required for the Work, it shall be promptly removed from the Project site.  Protection of construction materials and equipment stored at the Project site from weather, theft, damage, and all other adversity is solely the responsibility of the Contractor.  Unless permission is obtained from the City to allow the closure of access to the Project Site for such Work, the Contractor shall ensure that the Work, at all times, is performed in a manner that affords reasonable access, both vehicular and pedestrian, to the site of the Work and all adjacent areas.  The Work shall be performed, to the fullest extent reasonably possible, in such a manner that public areas adjacent to the site of the Work shall be free from all debris, building materials, and equipment likely to cause hazardous conditions.

### § 3.14 CUTTING AND PATCHING
**§ 3.14.1** The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.  All areas requiring cutting, fitting and patching shall be restored to the condition existing prior to the cutting, fitting and patching, unless otherwise required by the Contract Documents.

**§ 3.14.2** The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

### § 3.15 CLEANING UP
**§ 3.15.1** The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by Contractor's operations under the Contract. At completion of the Work, the Contractor shall remove Contractor's waste materials, rubbish, tools, construction equipment, machinery and surplus materials from and about the Project site. The Contractor shall turn the Work over to the Owner in a clean turn-key condition inside and outside (including the premises).  Clean up shall include removal of all work materials, and the removal of all temporary facilities and job signs, surface materials and temporary roads and walkways.

**§ 3.15.2** If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and Owner shall be entitled to reimbursement from the Contractor.

### § 3.16 ACCESS TO WORK
The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.  The Contractor shall also provide access to the Work in preparation and progress to other contractors hired by the Owner for the purpose of providing fixturing to the Project.  The Contractor shall coordinate its work with the other contractors so as not to delay the date of Substantial Completion or otherwise interfere with the performance of the Work. However, Owner's contractors shall participate in coordination and scheduling meetings and shall

comply with Contractor's work flow plan and schedules. Contractor shall have authority to direct Owner's contractors to harmoniously work with Contractors' subcontractors.

### § 3.17 ROYALTIES, PATENTS AND COPYRIGHTS

The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has actual knowledge that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall notify the Architect.

### § 3.18 INDEMNIFICATION

Contractor shall indemnify, defend and hold Owner harmless from all losses, damages, liabilities, fines, penalties, costs (including clean-up costs) and expenses (including attorneys' fees and litigation expenses) arising from hazardous materials or substances, deposited on or about the jobsite by Contractor, or Contractor's subcontractors, suppliers, or materialmen or its or their agents or employees, unless such hazardous materials or substances were required by the Contract Documents. Should Contractor, or Contractor's subcontractors, suppliers or materialmen or its or their agents or employees bring or deposit such hazardous materials or substances on the jobsite, Contractor shall ensure that such hazardous materials or substances will be handled, stored, transported and disposed of in accordance with the requirements of applicable law. Contractor shall pay the cost of removing such hazardous materials or substances during the course of the Agreement. Hazardous materials or substances found to be existing on site prior to mobilization by the Contractor shall be properly disposed of by Owner and is not within the scope of the Work.

Contractor hereby agrees to fully, and completely indemnify, defend and hold
Owner harmless from all liens, or claims of right to enforce liens, against the jobsite or the improvements to be erected thereon arising out of any Work to be performed or labor or materials to be furnished; provided that Owner has made proper payment to Contractor for such lienor's work. Neither Final Payment by Owner nor acceptance of the Work shall be deemed to constitute a waiver or release of the foregoing obligation, and if any such lien or claim for lien shall at any time be filed, Contractor shall immediately pay such or proceed in accordance with the last sentence of this Section 3.18. Contractor shall deliver to Owner within five (5) business days of Contractor's receipt, copies of all notices received by Contractor under applicable lien laws. Contractor shall promptly pay each Subcontractor, laborer, mechanic and materialmen performing work upon or furnishing materials for the Work upon receipt of payment from Owner, as herein provided, and keep the Work and jobsite free and clear of any and all liens and claims of lien of each Subcontractor, laborer, mechanic and materialman performing labor upon or furnishing materials for the Work; provided, however, if a lien is filed and if Contractor wishes to dispute such lien, Contractor shall promptly advise Owner thereof in writing and, upon written request from Owner, Contractor shall deposit with Owner within ten (10) days thereafter a statutory bond in an amount sufficient to cause such lien to be removed as a matter of record. If Contractor fails to post such bond, then Owner shall have the right to cause such lien to be removed as a matter of record, through payment thereof or otherwise, and to deduct the cost thereof from sums otherwise due to Contractor under the Agreement.

Contractor shall promptly notify Owner in writing of all accidents involving serious injuries to or death of persons or damage to or loss of property occurring in connection with the Work. Subject to the terms and conditions of the Contract Documents, to the fullest extent permitted by law, Contractor shall indemnify, defend and hold harmless Owner and Owner's members, its members' officers and directors, its agents and employees from and against all claims, suits, damages, losses, fines, penalties, liabilities and expenses for personal injury and damage to property other than the Work itself, including, but not limited to attorneys' fees and litigation expenses, arising out of or resulting from Contractor's performance of Work, to the extent caused by any act or omission or willful misconduct of Contractor, its Subcontractors, or agents or anyone directly or indirectly employed by Contractor or anyone for whose acts it may be liable or from or out of Contractor's breach of its obligation under the Contract Documents or applicable law. Such obligation shall not be construed to negate, abridge, or otherwise reduce any statutory or other right or duty of indemnity to Owner which would otherwise exist as to any party or person described in this Section 3.18. If losses, damages, liabilities and expenses arise out of the concurrent negligence of both Owner and

Contractor or the respective parties for whom each is responsible, Contractor shall indemnify and defend Owner only to the extent of Contractor's own negligence or those for which it is responsible hereunder or under applicable law. Contractor's indemnity herein is expressly intended to constitute a waiver of any immunity it may have under the law only to the extent necessary to provide Owner with a complete indemnity for the negligence of Contractor or Contractor's employees, to the extent of their negligence. OWNER AND CONTRACTOR ACKNOWLEDGE THAT THE INDEMNIFICATION PROVISIONS OF THIS SECTION 3.18 WERE SPECIFICALLY NEGOTIATED AND AGREED TO BY THE PARTIES. CONTRACTOR'S OBLIGATION TO INDEMNIFY IS NOT RELIEVED IN THE EVENT CLAIMS ARE PAID UNDER A WORKER'S COMPENSATION RECOVERY.

**§3.19 REMOVAL OF LIENS**
Contractor shall immediately upon request from Owner, bond off (through a company reasonably acceptable to Owner) or otherwise remove any lien filed against the Project by any Subcontractor, Sub-subcontractor or supplier performing work or supplying materials for the Contractor, for which the Contractor has received payment, except where nonpayment by Owner is a result of Owner's rights within the Contract Documents.

**ARTICLE 4  ARCHITECT**
**§ 4.1 GENERAL**
**§ 4.1.1** The Owner shall retain an architect lawfully licensed to practice architecture or an entity lawfully practicing architecture in the jurisdiction where the Project is located. That person or entity is identified as the Architect in the Agreement and is referred to throughout the Contract Documents as if singular in number.

**§ 4.1.2** Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

**§ 4.1.3** If the employment of the Architect is terminated, the Owner shall employ a successor architect as to whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the Architect.

**§ 4.2 ADMINISTRATION OF THE CONTRACT**
**§ 4.2.1** The Architect will provide administration of the Contract as described in the Contract Documents and will be an Owner's representative during construction until the date the Architect issues the final Certificate For Payment. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.  Notwithstanding anything in the Contract Documents to the contrary, Owner specifically reserves the right to communicate directly with Contractor and Owner shall not be required to make all communications through the Architect; however, reasonable effort should be made to coordinate matters with the Architect to the extent such coordination is reasonably appropriate.

**§ 4.2.2** The Architect will visit the site at intervals appropriate to the stage of construction, or as otherwise agreed with the Owner, to become generally familiar with the progress and quality of the portion of the Work completed, and to determine in general if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will not have control over, charge of, or responsibility for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1.

**§ 4.2.3** On the basis of the site visits, the Architect will keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and report to the Owner (1) known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor, and (2) defects and deficiencies observed in the Work. The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

### § 4.2.4 COMMUNICATIONS FACILITATING CONTRACT ADMINISTRATION

Except as otherwise provided in the Contract Documents, the Architect shall be copied on all correspondence between the Owner and Contractor. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

**§ 4.2.5** Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

**§ 4.2.6** With Owner's prior written consent, the Architect has authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable and with Owner's prior written consent, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

**§ 4.2.7** The Architect will review and approve, or take other appropriate action upon, the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken in accordance with the Contractor's construction schedule with reasonable promptness while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**§ 4.2.8** The Architect will prepare Change Orders and Construction Change Directives. The Architect will investigate and make determinations and recommendations regarding concealed and unknown conditions as provided in Section 3.7.4.

**§ 4.2.9** The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion; issue Certificates of Substantial Completion pursuant to Section 9.8; receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor pursuant to Section 9.10; and issue a final Certificate for Payment pursuant to Section 9.10.

**§ 4.2.10** If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

**§ 4.2.11** The Architect will interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If no agreement is made concerning the time within which interpretations required of the Architect shall be furnished in compliance with this Section 4.2, then delay shall be recognized on account of failure by the Architect to furnish such interpretations within five (5) business days of Architect's receipt of written request for them.

**§ 4.2.12** Interpretations and decisions of the Architect will be consistent with the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and decisions, the Architect will endeavor to

RECEIVED FOR FILING IN CHATHAM CO. SUPERIOR COURT 2/8/2021 1:17 PM Brian A. Hart - Clerk of Court

secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions rendered in good faith.

**§ 4.2.13** The Architect will review and respond to requests for information about the Contract Documents. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If no agreement is made concerning the time within which Architect is required to respond to such requests for information, then delay shall be recognized on account of Architect's failure to respond within five (5) business days of Architect's receipt of Contractor's written request for information. If appropriate, the Architect will prepare and issue supplemental Drawings and Specifications in response to the requests for information.

**ARTICLE 5   SUBCONTRACTORS**
**§ 5.1 DEFINITIONS**
**§ 5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

**§ 5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

**§ 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK**
**§ 5.2.1** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract and before awarding subcontracts, shall furnish in writing to the Owner through the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. In accordance with the Contractor's construction schedule, the Owner shall reply to the Contractor in writing stating whether or not the Owner, after due investigation, has reasonable objection to any such proposed person or entity.  Failure of the Owner to reply within the time periods set forth in the Contractor's construction schedule, but in any event no later than seven (7) days, shall constitute notice of no reasonable objection.

**§ 5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection. Contractor shall not permit any assignment of subcontractor or supplier obligations without the express written consent of Owner.

**§ 5.2.3** If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted reasonably  in submitting names as required.

**§ 5.2.4** The Contractor shall not substitute a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitution.

**§ 5.3 SUBCONTRACTUAL RELATIONS**
By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the

Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound.  Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

**§ 5.3.1** Contractor shall require in the Subcontract Agreement that Subcontractors shall examine the Plans and read the Specifications of all Work.

**§ 5.3.2** Contractor shall require in the Subcontract Agreement that Subcontractors shall cooperate with each other to correct and coordinate their work in such manner as not to delay or interfere with work of others.

**§ 5.3.3** Contractor shall require that each Subcontractor report to the Contractor in writing delays encountered in the installation of Subcontractor's Work which might prevent the Work's prompt and proper installation or make it unsuitable to connect or receive the Work or the Work of others.

### § 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS
**§ 5.4.1** Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner, provided that

 .1  assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements that the Owner accepts by notifying the Subcontractor and Contractor in writing; and

 .2  assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

When the Owner accepts the assignment of a subcontract agreement, the Owner assumes the Contractor's rights and obligations under the subcontract.

**§ 5.4.2** Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall, at Owner's expense, be equitably adjusted for increases in cost resulting from the suspension.

**§ 5.4.3** Upon such assignment to the Owner under this Section 5.4, the Owner may further assign the subcontract to a successor contractor or other entity. If the Owner assigns the subcontract to a successor contractor or other entity, the Owner shall nevertheless remain legally responsible for all of the successor contractor's obligations under the subcontract.

### ARTICLE 6   CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
### § 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS
**§ 6.1.1** The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Article 15.

**§ 6.1.2** When separate contracts are awarded for installation of Owner furnished equipment or other portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

**§ 6.1.3** The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules when reasonably directed to do so. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.

**§ 6.1.4** Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces as described herein, the Owner shall be deemed to be subject to the same obligations and to have the same rights that apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.

**§ 6.2 MUTUAL RESPONSIBILITY**
**§ 6.2.1** The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall conduct and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

**§ 6.2.2** If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect and the Owner apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

**§ 6.2.3** The Contractor shall reimburse the Owner for costs the Owner incurs that are payable to a separate contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a separate contractor's delays, improperly timed activities, damage to the Work or defective construction.

**§ 6.2.4** The Contractor shall promptly remedy damage the Contractor wrongfully causes to completed or partially completed construction or to property of the Owner, separate contractors as provided in Section 10.2.5.

**§ 6.2.5** The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 3.14.

**§ 6.2.6** Should Contractor delay or otherwise cause damage to the Work or property of any separate contractor on the Project, Contractor agrees to assume the responsibility and liability for such damage, and such separate contractor may assert its claim against the Contractor as a third party beneficiary hereunder. Owner agrees that this provision will be inserted in every separate contract at the Project entered into by the Owner.

**§ 6.2.7** Subject to the terms and conditions of this Agreement, to the extent that a separate contractor brings a claim against the Owner due to delay or other damage caused by the Contractor, the Contractor agrees, but only to the extent caused by Contractor, that the Contractor will defend, indemnify and hold the Owner harmless against any such claim or suit, and that the Contractor will reimburse the Owner the cost of defending such claims due to delay or other damage, but only to the extent caused by the Contractor, including reasonable attorneys' fees and litigation expenses actually incurred, and if any judgment against the Owner arises therefrom the Contractor shall pay or satisfy it. Owner agrees that this provision will be inserted in every separate contract at the Project entered into by the Owner.

**§ 6.3 OWNER'S RIGHT TO CLEAN UP**
If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect shall allocate the cost among those responsible.

**ARTICLE 7   CHANGES IN THE WORK**
**§ 7.1 GENERAL**
**§ 7.1.1** Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.   If as a result of a contemplated change proposing additional Work a decision is made to redesign the Project such that there is a decrease in the Work, then the Contractor shall credit the Contract Sum for the decrease in Work. Costs as defined in the Agreement should be

actual costs paid by Contractor, lump sum amounts, defined rates, or unit prices, less rebates and salvage which are taken by Contractor. Notwithstanding the breakdown or categorization of any cost to be reimbursed in the Contract Documents, there shall be no duplication of payment in the event any particular item for which payment is requested can be characterized as falling into more than one type of compensable reimbursable categories.

**§ 7.1.2** A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive may or may not be agreed to by the Contractor.  Agreement on any Change Order constitutes a final settlement of all known matters relating to the change in the Work that is the subject of Change Order, including, but not limited to, all direct and indirect costs associated with such change and any and all adjustments to the Contract Sum and the Construction Schedule.  The Owner and Contractor expressly agree that there shall not be a release or final settlement of any reserved claim, as authorized by Article 15 of these General Conditions, and agree that a Change Order that does not constitute a final settlement of all matters relating to the change in the Work that is the subject to the Change Order shall specify the reservation of the claim on the Change Order with the detail required by these General Conditions.

No changes to, additions to, or deviations from the Contract Documents, including without limitation, changes in the Contract Sum or changes in the Contract Time, shall be made in the Work without the prior written approval of Owner, said approval to be only in the form of a written Change Order or Construction Change Directive. Contractor agrees that each Change Order shall include all manner of adjustments in the total costs and time related to the change, including without limitation cost adjustments related to delays and disruptions caused by the change. For each Change Order, the Contractor shall be deemed to have waived as to each change, unless expressly stated in the Change Order (i) any related cost or time adjustment which it might otherwise be entitled under the Contract Documents; and (ii) any right to an equitable adjustment as to time, cost or any other matter. In the event Owner or Contractor initiates a Construction Change Directive, Contractor shall provide together with the request for said Construction Change Directive Contractor's good faith estimate of the impact of the change upon the Contract Sum and Contract Time. Owner may, in its sole discretion, (i) elect to proceed with said Construction Change Directive, (ii) require a Change Order for the proposed change, or (iii) decline the Construction Change Directive, acknowledging that the request of a Change Order may necessitate an extension of the Contract Time. In the event a Construction Change Directive is authorized by Owner, Owner shall be responsible for costs incurred by Contractor in performing such Construction Change Directive.

**§ 7.1.3** Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.  Contractor and Owner agree that the Contractor shall perform the following changes in the Work, whether by Change Order or Construction Change Directive, promptly and subject to specified and reasonable payment instructions:  (1) all changes required by field conditions; and (2) all changes which are required as a result of an inspection, as contemplated in these General Conditions.  In such cases a Change Order shall promptly follow for all costs incurred by Contractor.

**§ 7.2 CHANGE ORDERS**
**§ 7.2.1** A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect stating their agreement upon all of the following:
.1    The change in the Work;
.2    The amount of the adjustment, if any, in the Contract Sum; and
.3    The extent of the adjustment, if any, in the Contract Time.

**§ 7.3 CONSTRUCTION CHANGE DIRECTIVES**
**§ 7.3.1** A Construction Change Directive is a written order prepared by the Architect and signed and approved in advance and in writing by the Owner, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

**§ 7.3.2** A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

**§ 7.3.3** If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:

    **.1**    Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;

    **.2**    Unit prices stated in the Contract Documents or subsequently agreed upon;

    **.3**    Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

    **.4**    As provided in Section 7.3.7.

**§ 7.3.4** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

**§ 7.3.5** Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.  Notwithstanding anything contained herein to the contrary, Contractor shall have no obligation to perform changes in the Work pursuant to a Construction Change Directive: (i) which exceeds Eighty Thousand Six Hundred Thirty Six Dollars ($80,636), or (ii) to the extent the amount of such changes, together with the then outstanding and unpaid amounts of all other Construction Change Directives not yet converted into Change Orders, exceeds One Hundred Sixty One Thousand Two Hundred Seventy Two Dollars ($161,272).

**§ 7.3.6** A Construction Change Directive signed by the Contractor indicates the Contractor's agreement therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**§ 7.3.7** If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the Architect shall determine the method and the adjustment on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, an amount for overhead and profit as set forth in the Agreement, or if no such amount is set forth in the Agreement, a reasonable amount. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.7 shall be limited to the following:

    **.1**    Costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

    **.2**    Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

    **.3**    Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

    **.4**    Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

    **.5**    Additional costs of supervision and field office personnel directly attributable to the change.

**§ 7.3.8** The amount of credit to be allowed by the Contractor to the Owner for a deletion or change that results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ 7.3.9** Pending final determination of the total cost of a Construction Change Directive to the Owner, the Contractor may request payment for Work completed under the Construction Change Directive in Applications for Payment. The Architect will make an interim determination for purposes of monthly certification for payment for those costs and certify for payment the amount that the Architect determines, in the Architect's professional judgment, to be reasonably justified. The Architect's interim determination of cost shall adjust the Contract Sum on the same basis

as a Change Order, subject to the right of either party to disagree and assert a Claim in accordance with Article 15. Further, pending final determination of any adjustment to the Contract Time, a Change Order shall be issued indicating the parties agreement with part or all of the appropriate time adjustment, and for any portion of such time adjustment that remains in dispute, the Architect will make an interim determination, subject to the right of either party to disagree and assert a Claim in accordance with Article 15.

**§ 7.3.10** When the Owner and Contractor agree with a determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and the Architect will prepare a Change Order. Change Orders may be issued for all or any part of a Construction Change Directive.

**§ 7.4 MINOR CHANGES IN THE WORK**
The Architect has authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes will be effected by written order signed by the Architect and shall be binding on the Owner and Contractor.

**ARTICLE 8 TIME**
**§ 8.1 DEFINITIONS**
**§ 8.1.1** Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work. Contract Time to be based on calendar days that begin at 12:00 midnight and include the following twenty-four (24) hours. Calendar days shall include Saturdays, Sundays and legal holidays in addition to working days.

**§ 8.1.2** The date of commencement of the Work is the date established in the Agreement.

**§ 8.1.3** The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

**§ 8.1.4** The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

**§ 8.2 PROGRESS AND COMPLETION**
**§ 8.2.1** Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

**§ 8.2.2** The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance.

**§ 8.2.3** The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

**§ 8.3 DELAYS AND EXTENSIONS OF TIME**
**§ 8.3.1** (a) Contractor will be entitled to an extension of Contract Time and/or an increase to the Contract Sum, under one or more of the following circumstances:
    (i) an act or omission by Owner, its designated representative or any party under the control of Owner (including, but not limited to the Architect and any separate contractors), other than the Contractor, that delays the progress of the Work;
    (ii) Owner approves a Change Order in writing containing an express extension of the Contract Time or increase in the Contract Sum;
    (iii) labor disputes (including disputes affecting transportation) directly affect the progress of the Work; provided that Contractor has used its best skill and judgment to prevent the same;
    (iv) adverse and abnormal weather conditions affect the progress of the Work, but only if Contractor notifies Owner of such adverse weather conditions in accordance with Section 8.3.1(b);

(v) a court or governmental agency having jurisdiction over the Work causes the progress of the Work to be delayed by a court order, change in existing law or interpretation thereof, or new law, provided that such action is not based on Contractor's or Subcontractors' violation of any law or any governmental regulation, which was in effect at the time of execution of the Agreement, or upon other default by Contractor or its Subcontractors;

(vi) an act of God, or a fire; or

(vii) unknown or unsuitable soil conditions materially differing from those reasonably anticipated by the Contractor or any hazardous, toxic or harmful materials which are encountered and materially affect the progress of the Work. Contractor will keep Owner apprised of potential delays as they occur during weekly Project coordination meetings.

(b) When authorized, an extension of Contract Time shall be granted for each day of an excusable delay as defined in Section 8.3.1(a), however an extension of Contract Time shall not be granted for delays in transportation or delivery of materials, except as provided in Section 8.3.1(a) above. In the event of an occurrence causing a delay, Contractor shall notify Owner in writing within ten (10) days of Contractor's discovery of said occurrence, and to the extent known: (a) the cause for and estimated duration of the delay, (b) a description of the portions of the Work affected thereby, as reasonably determinable at the time, and (c) all other material details. Contractor shall be entitled to an increase in the Contract Sum only to the extent such delay does in fact cause an increase in the Contract Sum as well as the Contract Time. In the event that Owner requires Contractor to overcome an excusable delay, the Contractor's Contract Sum shall be increased by Contractor's reasonable costs due to such delay.

(c) Notwithstanding anything stated herein to the contrary, in the event there is a delay in the Work for any reason with respect to weather delays, Owner will not be responsible for paying for an increase in the Contract Sum caused by such weather delay until the cumulative number of days of such a delay exceed the number of days published in the NOAA report. The cumulative number of days of adjustment to the date of completion of the Work shall be tallied and netted out quarterly such that any days of delay in the completion of the Work within the quarter will be offset by any days of hastening the completion of the Work (the net number produced thereby being referred to as the "Quarterly Adjusted Weather Days").

If the progress, performance or completion of the Work or any portion or portions of it is or may be delayed because of a dispute or disputes as to the interpretations, meaning or application of this Agreement or any Subcontract hereunder, Contractor agrees at the direction of Owner to proceed and to order any Subcontractor involved to proceed with the Work pending a resolution of the dispute, and without prejudice to the rights or remedies of any party thereto. In such event, Owner agrees to pay any undisputed amounts pending resolution of the dispute.

**§ 8.3.2** Claims relating to time shall be made in accordance with applicable provisions of Article 15.

**§ 8.3.3** This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents. Contractor shall not request additional time to complete the Project because of a delay occurring on Sundays or holidays unless Contractor reasonably demonstrates to Owner that a full day of Work was scheduled in advance for such Sunday or holiday.

## ARTICLE 9   PAYMENTS AND COMPLETION
### § 9.1 CONTRACT SUM
The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

### § 9.2 SCHEDULE OF VALUES
Where the Contract is based on a stipulated sum or Guaranteed Maximum Price, the Contractor shall submit to the Architect and Owner, before the first Application for Payment, a schedule of values allocating the entire Contract Sum to the various portions of the Work and prepared in such form and supported by such data to substantiate its accuracy as the Owner may reasonably require. This schedule, unless objected to by the Owner, shall be used as a basis for reviewing the Contractor's Applications for Payment and shall be amended and updated as reasonably necessary by Contractor.

**§ 9.3 APPLICATIONS FOR PAYMENT**
**§ 9.3.1** At least twenty days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment prepared in accordance with the schedule of values, if required under Section 9.2., for completed portions of the Work. Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner may reasonably require, such as copies of requisitions from Subcontractors and material suppliers, and shall reflect retainage if provided for in the Contract Documents.

**§ 9.3.1.1** As provided in Section 7.3.9, such applications may include requests for payment on account of changes in the Work that have been properly authorized by Construction Change Directives, but not yet included in Change Orders.

**§ 9.3.1.2** Unless otherwise approved by Owner, Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

**§ 9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner and Owner's lender, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Notwithstanding anything herein to the contrary, if it is reasonably necessary for the Contractor, in order to maintain the construction schedule, to (i) purchase materials or equipment and store them offsite, or (ii) make advance deposits for any materials or equipment, whether stored on or off the site, Owner shall not unreasonably withhold, condition or delay its approval of payment for such items. Contractor will provide identification for all offsite materials as may be required by Owner or Owner's lender for purposes of identifying collateral in which Owner's lender takes a security interest.  Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

**§ 9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which payments have been received from the Owner shall, consistent with Contractor's knowledge, information and belief, comply with the procedure specified by the Contract Documents, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.  Contractor shall supply with each draw request lien waivers from all Subcontractors and suppliers in direct privity with the Contractor, or which have filed a notice to Contractor, and covering all work completed for the prior month.

**§ 9.3.4** The Owner may withhold a reasonable portion of the Contractor's Payment to protect the Owner from: defective Work not remedied; third-party or Contractor claims, liens or suits filed by, through or under Contractor; reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum; damage to Owner attributable to Contractor or its Subcontractors; reasonable evidence that the Work will not be completed within the Contract Time; or Contractor's breach of terms and conditions of the Agreement.  Owner must provide written notice to Contractor explaining the basis of any amounts withheld under this Section and sufficient supporting documentation to justify any such withholding.

**§ 9.4 CERTIFICATES FOR PAYMENT**
**§ 9.4.1** The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

**§ 9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**§ 9.5 DECISIONS TO WITHHOLD CERTIFICATION**
**§ 9.5.1** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of

 .1  defective Work not remedied within the time frame provided by these General Conditions;
 .2  third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;
 .3  failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;
 .4  reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;
 .5  damage to the Owner or a separate contractor;
 .6  reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay;
 .7  repeated failure to carry out the Work in accordance with the Contract Documents;
 .8  failure to obtain necessary permits (but only if such failure results from Contractor's action), or licenses to comply with the Contract Documents or applicable laws, ordinances, codes, rules or regulations; or
 .9  a material breach of any of the provisions of the Contract Documents.

**§ 9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

**§ 9.5.3** If the Architect withholds certification for payment under Section 9.5.1.3, the Owner shall have no obligation to pay for work properly performed or material or equipment suitably delivered until Contractor has bonded off the amount of any such amounts not paid by the Contractor to Subcontractor(s) in a manner satisfactory to Owner. Contractor agrees to indemnify Owner for all costs, including reasonable attorney's fees actually incurred, by Owner as a result of Contractor's failure to pay Subcontractors as described in this Section.

**§ 9.6 PROGRESS PAYMENTS**
**§ 9.6.1** After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**§ 9.6.2** The Contractor shall pay each Subcontractor no later than ten (10) days after receipt of payment from the Owner the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of the Subcontractor's portion of the Work. The Contractor shall, by appropriate

RECEIVED FOR FILING, 52 CV 000 42 IN CHATHAM CO SUPERIOR 2/3/2021 4:21 PM    Brian A. Hart — Clerk of Court

agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**§ 9.6.3** The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**§ 9.6.4** The Owner has the right to request written evidence from the Contractor that the Contractor has properly paid Subcontractors and material and equipment suppliers undisputed amounts paid by the Owner to the Contractor for subcontracted Work. If the Contractor fails to furnish such evidence within five (5) business days, the Owner shall have the right to contact Subcontractors to ascertain whether they have been properly paid. Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor, except as may otherwise be required by law.

**§ 9.6.5** Contractor payments to material and equipment suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

**§ 9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**§ 9.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

**§ 9.7 FAILURE OF PAYMENT**
If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by binding dispute resolution, then the Contractor may, upon seven additional days' written notice to the Owner and Architect stop the Work until payment of the amount owing has been received unless the unpaid amount is subject of a Claim in which case Article 15 shall apply. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents unless the unpaid amount is the subject of a Claim in which case Article 15 shall apply.

**§ 9.8 SUBSTANTIAL COMPLETION**
**§ 9.8.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

**§ 9.8.2** When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

**§ 9.8.3** Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification

by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

**§ 9.8.4** When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion that shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

**§ 9.8.5** The Certificate of Substantial Completion shall be submitted to the Owner and the Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

## § 9.9 PARTIAL OCCUPANCY OR USE

**§ 9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.3.1.5 and authorized by public authorities having jurisdiction over the Project. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

**§ 9.9.2** Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

**§ 9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

## § 9.10 FINAL COMPLETION AND FINAL PAYMENT

**§ 9.10.1** Upon receipt of the Contractor's written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.  If at final inspection, the Architect finds that the Work of the Contract is not complete, the Architect will notify the Contractor and the Certificate of Final Payment will not be issued. After the Contractor has completed the Work, he shall again notify the Architect in writing that the Work is complete and ready for final inspection.  The Architect shall not issue the Certificate of Final Payment until final inspection is complete and all work of the Contract is complete.  All warranties and guarantees required under or pursuant to the Contract Documents shall be assembled and delivered by the Contractor to the Architect as part of the final Application for Payment.  The Final Certificate for Payment will not be issued by the Architect until all warranties and guarantees have been received and accepted by the Owner, and until Contractor provides a Final Contractor's Affidavit and Final Lien Waiver acceptable to Owner and Owner's lender.

**§ 9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if reasonably required by the Owner, all the data establishing payment or satisfaction of obligations to the extent of payments previously requested, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be reasonably designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, and such Subcontractor still has valid lien rights against the Work, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

**§ 9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, the Owner shall, upon application by the Contractor, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

**§ 9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from
    **.1**    liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;
    **.2**    failure of the Work to comply with the requirements of the Contract Documents; or
    **.3**    terms of special warranties required by the Contract Documents.

**§ 9.10.5** Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

**ARTICLE 10   PROTECTION OF PERSONS AND PROPERTY**
**§ 10.1 SAFETY PRECAUTIONS AND PROGRAMS**
The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

**§ 10.2 SAFETY OF PERSONS AND PROPERTY**
**§ 10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to
    **.1**    employees on the Work and other persons who may be affected thereby;
    **.2**    the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and
    **.3**    other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

**§ 10.2.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

**§ 10.2.3** The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities. The Contractor shall also be responsible, at the Contractor's sole cost and expense, for all reasonable measures necessary to protect any property adjacent to the Project and improvements therein from damage due to Contractor's performance of the Work. Any damage to such property or improvements caused by Contractor's performance of the Work shall be addressed and resolved by the Contractor.

    **.1**     The Contractor shall provide and maintain temporary protection as required by the Contract Documents.

    **.2**     Burning of trash and excess materials on the premises is prohibited and the Contractor shall not permit such activity.

    **.3**     Contractor specifically acknowledges and agrees that during its operations on the Project, Contractor shall be responsible for maintaining any silt fence and tree protection fence and any other sedimentation control measures or tree control measures required by applicable sedimentation control laws and regulations, including without limitation the Erosion Control Plans which is a part of the Construction Documents. Subject to the terms and conditions of this Agreement and not as an independent covenant, Contractor shall hold Owner harmless from and against any and all costs, losses, liabilities or expenses (including reasonable attorneys' fees and litigation expenses) which Owner may incur as a result of (i) the failure of Contractor to comply with all sedimentation or erosion control requirements, laws and regulations in effect as of the date of this Agreement and during the performance of the Work; (ii) the escape of sediment and silt from the Property onto downstream owners or into the detention ponds, if any during periods in which Contractor has control of the Project; or (iii) the failure of the control requirements. In connection with the foregoing, the parties hereby acknowledge that the Project is in a federally-designated flood zone, and the Owner acknowledges that the Contractor is not responsible for costs, losses, liabilities and expenses (including reasonable attorneys' fees and litigation expenses) for damage which occurs during periods of flooding if the Contractor is in compliance with the Erosion Control requirements defined by the Construction Documents and applicable sedimentation control laws. Contractor will be responsible for costs, losses, liabilities and expenses (including reasonable attorneys' fees and litigation expenses) for damage which occurs as a result of flooding due to Contractor's failure to properly control dewatering operations.

**§ 10.2.4** When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel. Should the Contractor elect to use explosives in the performance of the Work, the utmost care shall be exercised so as not to endanger life or property. The Owner shall not be held liable for damages done by the Contractor in the use of explosives. The Contractor shall comply with all applicable rules, regulations, orders, codes and laws with regard to the use of explosives and Contractor shall not less than eight hours in advance of the use of explosives, notify all third parties whose property may be damaged or endangered by the blast within reasonable proximity of the Work as established by pre-blast survey. Wherever explosives are stored or kept, they shall be stored in a safe and secure manner, and all storage places shall be plainly marked "DANGEROUS EXPLOSIVES" and shall be under the care of a competent watchman at all times.

**§ 10.2.5** The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 to the extent caused in whole or in part by (1) the Contractor, Contractor's subcontractor, sub-subcontractor, or anyone directly or indirectly employed by any of them, or (ii) anyone for whose acts the Contractor is legally liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.

**§ 10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

**§ 10.2.7** The Contractor shall not permit any part of the construction or site to be loaded so as to cause damage or create an unsafe condition.

### § 10.2.8 INJURY OR DAMAGE TO PERSON OR PROPERTY
If either party suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

**§ 10.2.9** As between Owner and Contractor, Contractor is responsible to the Owner for any and all the safety issues relating to the Work on the Project. Contractor shall administer and manage the safety program. This will include, but not necessarily be limited to review of the safety programs of each of its Subcontractors. Contractor shall monitor the establishment and execution of effective know industry safety practices, as applicable to Work on this Project, and the compliance with all applicable regulatory and advisory agency construction safety standards. The Contractor's responsibility for review, monitoring and coordination of the Subcontractor's safety programs shall not extend to direct control over execution of the Subcontractor's safety programs; notwithstanding Contractor's safety obligations to the Owner, it is agreed and understood that each individual Subcontractor shall remain controlling employer responsible for the safety programs and precautions applicable to its own work and the activities of others' work in areas designated to be controlled by such Subcontractors.

### § 10.3 HAZARDOUS MATERIALS
**§ 10.3.1** If the Contractor encounters on the site materials or substances reasonably believed to be asbestos or polychlorinated biphenyl (PCB), or other hazardous substances or materials not addressed in the Contract Documents, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

**§ 10.3.2** Upon receipt of the Contractor's written notice, the Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to cause it to be rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. By Change Order, the Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up.

**§ 10.3.3** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), except to the extent that such damage, loss or expense is due to the fault or negligence of the party seeking indemnity.

**§ 10.3.4** The Owner shall not be responsible under this Section 10.3 for materials or substances the Contractor brings to the site unless such materials or substances are required by the Contract Documents. The Owner shall be

RECEIVED FOR FILING 4/22/2020 4:17 PM IN CHATHAM COUNTY SUPERIOR COURT Brian N. Hart - Clerk of Court

responsible for materials or substances required by the Contract Documents, except to the extent of the Contractor's fault or negligence in the use and handling of such materials or substances.

**§ 10.3.5** The Contractor shall indemnify the Owner for the cost and expense the Owner incurs (1) for remediation of a hazardous material or substance the Contractor brings to the site and negligently handles, or (2) where the Contractor fails to perform its obligations under Section 10.3.1, but only to the extent that the cost and expense are due to the Contractor's fault or negligence.

**§ 10.3.6** If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency or judicial order for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

## § 10.4 EMERGENCIES
In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 15 and Article 7.

## ARTICLE 11  INSURANCE AND BONDS
**§ 11.1 WAIVERS OF SUBROGATION** The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**§ 11.2  CONTRACTOR INSURANCE REQUIREMENTS.** Contractor shall procure and maintain with a company or companies acceptable to Owner such insurance as will protect Contractor from claims set forth below which may arise out of or result from operations under this Agreement by Contractor, by a subcontractor of Contractor, by anyone directly or indirectly employed by Contractor or any such subcontractor, or by anyone for whose acts Contractor or any such subcontractor may be liable:

.1       claims under workers' compensation, disability benefit and other similar employee benefit laws that are applicable to the Work to be performed;

.2       claims for damages because of bodily injury, occupational sickness or disease, or death of Contractor's employees;

.3       claims for damages because of bodily injury, sickness or disease, or death of persons other than Contractor's employees;

.4       claims for damages, which are covered by standard personal injury liability coverage;

.5       claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

.6       claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

.7      claims involving contractual liability insurance applicable to Contractor's indemnification obligations under this Agreement;

.8      claims for bodily injury or property damage arising out of completed operations;

.9      claims for damages due to employment liability or discrimination.

The cost of Contractor's insurance required hereunder shall be a component of the Guaranteed Maximum Price. Insurance coverage required by this Article and the Contract Documents shall be written on an occurrence basis and shall be maintained without interruption from date of commencement of the Work until date of Final Completion and termination of any coverage required to be maintained after Final Payment.

The following insurance shall be obtained by Contractor:

**General Liability** (off-site activities)

Commercial general liability combined single limits (including premises operations, products and completed operations coverage to be maintained for ten (10) years or the length of the applicable statute of repose (whichever is less) after completion of the Work, blanket contractual liability, liability for the operations of any Contractor's subcontractors, personal injury liability arising out of false arrest, detention or imprisonment or malicious prosecution, libel, slander or defamation of character, invasion of privacy, wrongful eviction or wrongful entry, shoring, blasting, excavating, underpinning, demolition, work below ground surface, tunneling and grading as applicable) containing a severability of interest provision or a cross liability endorsement, in an amount of not less than:

$2,500,000 per occurrence/$5,000,000 aggregate

**Workers Compensation/Employer's Liability** (on-site and off-site activities)**:**

Workers Compensation        Statutory Limit

Employer's Liability Limits:

Each Accident        $1,000,000
Disease - Policy Limit     $1,000,000
Disease - Each Employee  $1,000,000

**Automobile Liability** including hired and non-owned (on-site and off-site activities):

Combined Single Limit    $2,500,000

**Professional Liability:** $1,000,000.00

**Umbrella Liability:** a minimum of $20,000,000 per occurrence/aggregate

Coverage must be follow form of the General Liability (for off-site activities), Employers' Liability, and Automobile Liability.

Certificates of insurance from Contractor, acceptable to Owner, shall be delivered to Owner prior to commencement of the Work and prior to any individual working for either Contractor or subcontractors entering onto the Project. Contractor will provide written notice to the Owner at least thirty (30) days in advance if any of the insurance policies required by this Article and the Contract Documents if any will be reduced, suspended, or canceled. These certificates and the insurance policies required in this Article and the Contract Documents shall name Owner, Owner's Member and Owner's lender as additional insureds, except for the worker's compensation and Professional

Liability policies. If any of the foregoing insurance coverages are required to remain in force after Substantial Completion or Final Completion, additional certificates evidencing continuation of such coverage shall be submitted upon the date of Substantial Completion or Final Completion, as the case may be.  Contractor will carry Professional Liability coverage for ten (10) years or the length of the applicable statute of repose (whichever is less) after completion of the Work, and Contractor shall provide Owner with certificates evidencing the same at least annually after Substantial Completion or Final Completion, as the case may be.

Limitations on the amount of such insurance shall in no way be construed to reduce or limit the liability of Contractor to Owner for negligent acts or omissions.

### § 11.2A.  GENERAL LIABILITY INSURANCE.

11.2A.1        OWNER CONTROLLED INSURANCE PROGRAM

A.        Owner will implement a General Liability Owner Controlled Insurance Program ("OCIP") for the Project.  The Owner will provide a OCIP for the on-site activities at this project and will procure, pay premiums, and administer the OCIP during the duration of the project.  The program will provide the following coverages:

- Commercial General Liability (including, but not limited to, premises operations, products and completed operations coverage to be maintained for ten (10) years or the length of the applicable statute of repose (whichever is less) after completion of the Work, blanket contractual liability, liability for the operations of any Contractor's subcontractors, personal injury liability arising out of false arrest, detention or imprisonment or malicious prosecution, libel, slander or defamation of character, invasion of privacy, wrongful eviction or wrongful entry, shoring, excavating, underpinning, work below ground surface, tunneling and grading as applicable)
- Excess Liability
- Pollution Liability

The OCIP Coverage applies only to work performed at the Project site.  Project site includes the area of the work only. Contractors must provide their own insurance for off-site activities such as fabrication and manufacturing, as well as workers compensation for on-site activities and the items set forth in Section 11.2.1 through Section 11.2.9 above.

B.        The Owner has engaged the services of McGriff, Seibels & Williams (the "Insurance Administrator") for the purpose of administering the OCIP and placement of all required insurance associated therewith.

11.2A.2        OCIP COVERAGES

The Owner will procure and pay premiums for the following insurance for Contractors of any tier that is enrolled. This coverage information is not intended to alter any of the provisions in the actual insurance policies.

A.        COMMERCIAL GENERAL LIABILITY
Insurer: Endurance American Specialty Insurance Company

| Limits: | | |
|---|---|---|
| $2,000,000 | Each Occurrence | |
| $4,000,000 | General Aggregate | |
| $4,000,000 | Products Completed Operations Aggregate* | |
| $1,000,000 | Personal Injury / Advertising Injury | |

*Completed Operations coverage shall be extended for ten (10) years or the length of the applicable statute of repose (whichever is less) upon completion of the Work.

B.        EXCESS LIABILITY

RECEIVED FOR FILING IN CHATHAM CO SEPT 6 2021 1:17 PM   Brian A. Hart   Clerk of Court

Insurers:  Allied World National Assurance Company, Navigators Specialty, Endurance Reinsurance Corporation of America, Liberty Insurance Underwriters, Inc.

| | Limits: | $100,000,000 | Each Occurrence |
| | | $100,000,000 | General Aggregate |
| | | $100,000,000 | Completed Operations Limit* |

\* Completed Operations coverage shall be extended for ten (10) years or the length of the applicable statute of repose (whichever is less) upon completion of the Work.

C.   CONTRACTORS POLLUTION LIABILITY WRAP

Limits:        $5,000,000

\* Completed Operations coverage shall be extended for ten (10) years or the length of the applicable statute of repose (whichever is less) upon completion of the Work.

D.   COVERAGES NOT PART OF OCIP. THE OWNER WILL REQUIRE INSURANCE CERTIFICATES FOR CERTAIN COVERAGES AND LIMITS OUTLINED ABOVE FROM THE CONTRACTOR.

E.   CONTRACTOR AND SUBCONTRACTOR DEDUCTIBLE OBLIGATIONS.

The Owner shall pay up to $25,000.00 per occurrence, up to a maximum aggregate liability of $100,000.00, including court costs, attorney's fees and costs of defense which are payable under the OCIP.  Thereafter, the Contractor shall pay all further deductibles up to a maximum aggregate liability for deductible costs of $400,000 where such deductibles are attributable to Contractor's or Subcontractor's Work, acts or omissions, or the Work, acts or omissions of any of Subcontractors' subcontractors, or any other entity or party for whom Subcontractor may be responsible ($500,000 maximum aggregate deductible less $100,000 Owner-funded deductibles).

**§ 11.2B.  PROPERTY INSURANCE.**  Owner shall, procure and maintain, with a company or companies reasonably acceptable to Owner with a minimum A.M. Best rating of A, XI, property insurance (including, without limitation, boiler and machinery insurance) upon the property resulting from the Work to the full insurable value thereof on a replacement cost basis.

The Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance that (1) shall be on an "All-risk" completed value builder's risk policy form, (2) shall insure against the perils of fire and extended coverage and physical loss or damage including, without duplication of coverage, flood, earthquake, windstorm, terrorism, theft, vandalism, malicious mischief, collapse, false work, temporary buildings and debris removal (including demolition occasioned by enforcement of any applicable legal requirements). This property insurance shall cover interests of Owner, and their respective contractors and subcontractors in the Work. Said builder's risk insurance shall be maintained until such permanent property insurance is in place. Said builder's risk insurance shall include flood insurance provided by the National Flood Insurance Program. The Contractor and his subcontractors shall be named as additional insureds as their interests may appear.

Partial occupancy or use prior to Substantial Completion shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. Owner shall take reasonable steps to obtain such consent of the insurance company or companies and shall not, without mutual written consent, take any action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of coverage under the insurance contemplated by the Contract Documents.

The deductible amount shall not exceed Twenty-Five Thousand and No/100ths Dollars ($25,000.00) on a per occurrence basis.  Owner shall pay costs not covered because of such deductibles.

This property insurance shall cover portions of the Work stored off site, and also portions of the Work in transit.

Contractor shall maintain fire and extended coverage insurance on the equipment and tools it uses in connection with the Work.

Before an exposure to loss may occur, Contractor shall file with Owner a copy of each policy that includes insurance coverages required by Contractor herein. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project.

Owner and Contractor waive all rights against each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, for damages caused by fire or other perils to the extent of actual recovery of proceeds from property insurance policies obtained pursuant to this Article and the Contract Documents or other property insurance applicable to the Work resulting from this Contract, except such rights as they may have to proceeds of such insurance held by Owner as trustee. Owner or Contractor, as appropriate, shall require from contractors and subcontractors by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsements or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the Work damaged.

Owner as trustee shall have power to adjust and settle a loss with its insurers. If distribution of insurance proceeds by arbitration is required, the arbitrators will direct such distribution.

## § 11.3 SUBCONTRACTORS' INSURANCE REQUIREMENTS

Contractor shall require that all agreements with the Subcontractors specify that the Subcontractors carry liability and other insurance and which names Owner and Lender as additional insureds, except for Workmen's Compensation policies. Each subcontract shall contain a provision whereby the Subcontractor agrees to perform its subcontract obligations directly to Owner, if Owner elects to take over the Work following Contractor's default and to assume such subcontract. Contractor shall be responsible for the preparation of contracts and for the selection and the payment of all Subcontractors. At Owner's request Contractor shall submit to Owner a copy of each subcontract with each Subcontractor and major supplier and Contractor shall submit to Owner a subcontract bid tabulation indicating final bid results and scope analysis and Contractor recommendation for subcontractor awards. If Owner does not indicate its approval of a subcontractor within five (5) business days after receipt of notice thereof, Contractor is authorized to award the subcontract on a basis consistent with its recommendation.

Contractor shall not allow any subcontractor to commence Work until that subcontractor has obtained the following insurance, naming the Owner, Contractor, and Owner's construction lender as additional insureds, except for the Workmen's Compensation and Professional Liability policies:

.1        Worker's Compensation Insurance, in amounts required by applicable state law, with coverage B employer's liability limits of $1,000,000.00.

.2        Commercial General Liability Insurance including coverage for personal injury, bodily injury, death, property damage, contractual liability and products-completed operations in an amount of not less than $1,000,000 per occurrence and $2,000,000.00 aggregate. For subcontractors enrolled in the OCIP, this coverage is only required for off-site activities.

.3        Automobile Liability Insurance, with coverage of $1,000,000.00 combined single limit.

.4        Umbrella Liability Insurance with coverage of $~~1~~2,000,000.00.

.5        Professional Liability Insurance with coverage of $1,000,000 for elements of the Work expressly identified in the Contract Documents as requiring design-build responsibilities.

Owner shall notify Contractor in writing if any subcontract work is deemed a high risk activity requiring higher limits. The construction activities of the marine contractor(s) will be required to carry Commercial General Liability and Umbrella Liability minimum limits of $5,000,000.

Upon request, Contractor shall make available to Owner and Owner's mortgage lender for their review certificates evidencing the foregoing coverage. Said policies shall provide that the insurance shall not be canceled or changed until the expiration of at least 30 days after written notice of the proposed cancellation or change has been given to Owner. The coverage provided by each policy of insurance shall be primary coverage, unaffected or reduced by any other insurance held by an additional insured party. Each policy of insurance shall include a clause or endorsement whereby the insurance carrier waives all rights or recovery by subrogation or otherwise against Owner, Contractor and subcontractors and sub-subcontractors of every tier.

### § 11.4 PERFORMANCE BOND AND PAYMENT BOND
The Owner shall have the right to require the Contractor and all Subcontractors to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.

Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished.

### ARTICLE 12   UNCOVERING AND CORRECTION OF WORK
### § 12.1 UNCOVERING OF WORK
**§ 12.1.1** If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if requested in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

**§ 12.1.2** If a portion of the Work has been covered that the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, such costs and the cost of correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

### § 12.2 CORRECTION OF WORK
### § 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION
The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, the costs of any other adjacent Work which may be displaced by doing so, and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense. If Contractor fails to respond to Owner or commence repair work within the times set forth below, Owner may cause the same to be made by a third party and charge the cost of such repair and replacement to Contractor, including interest thereon at the rate specified in Paragraph 15.2 of the Agreement from the date of each expenditure. Notwithstanding any such assignment by the Owner of the repair work, Contractor shall remain directly liable to Owner under the terms of the Contract Documents. All warranties contained in the Contract Documents shall apply to all defects in the Work (other than design defects except for design defects relating to design build services obtained by Contractor as set forth in under separate agreements (if any)), whether latent or patent. Contractor shall cause guarantees and warranties running from its subcontractors and suppliers to be directly written to Owner and such parties shall furnish Owner written evidence of such guarantees, warranties, and any assignments thereof. These guarantee/warranty provisions shall apply to Owner's assignee only if assignee agrees to assume the Owner's remaining responsibilities to the Contractor, if any.

Brian N. Hart - Clerk of Court

**§ 12.2.1.1** During the time between (a) the date of acceptance of the Work by the Owner after Substantial Completion and (b) the expiration of one year thereafter, or such longer period of time as may be prescribed by the terms of any applicable special warranty required by the Contract Documents, Contractor shall immediately commence repairs to such defective work upon notification from Owner thereof, and shall commence efforts to correct the defective Work within fifteen (15) days after written notice has been given by the Owner to the Contractor, and Contractor shall diligently pursue the completion of the defective Work within forty-five (45) days thereafter. Contractor shall perform such repairs at Contractor's sole expense. Should the Contractor fail to commence repairs as required by this Section 12.2.1.1 after written notice has been given by Owner to Contractor, the Owner may make the necessary repairs and charge the cost of same to the Contractor. Any reasonable correction costs shall be deducted from the Contract Sum, or, will be reimbursed to the Owner by Contractor within thirty (30) days of an invoice for such reasonable correction costs incurred after full payment of the Contract Sum. In the case of any emergency brought about by defective work of the Contractor, the Owner may proceed immediately to perform work, to the extent necessary to prevent imminent bodily injury, death or substantial property damage, and obtain reimbursement therefor from Contractor within thirty (30) days of Owner's invoice therefor. Owner's invoice shall include all necessary backup and support required to substantiate the nature of the emergency, specific actions necessitate by the emergency, and Owner's costs reflected in the invoice. Owner will notify Contractor of any such emergency repairs within three (3) days of the occurrence of said emergency. This obligation shall survive termination of the Contract.

### § 12.2.2 AFTER SUBSTANTIAL COMPLETION

**§ 12.2.2.1** Within eleven (11) months of Substantial Completion, the Contractor shall accompany the Owner and the Architect on an inspection tour of the building and shall note any defects and shall diligently pursue remedying these defects within forty-five (45) days of the inspection tour and shall prosecute the work without interruptions until accepted by the Owner and Architect, regardless of whether such prosecution should extend beyond the limit of the warranty period. In the case of any emergency brought about by defective work of the Contractor, the Owner may proceed immediately to perform work, to the extent necessary to prevent imminent bodily injury, death or substantial property damage, and obtain reimbursement therefor from Contractor within thirty (30) days of Owner's invoice therefor. Owner's invoice shall include all necessary backup and support required to substantiate the nature of the emergency, specific actions necessitate by the emergency, and Owner's costs reflected in the invoice. Owner will notify Contractor of any such emergency repairs within three (3) days of the occurrence of said emergency. This obligation shall survive termination of the Contract.

**§ 12.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual completion of that portion of the Work.

**§ 12.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

**§ 12.2.3** The Contractor shall remove from the site portions of the Work that are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

**§ 12.2.4** The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work that is not in accordance with the requirements of the Contract Documents.

**§ 12.2.5** Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations the Contractor has under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.



**§ 12.3 ACCEPTANCE OF NONCONFORMING WORK**
If the Owner prefers to accept Work that is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made. Acceptance of nonconforming work shall occur only through written notification by Owner, specifically identifying, acknowledging and accepting nonconforming work.

**ARTICLE 13   MISCELLANEOUS PROVISIONS**
**§ 13.1 GOVERNING LAW**
The Contract shall be governed by the law of the place where the Project is located.

**§ 13.2 SUCCESSORS AND ASSIGNS**
**§ 13.2.1** The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to covenants, agreements and obligations contained in the Contract Documents.  Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

**§ 13.2.2** The Owner may, without consent of the Contractor, collaterally assign the Contract to a lender providing construction financing for the Project. The Contractor shall execute all consents reasonably required to facilitate such assignment.  Should the construction lender assume the rights and obligations of the Owner by foreclosure or otherwise, lender shall assume the Owner's rights and obligations under the Contract Documents consented to by Contractor and provided in every case that the assumption of such rights and obligations does not increase the Contractors costs or obligations under the Contract.

**§ 13.3 WRITTEN NOTICE**
All written communications from Contractor to Owner shall be sent promptly to Owner, attention to the parties identified in Paragraph 15.3 of the A102 Owner Contractor Agreement or other individual designated by Owner, to avoid delays in the progress of the Work. All written communications from Owner to Contractor shall be sent promptly to Contractor, attention the parties identified in Paragraph 15.4 of the A102 Owner Contractor Agreement with a copy to:

>       The Hunt Corporation
>       6720 North Scottsdale Road
>       Suite 300
>       Scottsdale, AZ 85253
>       Attn: Jose Pienknagura

Any notice or demand hereunder shall be in writing and shall be delivered personally or sent by United States certified or registered mail, return receipt requested, postage prepaid, via facsimile (with confirmation copy via first class mail), or sent by public or private courier service (such as Federal Express). Any notice or demand that is mailed shall be deemed sufficiently given for all purposes hereunder upon the earlier of receipt or three (3) calendar days after mailing.

**§ 13.3.1** The Owner and the Contractor agree that in addition to the notice provided for in the Contract, notices may be made by personal delivery and in such event shall be effective upon actual delivery.  In the event a party refuses to accept delivery of a notice, such refusal to accept delivery shall constitute satisfactory notice on the date on which any personal delivery messenger is turned away or on the date on which the post office returns any certified mail to the sending party marked unaccepted.

**§ 13.4 RIGHTS AND REMEDIES**
**§ 13.4.1** Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

**§ 13.4.2** No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach there under, except as may be specifically agreed in writing.

## § 13.5 TESTS AND INSPECTIONS

**§ 13.5.1** If the Contract Documents, laws, ordinances, rules, regulations, or orders of any public authority having jurisdiction require any work to be inspected, tested or approved, the Contractor shall give the Owner timely notice of its readiness and of the date scheduled so that Owner may observe such inspection, testing or approval.  In addition, the Owner may require special inspection, testing or approval of material or work for compliance with the requirements of the Contract Documents, provided that the costs of such special testing shall be borne by the Owner. Upon Owner authorization, the Contractor shall promptly arrange for such special testing, inspection, or approval procedure.  The costs of routine testing shall be borne by the Owner, but the Contractor shall be responsible for the cost of the material tested.  When directed by the Owner, material compliance with the specifications shall be made by one of the following: 1) Manufacturer's certificate of compliance; 2) Mill certificate or 3) Testing laboratory certification.  Report of actual laboratory tests shall be from the Owner's designated laboratory or from a laboratory satisfactory to the Owner.  Samples tested shall be selected by or in the presence of the Owner and the method of testing shall comply with the appropriate professional society's standard specifications.  Any retesting or additional testing related to defective work shall be the sole expense of Contractor.

**§ 13.5.2**  Employment of the testing laboratory is for the benefit of the Owner in confirming that the performance and quality of the Work is in conformance with Contract Documents.

**§ 13.5.3** The engagement of a testing laboratory by the Owner shall not relieve the Contactor of his responsibility for the quality of the materials, products, or equipment installed or the satisfactory performance of the Work in full compliance with the requirements of the Contract Documents.  If such procedures for testing, inspection or approval under Sections 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedure and compensation for the Architect's services and expenses shall be at the Contractor's expense.

**§ 13.5.4** Owner may obtain the services of a qualified independent testing laboratory (ITL) to perform tests as set forth below and as specified in the respective Specification Sections.  The services of the laboratory will be paid for by the Owner, expect that the contractor shall pay for subsequent tests in the event that initial tests indicate that Work does not fully conform to the requirements of the Contract Documents.  If the subsequent tests prove the Owner's laboratory was in error, the cost of the additional test will be paid by the Owner.

**§ 13.5.5**  All tests shall be made in accordance with requirements for methods of testing by the applicable ASTM specifications.  The Contractor shall provide and pay for the following services: 1) Concrete mix design(s) (to be submitted to the Owner for his review and approval prior to placement of the concrete); if the Contractor intends to pump the concrete during the course of construction, a mix design for pumpable concrete shall be prepared and submitted to the Owner for review and approval. 2) Deliver to the testing laboratory adequate quantities of representative samples of materials proposed for use which are required to be tested. 3) Advise Owner sufficiently in advance of construction operations to allow the testing laboratory time to complete any required check-tests and assign personnel for field inspections and testing as specified. 4) Provide adequate facilities for safe storage and proper curing of concrete test samples on the Project site for the first 24 hours and also for subsequent field curing as required by applicable regulations. 5) Furnish such nominal labor and materials as are required to assist laboratory personnel in obtaining and handling samples at site. 6) Provide material specimens for testing of brick and mortar, including construction of required masonry prisms. 7) Assure that ITL access to the structural steel during fabrication so that the required shop inspections and tests can be made. 8) The testing laboratory is not authorized to revoke, alter, relax, increase or release Work. If it appears that the material furnished or work performed by the Contractor fails to fulfill requirements, the testing laboratory shall promptly notify the Architect and the Owner of such deficiencies.

**§ 13.5.6** Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.  Contractor acknowledges that the plans and specifications required certain testing protocols to be carried out at specified times.  Contractor expressly agrees to provide such access and other

assistance as is required to ensure that the testing is carried out in a timely manner and in a manner consistent with the plans and specifications.

## § 13.6  INTEREST
Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate identified as the "Prime Rate" in the pages of The Wall Street Journal Money Rates (Eastern Edition) on the date payment is due.

## § 13.7 TIME LIMITS ON CLAIMS
The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract in accordance with the requirements of the final dispute resolution method selected in the Agreement within the time period specified by applicable law, but in any case not more than 10 years after the date of Substantial Completion of the Work unless the applicable statute of limitations would run more than 10 years after the date of Substantial Completion.  The Owner and Contractor waive all claims and causes of action not commenced in accordance with this Section 13.7.

## ARTICLE 14   TERMINATION OR SUSPENSION OF THE CONTRACT
## § 14.1 TERMINATION BY THE CONTRACTOR
**§ 14.1.1** The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

> **.1** Issuance of an order of a court or other public authority having jurisdiction that requires all Work to be stopped;
>
> **.2** An act of government, such as a declaration of national emergency that requires all Work to be stopped;
>
> **.3** Because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents unless such non-payment is the subject of a Claim under dispute and is being resolved or provided herein;; or
>
> **.4** The Owner has failed to initiate action within seven (7) days of the Contractor's request for reasonable evidence as required by Section 2.2.1, and Owner fails to diligently pursue the production of such evidence from the lender thereafter.

**§ 14.1.2** The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work by the Owner as described in Section 14.3 are encountered by the Contractor which constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

**§ 14.1.3**  If one of the reasons described in Section 14.1.1 or 14.1.2 exists, or the Owner otherwise is guilty of a material breach of a provision of the Contract Documents, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract, whereupon the Contractor shall have all rights and remedies available to it, including the right to recover from the Owner payment for Work executed, including reasonable overhead and profit and actual costs incurred by reason of such termination through the date of termination but in no event compensatory damages or lost profits.

**§ 14.1.4** If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has repeatedly failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.

**§ 14.2 TERMINATION BY THE OWNER FOR CAUSE**
**§ 14.2.1** The Owner may terminate the Contract if the Contractor
  .1 repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
  .2 fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;
  .3 repeatedly disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority; or
  .4 otherwise is guilty of substantial breach of a provision of the Contract Documents.

**§ 14.2.2** When any of the above reasons exist, the Owner may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:
  .1 Exclude the Contractor from the site and take possession of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;
  .2 Accept assignment of subcontracts pursuant to Section 5.4; and
  .3 Finish the Work by whatever reasonable method the Owner may deem expedient. Upon written request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

**§ 14.2.3** When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

**§ 14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby including reasonable attorney's fees, and other direct damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Initial Decision Maker, upon application, and this obligation for payment shall survive termination of the Contract.

**§ 14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE**
**§ 14.3.1** The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

**§ 14.3.2** The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent
  .1 that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or
  .2 that an equitable adjustment is made or denied under another provision of the Contract.

**§ 14.4 TERMINATION BY THE OWNER FOR CONVENIENCE**
**§ 14.4.1** The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

**§ 14.4.2** Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall
  .1 cease operations as directed by the Owner in the notice;
  .2 take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and
  .3 except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

**§ 14.4.3** In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on

the Work executed through the date of termination, together with reasonable costs of demobilization and remobilization actually incurred.

**ARTICLE 15   CLAIMS AND DISPUTES**
**§ 15.1 CLAIMS**
**§ 15.1.1 DEFINITION**
A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim.

**§ 15.1.2 NOTICE OF CLAIMS**
Claims by either the Owner or Contractor must be initiated by written notice to the other party and to the Initial Decision Maker with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Contractor's failure to provide notice will not be construed as a waiver of Claim by the Contractor.

**§ 15.1.2.1** Claims by Contractor must be in writing. Claims by Contractor must contain the following:

(a)   A narrative statement referencing and attaching the supporting documentation and specifically describing the legal and factual basis of the Claim;

(b)   If the Claim alleges delay to the Work, the Claim must include the precise number of days claimed, all  alleged impacts, financial or otherwise, on the Work, and the specific amount of money, if any, claimed as a result of the delay;

(c)   (If the Claim alleges acceleration or constructive acceleration of the work, the Claim must include the precise number of days' time extension the Contractor claims it would have been entitled to receive, but for the acceleration and the precise number of days by which the Work has been accelerated. No claims for acceleration for work that is not on the critical path shall be permitted. Claims for acceleration shall include without limitation the premium portion of labor costs incurred for overtime inefficiencies and supervision costs related to such acceleration, and additional equipment costs related to such acceleration; and

(d)   If the Claim is for additional compensation, the Claim must include a detailed calculation of the precise amount claimed with all supporting documentation.

Claims may also be reserved in writing within the time limits set forth in Section 15.1.2.2. If a Claim is reserved, procedures described in this Section 15 shall not commence until a written notice from the claimant is received by the Architect. Any notice of Claim or reservation of Claim must clearly identify the alleged cause and the nature of the Claim and include data and information then available to the claimant that will facilitate prompt verification and evaluation of the Claim.

**§ 15.1.2.2** Time Limits on Claims: Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim; whichever is later. Claims must be initiated by written notice to the other party. Contractor acknowledges that the Claim time limits specified herein are material and essential to the Owner's ability to meet certain other deadlines and that time is of the essence to such time limits.  Failure of Contractor to provide notice shall not be construed as a waiver of Claim by Contractor.

**§ 15.1.3 CONTINUING CONTRACT PERFORMANCE**
Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.7 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make

payments in accordance with the Contract Documents. The Architect will prepare Change Orders and issue Certificates for Payment in accordance with the decisions of the Initial Decision Maker.

### § 15.1.4 CLAIMS FOR ADDITIONAL COST

If the Contractor wishes to make a Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.4.

### § 15.1.5 CLAIMS FOR ADDITIONAL TIME

**§ 15.1.5.1** If the Contractor wishes to make a Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one Claim is necessary.  No increase in the Contract Time shall be deemed given by implication or otherwise unless set forth in the approved Change Order.

**§ 15.1.5.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

### § 15.1.6 CLAIMS FOR CONSEQUENTIAL DAMAGES

The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes

- .1 damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and
- .2 damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 15.1.6 shall be deemed to preclude an award of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.

### § 15.2 INITIAL DECISION

**§ 15.2.1** Claims, excluding those arising under Sections 10.3, 10.4, 11.3.9, and 11.3.10, shall be referred to the Initial Decision Maker for initial decision. The Architect will serve as the Initial Decision Maker, unless otherwise indicated in the Agreement. Except for those Claims excluded by this Section 15.2.1, an initial decision shall be required as a condition precedent to mediation of any Claim arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Initial Decision Maker with no decision having been rendered. Unless the Initial Decision Maker and all affected parties agree in writing, the Initial Decision Maker will not decide disputes between the Contractor and persons or entities other than the Owner.

**§ 15.2.2** The Initial Decision Maker will review Claims and within ten days of the receipt of a Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Initial Decision Maker is unable to resolve the Claim if the Initial Decision Maker lacks sufficient information to evaluate the merits of the Claim or if the Initial Decision Maker concludes that, in the Initial Decision Maker's sole discretion, it would be inappropriate for the Initial Decision Maker to resolve the Claim.  The Initial Decision Maker shall provide written explanation, to both the Owner and Contractor, for whatever action is taken by the Initial Decision Maker with respect to the Claim.

**§ 15.2.3** In evaluating Claims, the Initial Decision Maker may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Initial Decision Maker in rendering a decision. The Initial Decision Maker may request the Owner to authorize retention of such persons at the Owner's expense.  The Initial Decision Maker shall disclose in writing to both the Owner and

Contractor all parties with whom the Initial Decision Maker consulted or sought information, as well as identifying all information obtained with respect to the Initial Decision Maker's evaluation of a Claim.

**§ 15.2.4** If the Initial Decision Maker requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either (1) provide a response on the requested supporting data, (2) advise the Initial Decision Maker when the response or supporting data will be furnished or (3) advise the Initial Decision Maker that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Initial Decision Maker will either reject or approve the Claim in whole or in part.

**§ 15.2.5** The Initial Decision Maker will render an initial decision approving or rejecting the Claim, or indicating that the Initial Decision Maker is unable to resolve the Claim. This initial decision shall (1) be in writing; (2) state the reasons therefor; and (3) notify the parties and the Architect, if the Architect is not serving as the Initial Decision Maker, of any change in the Contract Sum or Contract Time or both. The initial decision shall not be final and binding on the parties unless the parties expressly accept that decision in writing.
**§ 15.2.6** Either party may file for mediation of an initial decision at any time, subject to the terms of Section 15.2.6.1.

**§ 15.2.6.1** Either party may, within 30 days from the date of an initial decision, demand in writing that the other party file for mediation within 60 days of the initial decision. If such a demand is made and the party receiving the demand fails to file for mediation within the time required, then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.

**§ 15.2.7** In the event of a Claim against the Contractor, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

**§ 15.2.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.

### § 15.3 MEDIATION
**§ 15.3.1** Claims, disputes, or other matters in controversy arising out of or related to the Contract except those waived as provided for in Sections 9.10.4, 9.10.5, and 15.1.6 shall be subject to mediation as a condition precedent to binding dispute resolution.

**§ 15.3.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by written agreement of the parties or court order.

**§ 15.3.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

Neither Owner nor Contractor shall have any obligation to arbitrate any matter related to the Project. Prior to litigation the parties shall, without obligation, endeavor to settle their disputes by mediation, if they can agree on a mutually acceptable mediator and procedural rules for such mediation. In the event of litigation between the parties hereto, relating to the Contract Documents, and notwithstanding any other provisions therein, the losing party shall pay all costs and attorney's fees reasonably and actually incurred by the substantially prevailing party, including those on appeal as may be awarded by the court in final, non-appealable judgment. The parties covenant and agree that they intend by this Paragraph to compensate for attorneys' fees reasonably and actually incurred by the prevailing party to the particular attorneys involved at such attorneys' then normal hourly rates, and that this

Paragraph shall constitute an instruction to the court that such rate or rates shall be deemed reasonable for such purposes.

IN THE STATE COURT OF CHATHAM COUNTY
STATE OF GEORGIA

ALBERT MARSHALL,

       Plaintiff,

VS.

HUNT CONSTRUCTION GROUP, INC.
aka AECOM HUNT, STEEL, LLC,
PLANT RIVERSIDE, LLC, KESSLER
COLLECTION MANAGEMENT, LLC,
THE KESSLER ENTERPRISE, INC.,
JOHN AND JANE DOES 1-30; and
BUSINESS/CORPORATE ENTITIES A-Z

       Defendants.

CIVIL ACTION NO.: STCV21-00567

### HUNT CONSTRUCTION GROUP, INC. AND STEEL, LLC'S MOTION TO DISMISS PART 2 OF 2 PAGES 108-375

Respectfully submitted this 25th day of June, 2021.

       WEINBERG, WHEELER, HUDGINS,
       GUNN & DIAL, LLC

       */s/ Matthew A. Marrone*
       Joshua S. Wood
       Georgia Bar No.: 881696
       Matthew A. Marrone
       Georgia Bar No.: 153065
       jwood@wwhgd.com
       mmarrone@wwhgd.com
       *Attorneys for Hunt Construction Group, Inc.*
       *and Steel, LLC*

3344 Peachtree Road, N.E.,
Suite 2400
Atlanta, Georgia 30326
Telephone: (404)-876-2700
Facsimile: (404)-875-9433